IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

BROADWAY PINE BRANDS LLC,

Plaintiff,

v.

SHIRO HOUSE, *M·KVFA*, ALDERAIAN, ALK7, AOZHUN, ASIBEIUL, BANENS, BONLTING, CONBOEY, CQCYD 7-15 DAYS FAST DELIVERY, DDUOMI, DHGCX, DILINGÔDILING, DIMOCAX, EDDIZU, ENJOY*LIFE.*&, FANBO SO, FOUTOU, FTHOME, GEORGIA-VISITOR, GH+GS, GUOYINZHIPIN, GYSTL, HGS76DH, HONMOHUI, JIAHUIDIANSHANG, JINGTAODIANZI, JJCYE, JUANX, KWJILIGUALA±, LAN DIAO, LINDSAY NIXON(20-26 DAYS DELIVERY), LIONTOBUY, LJEA-US, LONGTOUS, LONPYAO, LUCKY ☆°C81US, LUJIAHAO180, MARRIDON, MEI YUN, MIA YONGER(20-26 DAYS DELIVERY), MILD MILK., MINPINLA, MOLIQ, MSIYOU, NAIJING-FAST DELIVERY (7-15 DAYS), NANCY99, NANGYANG, OUNABING, OWILL (7-15 DAYS FAST DELIVERY), PINGJIN, POWLANCE, QIUSUJING, RAPIDYASUO, RENPOJO, SELLTAM., SHIYI GIRL, SUNDAY8, SYYSGIFT, THE ORCHID SHOP, TINI-STORE, UDHONSHD, UNPARALLELED, WEAR-DOY, WUYU STORE, XEHWG, XUYUAN SC, YANYANLADY, YIXUANYX, YOLO17&&&%, YOUDW, YOWEIN, ZHUXINXING,

Civil Action No. 2:21-cv-406

**FILED UNDER SEAL**

济源天翔商贸有限公司 [JIYUAN TIANXIANG TRADING COMPANY], DANGWORLD-8, LINXIA-2136, LONG9TANSHA, SIRONWEN-0, WANGTI-67, 01888 STORE, ANIUNIU STORE, BEAUTYBABY STORE, BT DROPSHIPPING STORE, CHILD'S TOY STORE, FAINA'S STORE, FUNFUN TOY STORE, GOGOMYLITTLEBABY STORE, GOODLUCK BABY STORE, MUQGEW FOR YOU STORE, SEVENU STORE, SHOP2944189 STORE, SHOP5055184 STORE, SHOP5426288 STORE, SHOP5517084 STORE, SHOP911137204 STORE, BIANYIREN, ELFINHOME, and NGOC234,

Defendants.

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

Broadway Pine Brands LLC ("Broadway" or "Plaintiff") hereby sues Defendants, the Individuals, Partnerships, and Unincorporated Associations identified in the Caption and which are set forth in **Schedule "A"** hereto (collectively "Defendants"). Defendants have offered for sale, sold, and distributed knock-off versions of Plaintiff's Butterfly Craze Daisy Pillow ("Plaintiff's Product") within this district and throughout the United States by operating e-commerce stores established on at least one of the Amazon.com, eBay.com, AliExpress.com, Wish.com, and Internet marketplaces using their respective Store Names and Seller Names set forth on **Schedule "A"** hereto (collectively, the "Seller IDs") ("Knock-off Product(s)"). As set forth below, Defendants are either (i) using without authorization Plaintiff's distinct photograph(s) ("Plaintiff's Works"),while promoting, selling, offering for sale and distributing knock-offs of Plaintiff's Product thus unfairly competing, in a willful attempt to pass off their knock-off products as genuine versions of Plaintiff's Products, and/or (ii) using Plaintiff's

federally registered service mark Butterfly Craze® ("Plaintiff's Mark"), while offering to sell and selling knock-offs of Plaintiff's Product, thus counterfeiting.[1] In support of its claims, Plaintiff alleges as follows:

## NATURE OF THE ACTION

1. The original designer and creator of the Daisy Pillow, Yi Ping Lai, President of Heart to Heart Gifts, Inc. ("Heart to Heart") began by making handmade pillows, pillow beds, and accessories out her home in 1995. Since then, she created and innovated all of the Heart to Heart Gifts, Inc.'s products and packaging. This is a costly effort involving graphic design, industrial design and tooling. It takes time to create, design, test, redesign and retest prototypes. A lot of money was spent on photography to show how the product works or to highlight the end result. That photography is used on the company's website, Amazon store, sent to customers, and used at tradeshows. Products are introduced to retailers via tradeshows across the country. This introduction process costs a lot of money but it is a chance to show customers the quality and use of the product.

2. Today, the Butterfly Craze® Daisy Pillows are a well-known national brand in the gift and houseware industries. It is recognized for its quality, inventions, creative packaging and

---

[1] Only Defendant Nos. 7, 14, 16, 23, 28, 32, 40, 41, 44, 54, 55, 60, 69, 70, and 74 are using Plaintiff's Mark and thus alleged to be counterfeiting. To be clear, whether the products infringe on the Plaintiff's Mark or unfairly compete, they are identified as Knock-Offs in these papers.

whimsical designs. Plaintiff's customers often immediately recognize the new products as being invented and designed by Heart to Heart Gifts. It is for that reason that the Plaintiff acquired Heart to Heart Gifts, including all of the assets, intellectual property, goodwill and brands. More specifically, Plaintiff acquired and is the current owner of the Butterfly Craze® brand Daisy Pillow.

3.Defendants' sale, distribution, and advertising of their Knock-off Products is highly likely to cause consumers to believe that Defendants are offering genuine versions of Plaintiff's Product when in fact they are not. To illustrate, below are several examples which vividly show that the Infringing Product itself and the manner in which it is marketed is designed to confuse and mislead consumers into believing that they are purchasing Plaintiff's Product or that the Knock-Off Product is otherwise approved by or sourced from Plaintiff:

Plaintiff's Photographs







Evidence\Amazon\
Defendant aozhun listing

 

\Evidence\eBay\
Defendant dangworld-8



 

Additional photographic comparisons of Plaintiff's Product and the Knock-Off Products are attached as **Exhibit 1**.

4. As poorly designed and manufactured products that are knock-offs of Plaintiff's Product, the Knock-Offs are eroding the value of Plaintiff's brand.

5. The Knock-Off Products threaten to destroy the reputation of high quality that Plaintiff's Products have earned.

6. Defendants' actions have resulted in actual confusion in the marketplace between Defendants' Knock-Off Product and the genuine version of Plaintiff's Products. Numerous purchasers of Defendants' Knock-Off Product have written on-line reviews to complain about the quality of the Knock-Off Product believing same to be a genuine version of Plaintiff's Product. Below are excerpts from some of these on-line reviews:

***"I didn't like the quality"***

***"I don't know if I got a defective one. But it like falls apart constantly. I am constantly having to patch it up because seams keep coming apart. This has been going on since I first got it and I have gotten so fed up I had to come on here in case others ordered it and theirs is doing the same. It isn't a cheap pillow and should hold up better. I have a daughter who is very gentle with her toys so she isn't throwing it about or anything. She can simply sit on it and a seam busts. So frustrating"***

***"Please do not waste your money. It is horribly uncomfortable. My child won't use it. It is about the same as just sitting on the floor. Very overpriced and useless "seating cushion". We will probably keep this thing for a few days."***

7. Plaintiff is the owner of various published photographs, videos, artwork, creative text, and product instructions appearing on Plaintiff's website butterflycraze.com. Screen shots of Plaintiff's Website, Amazon Storefront, and creative works including photograpsh are shown in **Exhibit 2**.

8. Plaintiff 's Photographs are included in "Plaintiff's Works"**.**

9. Plaintiff is the owner of U.S. Reg. No. 3528611, BUTTERFLY CRAZE® for "on-line retail store services featuring decorative products, costumes, toys, gifts and fashion accessories; Wholesale stores featuring decorative products, costumes, toys, gifts and fashion accessories." in international class 35. A copy of the registration certificate attached as **Exhibit 3**.

10. On information and belief, Defendants' sale of Knock-Off Products gives rise to a plausible expectation that discovery will reveal that Defendants' actions all arise from the same transaction, occurrence, or series of transactions. Specifically, on information and belief, Defendants are actively participating in a conspiracy to distribute and sell Knock-Off Products. For example, Defendants, on information and belief, are working together to manufacture, arrange the manufacture of and/or sell and otherwise distribute the Knock-Off Products. Moreover, the Knock-Off Products share similar characteristics including, for example, colors, size, design, and aesthetics and many use the same copied photographs without permission from the Plaintiff.

11. Plaintiff therefore brings this action for federal unfair competition in violation of Section 43(a) of the Trademark Act of 1946, as amended; and/or counterfeiting and infringement of Plaintiff's Mark in violation of Plaintiff's rights under § 32 of the Lanham Act, 15 U.S.C. § 1114, and/or common law unfair competition, pursuant to 15 U.S.C. § 1125(a), 17 U.S.C. §§ 101 *et seq*, and The All Writs Act, 28 U.S.C. § 1651(a), and/or common law trademark infringement.

## JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1332, and 1338. This Court has supplemental jurisdiction pursuant

to 28 U.S.C. § 1367 over Plaintiff's state law claims because those claims are so related to the federal claims that they form part of the same case or controversy.

13.  This Court may exercise personal jurisdiction over a non-resident of the State in which the Court sits to the extent authorized by the state's laws.  Fed. R. Civ. P. 4(e). Pennsylvania authorizes personal jurisdiction over each Defendant pursuant to 42 Pa. Cons. Stat. § 5322 (a) which provides in pertinent part: "A tribunal of this Commonwealth may exercise personal jurisdiction over a person ... as to a cause of action or other matter arising from such person: (1) Transacting any business in this Commonwealth.  Without excluding other acts which may constitute transacting business for the purpose of this paragraph: (ii) The doing of a single act in this Commonwealth for the purpose of thereby realizing pecuniary benefit ... (3) Causing harm or tortious injury by an act or omission in this Commonwealth. (4) Causing harm or tortious injury by an act or omission outside this Commonwealth ... (10) Committing any violation within the jurisdiction of the Commonwealth of any statute, home rule charter, local ordinance or resolution, or rule or regulation promulgated thereunder by any government unit or of any order of court or other government unit."  In the alternative, Federal Rule of Civil Procedure 4(k) confers personal jurisdiction over the Defendants because, upon information and belief, Defendants regularly conduct, transact and/or solicit business in Pennsylvania and in this judicial district, and/or derive substantial revenue from their business transactions in Pennsylvania and in this judicial district and/or otherwise avail themselves of the privileges and protections of the laws of the Commonwealth of Pennsylvania such that this Court's assertion of jurisdiction over Defendants does not offend traditional notions of fair play and due process, and/or Defendants' illegal counterfeiting and infringing actions caused injury to Plaintiff in

Pennsylvania and in this judicial district such that Defendants should reasonably expect such actions to have consequences in Pennsylvania and in this judicial district, for example:

a. Upon information and belief, at all times relevant hereto, Defendants were and/or are systematically directing and/or targeting their business activities at consumers in the United States, including Pennsylvania, through on-line platforms with Merchant Storefronts (as defined *infra*), via on-line marketplace websites, such as, Amazon.com, eBay.com, Wish.com, and AliExpress.com, under the Seller IDs, as well as any and all as yet undiscovered accounts with Merchant Storefronts held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them ("User Accounts"), through which consumers in the United States, including Pennsylvania, can view the one or more of Defendants' Merchant Storefronts that each Defendant operates, uses to communicate with Defendants regarding their listings for Knock-Off Products and to place orders for, receive invoices for and purchase Knock-Off Products for delivery in the U.S., including Pennsylvania, as a means for establishing regular business with the U.S., including Pennsylvania.

b. Upon information and belief, certain Defendants are sophisticated sellers, each operating one or more commercial businesses using their respective User Accounts through which Defendants, their respective officers, employees, agents, servants and all persons in active concert of participation with any of them, operate storefronts to manufacture, import, export, advertise, market, promote, distribute, offer for sale and/or otherwise deal in products, including the Knock-Off Products, which are held by or

associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them ("Merchant Storefront(s)") in wholesale quantities at significantly below-market prices to consumers worldwide, including to those in the U.S., and specifically Pennsylvania.

c. Upon information and belief, Defendants' Merchant Storefronts reflect multiple sales to consumers all over the world, including repeat sales to consumers in the U.S. and into this judicial district.

d. Upon information and belief, all Defendants accept payment in U.S. Dollars and offer shipping to the U.S., including to Pennsylvania.

e. Upon information and belief, at all times relevant, Defendants have transacted business with consumers located in the U.S., including Pennsylvania, for the sale and shipment Knock-Off Products.

f. Upon information and belief, Defendants are employing and benefiting from substantially similar, paid advertising and marketing and advertising strategies in order to make their Merchant Storefronts selling illegal goods appear more relevant and attractive to search result software across an array of search words, including but not limited to "DAISY PILLOW". By their actions, Defendants are causing concurrent and indivisible harm to Plaintiff and the consuming public by (i) depriving Plaintiff of its right to fairly compete for space within the various on-line marketplace search results and reducing the visibility of the Plaintiff's genuine DAISY PILLOW on various on-line marketplaces and/or diluting and driving down the retail market price for the  (ii) causing an overall degradation of the value of the goodwill associated with Plaintiff's marks and goods; and

(iii) increasing Plaintiff's overall cost to market its goods and educate consumers about its brand and products.

g. Upon information and belief, Defendants have cooperated, communicated their plans with one another, shared information, and coordinated their efforts, all in order to create an illegal marketplace operating in parallel to the legitimate marketplace of Plaintiff's and the legally authorized resellers of Plaintiff's genuine goods.

h. Upon information and belief, Defendants are concurrently targeting their infringing activities toward consumers and causing harm in Allegheny County, Pennsylvania.

i. Upon information and belief, Defendants likely reside and/or operate in foreign jurisdictions with lax trademark and patent enforcement systems and are cooperating by creating an illegal stream of infringing goods.

j. Upon information and belief, Defendants are aware of Plaintiff's Product, and are aware that their illegal infringing actions alleged herein are likely to cause injury to Plaintiff in the United States, in Pennsylvania and in this judicial district specifically, as Plaintiff conducts substantial business in Pennsylvania.

k. Plaintiff is suffering irreparable and indivisible injury and suffered substantial damages as a result of Defendants' unauthorized and wrongful sale of counterfeit and infringing goods.

14. Venue is proper, *inter alia*, pursuant to 28 U.S.C. § 1391 and 28 U.S.C. §§ 1400(a) and (b) because, for example:

a. Upon information and belief, Defendants conduct, transact, and/or solicit business in this judicial district.

b. Upon information and belief, Defendants or their agent(s) may be found in this district because personal jurisdiction is proper in this district.

c. Upon information and belief, this is a judicial district in which a substantial part of the events or omissions giving rise to the infringement claims occurred, or a substantial part of the property that is the subject of the action is situated.

d. Defendants not resident in the United States may be sued in this judicial district because personal jurisdiction is proper in this district.

**THE PLAINTIFF**

15. Broadway Pine Brands is a limited liability company organized and existing under the laws of the State of Delaware with a registered address of 8 the Green, Ste R, Dover, Delaware 19901 (“Plaintiff”).

16. Plaintiff is, in part, engaged in the business of manufacturing and distributing throughout the world, including within this district, the Plaintiff’s Product, through its website, Plaintiff designs.com, various retail establishments, and its authorized sellers on Amazon.com. Defendants, through the sale and offer to sell Knock-Off Products are directly, and unfairly competing with Plaintiff’s economic interest in the Commonwealth of Pennsylvania and causing Plaintiff harm within this jurisdiction.

17. Like many other brand owners, Plaintiff suffers ongoing daily and sustained violations of its rights at the hands of infringers, such as Defendants herein, who wrongfully

reproduce Plaintiff's Products for the twin purposes of (i) duping and confusing the consuming public and (ii) earning substantial profits from the sale of their Knock-Off Products. The natural and intended byproduct of Defendants' actions is the erosion and destruction of the goodwill associated with Plaintiff's Products and the destruction of the legitimate market sector in which Plaintiffs operate.

18. The recent explosion of counterfeiting and infringement over the Internet, including through online marketplace platforms, has created an environment that requires brand owners, such as Plaintiff, to expend significant time and money across a wide spectrum of efforts in order to protect both consumers and Plaintiff from the ill effects of confusion and the erosion of the goodwill associated with Plaintiff's brand and products.

**THE DEFENDANTS**

19. The Defendants are individuals and/or business entities of unknown makeup, each of whom, upon information and belief, either reside or operate in foreign jurisdictions, or redistribute products from the same or similar sources in those locations. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b). Defendants target their business activities toward consumers throughout the United States, including within this district, and conduct pervasive business through the operation of, at least, one fully interactive commercial Internet based e-commerce store via, at least, the Internet based online marketplaces, Amazon.com, eBay.com, Wish.com, and AliExpress.com under the Seller IDs.

20. Defendants use aliases in conjunction with the operation of their businesses, including but not limited to those as set forth in **Schedule "A"** hereto.

21.Defendants are the past and present controlling forces behind the sale of products bearing and/or using infringements of at least one of Plaintiff's Mark or Works, and/or a substantially similar copy of Plaintiff's Works as described herein using at least the Seller IDs.

22. Upon information and belief, Defendants directly engage in Defendants are either (i) using wihout authorization Plaintiff's distinct photograph(s)("Plaintiff's Works"),while promoting, selling, offering for sale and distributing knock-offs of Plaintiff's Product thus unfairly competing and/or (ii) infringing on Plaintiff's Works and/or (iii) using Plaintiff's federally registered trademark BUTTERFLY CRAZE®, while offering to sell and selling knock-offs of Plaintiff's Product, thus counterfeiting, to consumers within the United States and this district through several fully interactive, commercial Internet websites and Internet based e-commerce stores operating under, at least, the storefronts, the Seller IDs, and any additional domain names, websites and corresponding website URLs or seller identifications and store URL aliases not yet known to Plaintiff.  Defendants have purposefully directed some portion of their illegal activities towards consumers in the Commonwealth of Pennsylvania through the advertisement, offer to sell, sale, and/or shipment of Knock-Off Products into the Commonwealth.

23. Defendants have registered, established or purchased, and maintained the on-line marketplace website storefronts and Seller IDs.  Upon information and belief, Defendants have engaged in fraudulent conduct with respect to the registration of the storefronts and Seller IDs by providing false and/or misleading information to the Internet based e-commerce platforms where they offer for sale and/or sell, during the registration or maintenance process related to their

respective Seller ID. Upon information and belief, Defendants have anonymously registered and maintained some of the Seller IDs for the sole purpose of engaging in illegal infringing activities.

24. Upon information and belief, Defendants will continue to register or acquire new seller identification aliases for the purpose of selling and offering for sale goods bearing and/or using confusingly similar imitations of Plaintiff's copyrighted works and trademark unless preliminarily and permanently enjoined.

25. Defendants' Internet-based businesses amount to nothing more than illegal operations established and operated in order to infringe the intellectual property rights of Plaintiff.

26. Defendants' business names, i.e., the Seller IDs, associated payment accounts, and any other alias seller identification names used in connection with the sale of infringing goods bearing and/or using Plaintiff's respective trademark and/or copyrighted works are essential components of Defendants' online activities and are the means by which Defendants further their infringement scheme and cause harm to Plaintiff. Moreover, Defendants are using Plaintiff's Works and/or trademark, to drive Internet consumer traffic to their e-commerce stores operating under the Seller IDs, thereby creating and increasing the value of the Seller IDs and decreasing the size and value of Plaintiff's legitimate consumer marketplace at Plaintiff's expense.

## COMMON FACTUAL ALLEGATIONS

**Plaintiff's DAISY PILLOW**

27. Plaintiff developed and sells its produt under the common law mark DAISY PILLOW. The Plaintiff's Mark has acquired secondary meaning and is a valid and subsisting mark. The secondary meaning was acquired before the Defendants' use of the Plaintiff's Mark. Plaintiff identified the need for this product and created the market for this product. Below are

some images of Plaintiff's Products, which retails for between from $31.99 (medium) - $49.99 (large):

 

28. Plaintiff's Mark (DAISY PILLOW™) as applied to Plaintiff's Product has acquired fame and widespread consumer recognition such that it functions as a source identifier for Plaintiff's Product.

29. Plaintiff's Mark has been used in interstate commerce to identify and distinguish Plaintiff's goods.

30. Plaintiff's Mark has been used by the Plaintiff prior in time to Defendants' use of the mark. The Plaintiff's Mark has never been assigned or licensed to any of the Defendants in this matter.

31. Plaintiff's Mark is a symbol of Plaintiff's quality, reputation, and goodwill and have never been abandoned.

32. Genuine goods bearing the Plaintiff's Mark are widely legitimately advertised and promoted by Plaintiff, their authorized distributors, and unrelated third parties via the Internet.

Over the past several years, visibility on the Internet, particularly via Internet search engines such as Google, Yahoo!, and Bing has become increasing important to Plaintiff's overall marketing. Thus, Plaintiff and their authorized distributors expend significant monetary resources on Internet marketing, including search engine optimization ("SEO") strategies. Those strategies allow Plaintiff and their authorized retailers to fairly and legitimately educate consumers about the value associated with Plaintiff's brand and the goods sold thereunder. Similarly, Defendants' individual seller's stores are indexed on search engines and compete directly with Plaintiff for space in the search results.

**Defendants' Wrongful and Infringing Conduct**

33. Upon information and belief, Defendants are, through at least the Internet based e-commerce stores operating under the Seller IDs, promoting, selling, offering for sale and distributing goods bearing and/or using confusingly similar imitations of at least one of Plaintiff's Mark or Works, or substantially similar copies of Plaintiff's Works, while marketing Knock-Off Products in a willful attempt to pass off their knock-off products as genuine versions of Plaintiff's Products.

34. E-commerce sales, including through e-commerce stores like those of Defendants, have resulted in a sharp increase in the shipment of unauthorized products into the United States. **Exhibit 4**, Excerpts from Fiscal Year 2018 U.S. Customs and Border Protection ("CBP") Intellectual Property Seizure Statistics Report. Over 90% of all CBP intellectual property seizures were smaller international mail and express shipments (as opposed to large shipping containers). *Id.* Over 85% of CBP seizures originated from mainland China and Hong Kong. *Id.* Counterfeit and pirated products account for billions in economic losses, resulting in tens of

thousands of lost jobs for legitimate businesses and broader economic losses, including lost tax revenue.

35.  Third party service providers like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms." **Exhibit 5**, Daniel C.K. Chow, Alibaba, Amazon, and Counterfeiting in the Age of the Internet, 40 NW. J. INT'L L. & BUS. 157, 186 (2020); see also, report on "Combating Trafficking in Counterfeit and Pirated Goods" prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans (Jan. 24, 2020), attached as **Exhibit 6** and finding that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling" and recommending that "[s]ignificantly enhanced vetting of third-party sellers" is necessary.  Counterfeiters hedge against the risk of being caught and having their websites taken down from an e-commerce platform by preemptively establishing multiple virtual store-fronts. **Exhibit 6** at p. 22.  Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, counterfeiters can have many different profiles that can appear unrelated even though they are commonly owned and operated.  **Exhibit 6** at p. 39.  Further, "E-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters." **Exhibit 5** at 186-187.

36.  Upon information and belief, Defendants did not obtain an opinion from United States Counsel about the legality of offering for sale each of the Knock-Off Products.

37.  Upon information and belief, Defendants' Knock-Off Products are of a quality substantially and materially different than that of Plaintiff's genuine goods.  Defendants, upon information and belief, are actively using, promoting and otherwise advertising, distributing, selling, and/or offering for sale substantial quantities of their Knock-Off Products with the knowledge and intent that such goods will be mistaken for the genuine high quality goods offered for sale by Plaintiff despite Defendants' knowledge that they are without authority to use the Plaintiff's Mark and/or Works.  The net effect of Defendants' actions will cause confusion of consumers, at the time of initial interest, sale, and in the post-sale setting, who will believe Defendants' Knock-Off Products are genuine goods originating from, associated with, and approved by Plaintiff.

38.  Defendants advertise their Knock-Off Products for sale to the consuming public via Internet based e-commerce stores on, at least, one Internet marketplace using at least the Seller IDs.  In so advertising these goods, Defendants improperly and unlawfully use at least one of Plaintiff's Mark or Works, or substantially similar copies of Plaintiff's Works without Plaintiff's permission.

39.  As part of their overall infringement scheme, Defendants are, upon information and belief, concurrently employing and benefitting from substantially similar, advertising and marketing strategies based, in large measure, upon an illegal use of infringements of the Plaintiff's Mark and/or Works.  Specifically, Defendants are using infringements of Plaintiff's rights in order to make their e-commerce stores selling illegal goods appear more relevant and attractive to consumers online.  By their actions, Defendants are contributing to the creation and maintenance of an illegal marketplace operating in parallel to the legitimate marketplace for

Plaintiff's genuine goods. Defendants are causing, individual, concurrent and indivisible harm to Plaintiff and the consuming public by (i) depriving Plaintiff and other third parties of their right to fairly compete for space within search engine results and reducing the visibility of Plaintiff's genuine goods on the World Wide Web, (ii) causing an overall degradation of the value of the goodwill associated with the Plaintiff's rights, and (iii) increasing Plaintiff's overall cost to market its goods and educate consumers about its brand via the Internet.

40. Defendants are concurrently targeting their infringing activities toward consumers and causing harm within this district and elsewhere throughout the United States. As a result, Defendants are defrauding Plaintiff and the consuming public for Defendants' own benefit.

41. Plaintiff confirmed that Defendants were and/or are still currently offering for sale and/or selling Knock-Off Products for sale to the consuming public via Internet based e-commerce stores on, at least, one Internet marketplace using at least the Seller IDs and that Defendants provide shipping and/or have actually shipped Knock-Off Products to customers located within this judicial district.

42. There is no question that the Knock-Off Products themselves and the manner in which they are marketed is designed to confuse and mislead consumers into believing that they are purchasing Plaintiff's Product or that the Knock-Off Products are otherwise approved by or sourced from Plaintiff, thereby trading on the goodwill and reputation of Plaintiff by engaging in the unauthorized use of at least one of Plaintiff's Mark or Works, or substantially similar copies of Plaintiff's Works.

43. At all times relevant hereto, Defendants in this action had full knowledge of Plaintiff's ownership of the Plaintiff's Mark and Works, including its exclusive right to use and license such intellectual property and the goodwill associated therewith.

44. Defendants' use of Plaintiff's Mark and Works, and/or substantially similar copies of Plaintiff's Works, including the promotion and advertisement, reproduction, distribution, sale, and offering for sale of their Knock-Off Products, is without Plaintiff's consent or authorization.

45. Defendants are engaging in the above-described illegal infringing activities knowingly and intentionally or with reckless disregard or willful blindness to Plaintiff's rights for the purpose of trading on Plaintiff's goodwill and reputation. If Defendants' intentional activities are not preliminarily and permanently enjoined by this Court, Plaintiff and the consuming public will continue to be harmed.

46. Defendants' above identified infringing activities are likely to cause confusion, deception, and mistake in the minds of consumers before, during, and after the time of purchase. Moreover, Defendants' wrongful conduct is likely to create a false impression and deceive customers, the public, and the trade into believing there is a connection or association between Plaintiff's genuine goods and Defendants' Knock-Off Products, which there is not.

47. Defendants' payment and financial accounts are being used by Defendants to accept, receive, and deposit profits from Defendants' infringing and/or unfairly competitive activities connected to their Seller IDs and any other alias e-commerce stores, photo albums, seller identification names, domain names, or websites being used and/or controlled by them.

48. Further, upon information and belief, Defendants are likely to transfer or secret their assets to avoid payment of any monetary judgment awarded to Plaintiff.

49. Plaintiff has no adequate remedy at law.

50. Plaintiff is suffering irreparable injury and have suffered substantial damages as a result of Defendants' unauthorized and wrongful use of at least one of Plaintiff's Mark and Works, and/or substantially similar copies of Plaintiff's Works. If Defendants' infringing and unfairly competitive activities are not preliminarily and permanently enjoined by this Court, Plaintiff and the consuming public will continue to be harmed.

51. The harm and damages sustained by Plaintiff have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offers to sell, and sale of their Knock-Off Products.

**The Scope of Defendants' Activities**

52. Upon information and belief, each Defendant operates more than one merchant storefront.

53.Upon information and belief, each Defendant operates merchant storefronts across multiple e-commerce marketplaces.

54. Upon information and belief, each Defendant has sold more than 150,000 units of the Infringing Product.

55. Upon information and belief, each Defendant's profits from the sale of the Knock-Off Products totals more than $100,000.

56. Upon information and belief, each Defendant's profits from the sale of the Knock-Off Products totals more than $300,000.

57. Upon information and belief, each Defendant's profits from the sale of the Knock-Off Products totals more than $2,000,000.

**COUNT I – FEDERAL UNFAIR COMPETITION (15 U.S.C. § 1125(a))**

58. All the above paragraphs are incorporated herein by reference.

59. Upon information and belief, Defendants' Knock-Off Products bearing, offered for sale, and sold using at least one of Plaintiff's Mark or Works, or substantially similar copies of Plaintiff's Works, have been widely advertised and offered for sale throughout the United States via at least one fully interactive Internet marketplace.

60. Defendants' Knock-Off Products bearing, offered for sale, and sold using at least one of Plaintiff's Mark or Works, or substantially similar copies of Plaintiff's Works, are virtually identical in appearance to Plaintiff's genuine goods. Defendants' Knock-Off Products, however, are different and likely inferior in quality. Accordingly, Defendants' activities are likely to cause confusion in the trade and among the general public as to at least the origin or sponsorship of their Knock-Off Products.

61. Defendants, upon information and belief, have used in connection with their advertisement, offer for sale, and sale of their Knock-Off Products, false designations of origin and false descriptions and representations, including words or other symbols and trade dress, which tend to falsely describe or represent such goods and have caused such goods to enter into with full knowledge of the falsity of such designations of origin and such descriptions and representations, all to Plaintiff's detriment.

62. Defendants have engaged in infringing uses of at least one of Plaintiff's Mark and Works, and/or substantially similar copies of Plaintiff's Works, in Defendants' advertisement

and promotion of their Knock-Off Products. Defendants have misrepresented to members of the consuming public that the Knock-Off Products being advertised and sold by them are genuine, non-infringing goods.

63.  Additionally, Defendants are passing off the Knock-Off Products, using infringements of at least one of Plaintiff's Mark and Works, and/or substantially similar copies of Plaintiff's Works, in order to unfairly compete with Plaintiff and others for space within search engine organic results, thereby jointly depriving Plaintiff of a valuable marketing and educational tool which would otherwise be available to Plaintiff and reducing the visibility of Plaintiff's genuine goods on the World Wide Web.

64.  Defendants' above-described actions are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

65.  Plaintiff has no adequate remedy at law, and has sustained indivisible injury and damage caused by Defendants' concurrent conduct. Absent an entry of an injunction by this Court, Defendants will continue to wrongfully reap profits and Plaintiff will continue to suffer irreparable injury to its goodwill and business reputation, as well as monetary damages.

66.  Based on Defendants' wrongful conduct, Plaintiff is entitled to injunctive relief, Plaintiff's actual damages and Defendants' profits in an amount to be proven at trial, enhanced discretionary damages for willful infringement, and reasonable attorneys' fees and costs.

**COUNT II – TRADEMARK COUNTERFEITING AND INFRINGEMENT PURSUANT TO § 32 OF THE LANHAM ACT (15 U.S.C. § 1114)**

**(Plaintiff vs. Defendant Nos. 7, 14, 16, 23. 28, 32, 40, 41, 44, 54, 55, 60, 69, 70, and 74)**

67. Plaintiff hereby adopts and re-allege the allegations set forth in the preceding paragraphs as if set forth herein.

68. This is an action for trademark counterfeiting and infringement against Defendants[2] based on their use of counterfeit and confusingly similar imitations of Plaintiff's Mark in commerce in connection with the promotion, advertisement, distribution, offering for sale, and sale of the Knock-off Goods.

69. Specifically, Defendants are promoting and otherwise advertising, selling, offering for sale, and distributing products bearing and/or using counterfeits and/or infringements of one or more of Plaintiff's Mark. Defendants are continuously infringing and inducing others to infringe Plaintiff's Mark by using them to advertise, promote, offer to sell, and/or sell goods bearing and/or using Plaintiff's Mark.

70. Defendants' concurrent counterfeiting and infringing activities are likely to cause and actually are causing confusion, mistake and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' Counterfeit Goods.

71. Defendants' unlawful actions have caused and are continuing to cause unquantifiable damages to Plaintiff and are unjustly enriching Defendants with profits at Plaintiff's expense.

---

[2] Defendants in this Count refers to Defendant Nos. 7, 14, 16, 23, 28, 32, 40, 41, 44, 54, 55, 60, 69, 70, and 74 in Schedule A.

72. Defendants' above-described illegal actions constitute counterfeiting and infringement of Plaintiff's Mark in violation of Plaintiff's rights under § 32 of the Lanham Act, 15 U.S.C. § 1114.

73. Plaintiff has suffered and will continue to suffer irreparable injury and damages due to Defendants' above described activities if Defendants are not preliminarily and permanently enjoined. Additionally, Defendants will continue to wrongfully profit from their illegal activities.

74. Based on Defendants' actions as alleged herein, Plaintiff is entitled to injunctive relief, damages for the irreparable harm that Plaintiff has sustained, and will sustain, as a result of Defendants' unlawful and infringing actions, as alleged herein, and all gains, profits and advantages obtained by Defendants as a result thereof, enhanced discretionary damages, treble damages and/or statutory damages up to $2,000,000 per counterfeit mark per type of goods sold, offered for sale or distributed and reasonable attorneys' fees and costs.

75. All the above paragraphs are incorporated herein by reference.

76. This is an action against Defendants for passing off their goods as if they were Plaintiff's Product, based on their promotion, advertisement, distribution, sale, and/or offering for sale of goods bearing and/or using marks that are virtually identical, both visually and phonetically, to at least one of Plaintiff's Mark and Works, and/or substantially similar copies of Plaintiff's Works, in violation of Pennsylvania's common law of unfair competition.

77. Specifically, Defendants are passing off their Knock-Off Products, by promoting and otherwise advertising, selling, offering for sale, and distributing goods bearing and/or using infringements of at least one of Plaintiff's Mark or Works, or substantially similar copies of Plaintiff's Works. Defendants are also using infringements of at least one of Plaintiff's Mark

and Works, and/or substantially similar copies of Plaintiff's Works, to unfairly compete with Plaintiff and others on Internet marketplaces, for space in search results across an array of search terms, and visibility on the World Wide Web.

78. Defendants' infringing activities are likely to cause and actually are causing confusion, mistake, and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' products by their use of at least one of Plaintiff's Mark or Works, or substantially similar copies of Plaintiff's Works.

79. Plaintiff has no adequate remedy at law and is suffering irreparable injury and damages as a result of Defendants' actions.

80. As a result of Defendants' actions alleged herein, Plaintiff is entitled to injunctive relief, an order granting Plaintiff's damages and Defendants' profits stemming from their infringing activities, and exemplary or punitive damages for Defendants' intentional misconduct.

**COUNT III – COMMON LAW UNFAIR COMPETITION**

81. All the above paragraphs are incorporated herein by reference.

82. All the above paragraphs are incorporated herein by reference.

83. This is an action against Defendants for passing off their goods as if they were Plaintiff's Product, based on their promotion, advertisement, distribution, sale, and/or offering for sale of goods bearing and/or using marks that are virtually identical, both visually and phonetically, to at least one of Plaintiff's Mark or Works, and/or substantially similar copies of Plaintiff's Works, in violation of Pennsylvania's common law of unfair competition.

84. Specifically, Defendants are passing off their Infringing Products, by promoting and otherwise advertising, selling, offering for sale, and distributing goods bearing and/or using infringements of at least one of Plaintiff's Mark or Works, or substantially similar copies of Plaintiff's Works. Defendants are also using infringements of at least one of Plaintiff's Mark, or Works, and/or substantially similar copies of Plaintiff's Works, to unfairly compete with Plaintiff and others on Internet marketplaces, for space in search results across an array of search terms, and visibility on the World Wide Web.

85. Defendants' infringing activities are likely to cause and actually are causing confusion, mistake, and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' products by their use of at least one of Plaintiff's Mark, or Works, or substantially similar copies of Plaintiff's Works.

86. Plaintiff has no adequate remedy at law and is suffering irreparable injury and damages as a result of Defendants' actions.

87. As a result of Defendants' actions alleged herein, Plaintiff is entitled to injunctive relief, an order granting Plaintiff's damages and Defendants' profits stemming from their infringing activities, and exemplary or punitive damages for Defendants' intentional misconduct.

**COUNT IV - COMMON LAW TRADEMARK INFRINGEMENT**

88. All the above paragraphs are incorporated herein by reference.

89. This is an action for common law trademark infringement against Defendants based on their promotion, advertisement, offering for sale, and sale of their Knock-Off Products bearing and/or using Plaintiff's Mark. Plaintiff is the exclusive licensee and owner of all common law rights in and to the Plaintiff's Mark.

90. Specifically, Defendants, upon information and belief, are manufacturing, promoting and otherwise advertising, distributing, offering for sale, and selling goods bearing and/or using infringements of the Plaintiff's Mark.

91. Defendants' infringing activities are likely to cause and actually are causing confusion, mistake and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' Products bearing and/or using the Plaintiff's Mark.

92. Plaintiff has no adequate remedy at law and is suffering damages and irreparable injury as a result of Defendants' actions.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment on all Counts of this Complaint and an award of equitable relief and monetary relief against Defendants as follows:

a. Entry of temporary, preliminary and permanent injunctions pursuant to 15 U.S.C. § 1116, and Federal Rule of Civil Procedure 65 enjoining Defendants, their agents, representatives, servants, employees, and all those acting in concert or participation therewith, from manufacturing or causing to be manufactured, importing, advertising or promoting, distributing, selling or offering to sell their Infringing Products; from infringing, or diluting the Plaintiff's Marks; from using the Plaintiff's Marks, or any mark similar thereto, in connection with the sale of any unauthorized goods; from using any logo, trade name or trademark or trade dress that may be calculated to falsely advertise the services or goods of Defendants as being sponsored by, authorized by, endorsed by, or in any way associated with Plaintiff; from falsely representing themselves as being connected with Plaintiff, through sponsorship or association, or engaging in any act that is likely to falsely cause members of the trade and/or of the purchasing public to

believe any goods or services of Defendants are in any way endorsed by, approved by, and/or associated with Plaintiff; from using any reproduction, counterfeit, infringement, copy, or colorable imitation of the Plaintiff's Marks or Works in connection with the publicity, promotion, sale, or advertising of any goods sold by Defendants; from affixing, applying, annexing or using in connection with the sale of any goods, a false description or representation, including words or other symbols tending to falsely describe or represent Defendants' goods as being those of Plaintiff, or in any way endorsed by Plaintiff and from offering such goods in commerce; from engaging in search engine optimization strategies using colorable imitations of the Plaintiff's Marks; from further infringement, or from otherwise unfairly competing with Plaintiff.

b. Entry of an Order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority that upon Plaintiff's request, any Internet marketplace website operators and/or administrators that are provided with notice of the injunction, including but not limited to the online marketplaces hosted by Amazon.com, eBay.com, Wish.com, and AliExpress.com disable and/or cease facilitating access to the Seller IDs, and any other alias e-commerce stores being used and/or controlled by Defendants to engage in the marketing, promotion, offering for sale, and/or sale of goods bearing and/or using counterfeits and/or infringements of the Plaintiff's Mark.

c. Entry of an Order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority that upon Plaintiff's request, any Internet marketplace website operators and/or administrators who are provided with notice of the injunction, including but not limited to online marketplaces hosted by, Amazon.com, eBay.com, Wish.com, and AliExpress.com

permanently remove from multiple platforms, which include, *inter* alia, a Direct platform, Group platform, Seller Product Management platform, Vendor Product Management platform, and Brand Registry platform, any and all listings and associated images of goods bearing and/or using counterfeits and/or infringements of the Plaintiff's Mark, via the e-commerce stores operating under the Seller IDs on Schedule "A" hereto, and upon Plaintiff's request, any other listings and images of goods bearing and/or using counterfeits and/or infringements of the Plaintiff's Mark and/or Works linked to the same seller or linked to any other alias seller identification name being used and/or controlled by Defendants to promote, offer for sale and/or sell goods bearing and/or using infringements of the Plaintiff's Mark.

d. Entry of an Order that, upon Plaintiff's request, any Internet marketplace website operators and/or administrators who are provided with notice of the injunction, including but not limited to online marketplaces hosted by Amazon.com, eBay.com, Wish.com, and AliExpress.com immediately cease fulfillment of and sequester all goods of each Defendant or other Seller under a Seller ID bearing and/or using one or more of the Plaintiff's Mark in its inventory, possession, custody, or control, and surrender those goods to Plaintiff.

e. Entry of an Order pursuant to 28 U.S.C. § 1651(a), the All Writs Act, that upon Plaintiff's request, any messaging service and Internet marketplace, social media, and image hosting website operators and/or administrators for the Seller IDs who are provided with notice of the injunction, including but not limited to operators and/or administrators of Amazon.com, eBay.com, Wish.com, and AliExpress.com, identify any e-mail address known to be associated with Defendants' respective Seller IDs.

f.  Entry of an order pursuant to 28 U.S.C. § 1651(a), the All Writs Act, and the Court's inherent authority, authorizing Plaintiff to serve the injunction on any e-mail service provider with a request that the service provider permanently suspend the e-mail address that used by Defendants in connection with Defendants' promotion, offering for sale, and/or sale of goods bearing and/or using infringements of the Plaintiff's Mark, or otherwise unfairly competing with Plaintiff.

g. Entry of an order requiring Defendants to account to and pay Plaintiff for all profits and damages resulting from Defendants' infringing and unfairly competitive activities and that the award to Plaintiff be trebled, as provided for under 15 U.S.C. §1117.

h. Entry of an award pursuant to 15 U.S.C. § 1117 (a) and (b) of Plaintiff's costs and reasonable attorneys' fees and investigative fees associated with bringing this action.

i. Entry of an Order that, upon Plaintiff's request, any financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms, and their related companies and affiliates, identify and restrain all funds, up to and including the total amount of judgment, in all financial accounts and/or sub-accounts used in connection with the Seller IDs or other domain names, alias seller identification names, or e-commerce store names or store URLs used by Defendants presently or in the future, as well as any other related accounts of the same customer(s) and any other accounts which transfer funds into the same financial institution account(s), to be surrendered to Plaintiff in partial satisfaction of the monetary judgment entered herein.

j. Entry of an award of pre-judgment interest on the judgment amount.

k. Entry of an order for any further relief as the Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff respectfully demands a trial by jury on all claims.

Respectfully submitted,

March 29, 2021

/s/ Stanley D. Ference III

Stanley D. Ference III
Pa. ID No. 59899
courts@ferencelaw.com
Brian Samuel Malkin
Pa. ID No. 70448
bmalkin@ferencelaw.com
FERENCE & ASSOCIATES LLC
409 Broad Street
Pittsburgh, Pennsylvania 15143
(412) 741-8400 - Telephone
(412) 741-9292 - Facsimile
Attorneys for Plaintiff

**Schedule "A"**
**Defendants With Store Name and Seller ID**

| Defendant No. | Defendant/Store Name | Seller ID |
|---|---|---|
| 1 | Shiro House | AO7O6LWW69O3X |
| 2 | *m·kvfa* | A1GPU45BQASLZ1 |
| 3 | Alderaian | A3EBBM1568OB30 |
| 4 | ALK7 | AZ3OLQ8187630 |
| 5 | aozhun | ASEUXLETIIW4Y |
| 6 | Asibeiul | A2P9NBU7XCCOFQ |
| 7 | Banens | A2SSDH8T7HB4BU |
| 8 | Bonlting | A37I1ZD81F1UJD |
| 9 | ConboEY | A229NX2SLISJ99 |
| 10 | CQCYD 7-15 Days Fast Delivery | A12QD2QFPLA9X4 |
| 11 | DDUOMI | A1GK27UNLJT4TZ |
| 12 | DHGCX | A103LBR8EX1N48 |
| 13 | DilingÔDiling | A2FXS732O0LKOZ |
| 14 | Dimocax | AJP0PD1O3DGA2 |
| 15 | Eddizu | A2DJE863SU2MU6 |
| 16 | Enjoy*Life.*& | AOE9PAP4M0GU6 |
| 17 | FanBo So | A2JOCW3M9KNMHZ |
| 18 | Foutou | A309F00C1L8YA8 |
| 19 | Fthome | A2UDVIVQQ2SWXG |
| 20 | Georgia-visitor | A2BO95VTBINQCN |
| 21 | GH+GS | A1XAUBYOOLF1GY |

| Defendant No. | Defendant/Store Name | Seller ID |
|---|---|---|
| 22 | GUOYINZHIPIN | AZXK4YLIY9QD |
| 23 | GYSTL | A31J3IIAL8RI88 |
| 24 | hgs76dh | A1GNJ0L6IEMC58 |
| 25 | HonMohui | A1J2LOG9IGAL2O |
| 26 | JIAHUIdianshang | A2XNADO6Q9H5E1 |
| 27 | JINGTAODIANZI | A1QYIW1HDBTTNF |
| 28 | JJcye | A20VV6JUVACB2O |
| 29 | JuanX | A1BJBLDUO3ET52 |
| 30 | kwjiliguala± | A2RCFR10RMAVMU |
| 31 | lan diao | A38V9ZC6TLKPV8 |
| 32 | Lindsay Nixon(20-26 Days Delivery) | A23TJ6XHINM6HD |
| 33 | Liontobuy | A1DOEP57X2K2JZ |
| 34 | LJEA-US | A2GVX087JFO5YN |
| 35 | Longtous | A1Y96VML4RNQ3 |
| 36 | LONPYAO | A2M6CFO3E1R2PW |
| 37 | lucky ☆℃81US | A2VJP7ZX0UH6VC |
| 38 | LUJIAHAO180 | A1P8GAC7G6FB2B |
| 39 | Marridon | A28IZYH4T3DAHC |
| 40 | mei yun | A2Z6T9H84TL1BZ |
| 41 | Mia Yonger(20-26 Days Delivery) | A2LC87COY29AOI |
| 42 | Mild Milk. | AP5N6HIAPCHCY |
| 43 | MInPInLa | A3AZJDXCVCHVQK |
| 44 | MoliQ | A2NR5E7IQNTZ3I |

| Defendant No. | Defendant/Store Name | Seller ID |
|---|---|---|
| 45 | MSIYOU | A2GSVW9R96OFID |
| 46 | naijing-Fast Delivery (7-15 days) | A3CNEDKDB0UAFF |
| 47 | NANCY99 | A29654R28ZMDWL |
| 48 | NANGYANG | ADCHCPP17JEBO |
| 49 | Ounabing | A1IV2N6N897ZZ0 |
| 50 | Owill (7-15 Days Fast Delivery) | AES3TBGYYMVYV |
| 51 | PINGJIN | A1MMCOAOCOYQFA |
| 52 | powlance | A21DOA8WOKBJC9 |
| 53 | QIUsujing | A3UH6UZACX29NN |
| 54 | RapidYasuo | AT07G7YS4UPSZ |
| 55 | Renpojo | AY7AAF0S7HJ8U |
| 56 | Selltam. | A11P520JI703ME |
| 57 | SHIYI Girl | AIU1IMGVXVAZQ |
| 58 | Sunday8 | A2NCGU6N5OXGJB |
| 59 | Syysgift | A1EQR1IO0X7VTZ |
| 60 | The orchid shop | AZ4JDOFF8X61C |
| 61 | Tini-Store | A2N2SVY65F3QKF |
| 62 | udhOnshD | A7LJKPN8Q5IGX |
| 63 | Unparalleled | AAEJ0TZ8QBKCR |
| 64 | Wear-DOY | A2YNMWKAOZTIB3 |
| 65 | WUYU STORE | A1DDBGECZL3VFW |
| 66 | XEHWG | A26P31KEZQAFFM |
| 67 | XuYuan SC | A3KK04QNGEGRD7 |
| 68 | YanYanLady | A8RBVODAW00AN |

| Defendant No. | Defendant/Store Name | Seller ID |
|---|---|---|
| 69 | YIXUANYX | AXSS8QBGKFR6H |
| 70 | Yolo17&&&% | AUBXF2TRMPR6X |
| 71 | Youdw | A2A6AEZ0OKN47N |
| 72 | Yowein | A102J2LW09ZAA3 |
| 73 | zhuxinxing | A2LS3H6FBE1SH |
| 74 | 济源天翔商贸有限公司 [Jiyuan Tianxiang Trading Company] | A1JZO62R2D4VD5 |
| 75 | dangworld-8 | 265028331607 |
| 76 | linxia-2136 | 224316778432 |
| 77 | long9tansha | 363279616563 |
| 78 | sironwen-0 | 324461177626 |
| 79 | wangti-67 | 143918412141 |
| 80 | 01888 Store | 4914045 |
| 81 | ANIUNIU Store | 3477031 |
| 82 | BeautyBaby Store | 3281028 |
| 83 | BT dropshipping Store | 911189140 |
| 84 | Child's Toy Store | 4929007 |
| 85 | faina's Store | 5484036 |
| 86 | FunFun Toy Store | 910318235 |
| 87 | Gogomylittlebaby Store | 3154019 |
| 88 | goodluck baby Store | 3210016 |
| 89 | MUQGEW for YOU Store | 4046039 |
| 90 | SevenU Store | 4921031 |
| 91 | Shop2944189 Store | 2944189 |

| Defendant No. | Defendant/Store Name | Seller ID |
|---|---|---|
| 92 | Shop5055184 Store | 5055184 |
| 93 | Shop5426288 Store | 5426288 |
| 94 | Shop5517084 Store | 5517084 |
| 95 | Shop911137204 Store | 911137204 |
| 96 | bianyiren | 5b0cb8e101287527a576e9e7 |
| 97 | ElfinHome | 566f60cd4ba04645665167bb |
| 98 | ngoc234 | 5e59dac3d3f7da16c02405ea |

**LISTING OF EXHIBITS**

Exhibit 1................................Photographic Comparison of genuine DAISY PILLOW™ and Knock-Off Products

Exhibit 2................................Printout of Plaintiff designs.com page for DAISY PILLOW™

Exhibit 3 ...............................U.S. Reg. No. 3528611 (Butterfly Craze®)

Exhibit 4................................Excerpts from Fiscal Year 2018 U.S. Customs and Border Protection Intellectual Property Seizure Statistics Report

Exhibit 5................................Daniel C. K. Chow, Alibaba, Amazon, and Counterfeiting in the Age of the Internet, 40 NW. J. INT'L L. & BUS. 157, 186 (2020)

Exhibit 6................................Report on "Combating Trafficking in Counterfeit and Pirated Goods" prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans (Jan. 24, 2020)