IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BROADWAY PINE BRANDS LLC, | |
| Plaintiff, | Civil Action No. 2:21-cv-406 |
| v. | |
| SHIRO HOUSE, *et al*., | |
| Defendants. | **FILED UNDER SEAL** |

**MEMORANDUM OF LAW IN SUPPORT OF
*EX PARTE* APPLICATION FOR: 1) TEMPORARY RESTRAINING ORDER;
2) AN ORDER RESTRAINING ASSETS AND MERCHANT STOREFRONTS;
3) AN ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD
NOT ISSUE; AND 4) AN ORDER AUTHORIZING EXPEDITED DISCOVERY**

Stanley D. Ference III
Pa. ID No. 59899
courts@ferencelaw.com

Brian Samuel Malkin
Pa. ID No. 70448
bmalkin@ferencelaw.com

FERENCE & ASSOCIATES LLC
409 Broad Street
Pittsburgh, Pennsylvania 15143
(412) 741-8400 – Telephone
(412) 741-9292 – Facsimile

Attorneys for Plaintiff

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................... iii

I.     INTRODUCTION ................................................................................. 1

II.    STATEMENT OF FACTS ...................................................................... 8

       A.    PLAINTIFF'S PRODUCT ........................................................ 8

       B.    PLAINTIFF'S RIGHTS............................................................ 9

       C.    PLAINTIFF'S EFFORTS TO POLICE THE DEFENDANTS'
             CONDUCT .............................................................................. 11

       D.    THE DEFENDANTS' WRONGFUL CONDUCT ............................... 13

III.   ARGUMENT .......................................................................................... 17

       A.    THIS COURT HAS PERSONAL JURISDICTION OVER DEFENDANTS ...... 17

             1.    Defendants are Subject to Personal Jurisdiction
                   Under 42 P.A. Cons. Stat. § 5322............................................ 17

             2.    Exercising Personal Jurisdiction Over Defendants
                   Comports With Due Process......................................... 22

       B.    PLAINTIFF IS ENTITLED TO AN *EX PARTE* TEMPORARY
             RESTRAINING ORDER AND A PRELIMINARY INJUNCTION.................... 29

             1.    Plaintiff Will Suffer Irreparable Harm
                   in The Absence of an Injunction
                   Leaving It With No Adequate Remedy at Law ......................... 32

             2.    Plaintiff Is Likely to Prevail on The Merits
                   of its Lanham Act Claims ........................................................ 35

                   a.    Defendants' Use of Plaintiff's Photographs .................. 36

                   b.    Defendant's Infringement of Plaintiff's Registered
                         Trademark.............……………................................ 39

                         1.    Plaintiff's Mark is Strong and Distinctive ......... 41

                         2.    Defendants' Knock-Off Products and Marks are Virtually
                               Identical to Plaintiff's Product and Plaintiff's Mark........42

3. The Sophistication of Purchasers .......................................43

4. Defendants Acted in Bad Faith  ........................................43

5. Actual Confusion Can Be Inferred
Between Defendants' Knock-off Products and the
Plaintiff's Product .............................................................44

6. Defendants' Infringing Products Are of Inferior Quality ..45

7. Defendants' Knock-off Products Directly Compete
With The Plaintiff's Product and
There is No Gap to Bridge .................................................45

3. Plaintiff Is Likely to Prevail on Its State Law Claims ..............................47

4. The Balance of Hardships Favors Plaintiff……………………………47

5. The Relief Sought Serves the Public Interest ............................................48

C. PLAINTIFF IS ENTITLED TO AN ORDER PREVENTING
1) THE FRAUDULENT TRANSFER OF ASSETS AND 2) FREEZING OF
DEFENDANTS' MERCHANT STOREFRONTS .................................................49

1. Defendants' Assets Must be Frozen ..........................................49

2. Defendants' User Accounts and Merchant Storefronts
Must be Frozen  .........................................................................54

D. PLAINTIFF IS ENTITLED TO AN ORDER AUTHORIZING
EXPEDITED DISCOVERY .................................................................................55

E. PLAINTIFF'S REQUEST FOR A SECURITY BOND
IN THE AMOUNT OF $5,000 IS ADEQUATE .................................................59

IV. CONCLUSION .................................................................................................61

## TABLE OF AUTHORITIES

**Cases**

*A & H Sportswear v. Victoria's Secret Stores, Inc.,*
  237 F.3d 198 (3d Cir. 2000) ..................................................................................... 41

*A.T. Cross Co. v. Jonathan Bradley Pens, Inc.,*
  470 F.2d 689, (2d Cir. 1972) ................................................................................... 43

*A1 Mortg. Corp. v. A1 Mortg. and Financial Services, LLC,*
  2006 WL 1437744 (W.D. Pa. 2006) ......................................................................... 18

*A-1 Mortg. Corp. v. Day One Mortg., LLC,*
  2007 WL 30317 (W.D. Pa. 2007) ............................................................................ 19

*Abbott Labs. v. Sandoz, Inc.,*
  544 F.3d 1341, 1362 (Fed. Cir. 2008) ..................................................................... 34

*Abercrombie & Fitch Trading Co. v. Abercrombieclassic.com,* No. 15-62579-CIV-CMA, 2015
  U.S. Dist. LEXIS 179041, at *5 (S.D. Fla. Dec. 11, 2015) ..................................... 21

*Adidas AG v. 007adidasuk.com,* No. 15-61275-CIV-GAYLES, 2015 U.S. Dist. LEXIS 179020,
  at *8 (S.D. Fla. 2015) .............................................................................................. 21

*Admarketplace, Inc. v. Tee Support, Inc.,* No. 13-cv-5635- LGS, 2013 U.S. Dist. LEXIS 129749,
  at *5 (S.D.N.Y. Sep. 11, 2013) ........................................................................... 57, 58

*Advance Magazine Publrs. Inc. v. Vogye Intern.,*
  123 F. Supp. 2d 790 (D.N.J. 2000) .......................................................................... 47

*Advanced Portfolio Technologies, Inc. v. Advanced Portfolio Technologies Ltd.,*1994 U.S. Dist.
  LEXIS 18457, at *7 (S.D.N.Y. Dec. 28, 1994) ................................................... 56, 57

*Advanced Tactical Ordnance Systems, LLC v. Real Action Paintball, Inc.,* 751 F.3d 796, 803 (7th
  Cir. 2010) ................................................................................................................ 21

*Airigan Solutions, LLC v. Artifacts_Selling,* No. 18-cv-1462 (W.D. Pa. Oct. 31, 2018) (Fischer,
  J.) ........................................................................................................................ 7, 60

*Airigan Solutions, LLC v. Babymove,*
  No. 19-cv-166 (W.D. Pa. Feb. 14, 2019) (Fischer, J.) ....................................... 7, 60

*Allstar Marketing Group, LLC v. 158, et al.,*
  No. 18-cv-4101-GHW, Dkt. 22 (S.D.N.Y. May 17, 2018) ...................................... 16

*Animale Grp. Inc. v. Sunny's Perfume Inc.,*
  256 F. App'x 707, (5th Cir. 2007) ............................................................................ 50

*Asahi Metal Indus. Co., Ltd. v. Superior Court of California,* 480 U.S. 102, 109, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987) ................................................................................................ 23

*AT&T Co. v. Winback and Conserve Program, Inc.,*
42 F.3d 1421, 1427 (3d Cir. 1994) ............................................................. 32, 35, 44

*AW Licensing, LLC v. Bao,* No. 15-cv-1373, 2015 U.S. Dist. LEXIS 177101, at *3 (S.D.N.Y. Apr. 1, 2015)................................................................................................... 16, 54

*Ayyash v. Bank Al-Madina,*
233 F.R.D. 325, 326 (S.D.N.Y. 2005) ............................................................... 57

*Balenciaga Am., Inc. v. Dollinger,* No. 10-cv-2912-LTS, 2010 U.S. Dist. LEXIS 107733, at *22 (S.D.N.Y. Oct. 8, 2010) ...................................................................................... 49

*Bangor Punta Operation v. Universal Marine Co.,*
543 F.2d 1107 (5th Cir. 1976) ........................................................................ 38

*Belstaff Grp. SA v. Doe, No. 15-cv-2242-PKC/MHD*, 2015 U.S. Dist. LEXIS 178124, at *2 (S.D.N.Y. June 18, 2015)................................................................................... 16

*Bernard v. Commerce Drug Co.,*
774 F. Supp. 103 (E.D.N.Y. 1991) ................................................................... 42

*Best Van Lines, Inc. v. Walker,*
490 F.3d 239, 243 (2d. Cir. 2007) .............................................................. 20, 22

*Bill Blass, Ltd. v. SAZ Corp.,*
751 F.2d 152, 224 U.S.P.Q. (BNA) 753 (3d Cir. 1984) ................................... 33, 48

*Boschetto v. Hansing,*
539 F.3d 1011, 1019 (9th Cir. 2008) ............................................................... 19

*Broad. Music, Inc. v. Prana Hosp.,* Inc.,
158 F. Supp. 3d 184, 196 (S.D.N.Y. 2016) ..................................................... 47

*Burger King Corp. v. Rudzewicz,*
471 U.S. 462, 475 (U.S. 1985)............................................................. 22, 24, 28

*Cadbury Beverages Inc. v. Cott Corp.,*
73 F.3d 474, 480 (2d Cir. 1996) ..................................................................... 45

*Calder v. Jones,* 465 U.S. 783,
788 (1984) ..................................................................................................... 22

*Carteret Sav. Bank, F.A. v. Shushan*,
954 F.2d 141 (3d Cir. 1992) ........................................................................... 22

*Cartier International A.G. v. Replicapaneraiwatches.cn,* No. 17-cv-62401 (S.D. Fla. Jan. 2, 2018) ................................................................................................................................... 7

*Chambers v. Nasco, Inc.,*
501 U.S. 32, 44 (1991) .................................................................................................... 29

*Chanel Inc. v. Yang,* No. C-12-04428-PJH (DMR), 2013 U.S. Dist. LEXIS 151104, at *5-6 (N.D. Cal. Aug. 13, 2013) ............................................................................................. 14

*Chanel, Inc. v. 2012leboyhandbag.com,* No. 15-61986-CIV-WJZ, 2015 U.S. Dist. LEXIS 177989, at *3 (S.D. Fla. Oct. 13, 2015) .................................................................... 21

*Chanel, Inc. v. Chanelsstore.com,* No. 15-61156-CIV- CMA, 2015 U.S. Dist. LEXIS 179101, at *5 (S.D. Fla. August 31, 2015) ................................................................................ 21

*Chanel, Inc. v. Conklin Fashions, Inc.,* No. 3:15-cv-893-MAD/DEP, 2015 U.S. Dist. LEXIS 109886, at *10-13 (N.D.N.Y. Aug. 14, 2015) .................................................................. 16

*Chanel, Inc. v. Powell,* No. C/A 2:08-0404-PMD-BM, 2009 U.S. Dist. LEXIS 127709, at *7 (D.S.C. 2009) .................................................................................................................... 15

*Checkpoint Sys., Inc. v. Check Point Software Techs., Inc.,* 269 F.3d 270, 294–95 (3d Cir. 2001) ............................................................................................................................................ 40

*Chloe v. Designersimports.com USA, Inc.,* No. 07-cv-1791 -CS/GAY, 2009 U.S. Dist. LEXIS 42351, at *2 (S.D.N.Y. Apr. 29, 2009) .................................................................... 16

*Coalition for Parity, Inc. v. Sebelius,*
709 F.Supp.2d 6 (D.D.C. 2010) ...................................................................................... 32

*Columbia Pictures Indus., Inc. v. Jasso,*
927 F. Supp. 1075 (N.D. Ill. 1996) ................................................................................ 31

*Crossbow, Inc. v. Dan-Dee Imports, Inc.,*
266 F. Supp. 335 (S.D.N.Y. 1967) ................................................................................. 38

*CSC Holdings, Inc. v. Greenleaf Elec., Inc.,*
2000 WL 715601 (N.D. Ill. 2000) .................................................................................. 53

*D'Jamoos v. Pilatus Aircraft,*
566 F.3d 94, 102 (3d Cir. 2009) ................................................................................ 17, 27

*Dama S.P.A.* v. *Doe,*
2015 U.S. Dist. LEXIS 178076, at *4-6 (S.D.N.Y. June 12, 2015) ......................... 53

*Dastar Corp. v. Twentieth Century Fox Film Corp.,*
539 U.S. 23 (2003) .......................................................................................................... 36

*DatatechEnters. LLC v. FFMagnatLtd.,* No. 12-cv-04500-CRB, 2012 U.S. Dist. LEXIS 131711, at *12 (N.D. Cal. Sept. 14, 2012) ......................................................................................... 51

*Dell Inc. v. BelgiumDomains, LLC*, Case No. 07-22674 2007 WL 6862341 (S.D Fla. Nov. 21, 2007) .................................................................................................................................. 30

*Doctor's Assocs., Inc. v. Stuart,*
85 F.3d 975, 985 (2d Cir. 1996) ........................................................................................... 60

*Doggie Dental Inc. v. Anywill,* No. 19-cv-682 (W.D. Pa. June 13, 2019) (Hornak, J.) (sellers on amazon.com) ........................................................................................................................ 7

*Doggie Dental Inc. v. Go Well,* No. 19-cv-1282 (W.D. Pa. Oct. 11, 2019) (Hornak, J.) (sellers on amazon.com) ........................................................................................................................ 7

*Doggie Dental Inc. v. Max_Buy*, No. 19-cv-746 (W.D. Pa. June 27, 2019) (Hornak, J.) (sellers on ebay.com) .............................................................................................................................. 7

*Doggie Dental Inc. v. Worthbuyer,* No. 19-cv-1283 (W.D. Pa. Oct. 11, 2019) (Hornak, J.) (sellers on ebay.com) ......................................................................................................................... 7

*eBay, Inc. v. MercExchange, LLC,*
547 U.S. 388, 393 (2006); *Salinger,* 607 F.3d at 80) ........................................................... 33

*Ebling & Reuss Co. v. International Collectors Guild, Ltd.*, 462 F. Supp. 716, 720 (E.D. Pa. 1978) .................................................................................................................................... 38

*El Greco Leather Prods. Co. v. Shoe World, Inc.*,
806 F.2d 392, 395 (2d Cir. 1986) ................................................................................... 32, 34

*EnviroCare Techs, LLC v. Simanovsky, No. 11-CV-3458, 2012 U.S. Dist. LEXIS 78088, at *10 (E.D.N.Y. June 4, 2012)* ..................................................................................................... 19

*F.T. Int'l Ltd. v. Mason,*
2000 WL 1514881 (E.D. Pa. 2000) ..................................................................................... 53

*Federal Express Corp. v. Federal Espresso, Inc.,*
201 F.3d 168, 173 (2d Cir. 2000) ........................................................................................ 32

*Fisons Horticulture, Inc. v. Vigoro Indus., Inc.,*
30 F.3d 466, 472 (3d Cir.1994) ............................................................................... 39, 40, 41

*Ford Motor Co. v. Summit Motor Prods. Inc.,* 930 F.2d 277, 291 (3d Cir.), *cert. denied,* 502 U.S. 939, 112 S.Ct. 373, 116 L.Ed.2d 324 (1991) .................................................................. 39, 40

*Fun-Damental Too, Ltd. v. Gemmy Indus. Corp.,*
111 F.3d 993, 1004-1005 (2d Cir. 1997) .............................................................................. 42

*Gentex Corp. v. Abbott,*
   978 F. Supp. 2d 391, 398 (M. D. Pa. 2013) ............................................................................. 26

*George Basch Co., Inc. v. Blue Coral, Inc.,*
   968 F.2d 1532, 1537 (2d Cir. 1992) ...................................................................................... 50

*Gourmet Video, Inc. v. Alpha Blue Archives, Inc.,*
   2008 WL 4755350, *3 (D.N.J. Oct. 29, 2008) ......................................................................... 26

*Grand Entm't Group, Ltd., v. Star Media Sales, Inc.,*
   988 F.2d 476, 483 (3rd Cir.1993) ........................................................................................ 28

*Groupe SEB USA v. Euro-Pro Operating LLC,*
   774 F.3d 192 (3d Cir.. 2014) ........................................................................................ 34, 45

*Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Funds, Inc.,*
   527 U.S. 308 (1999) .......................................................................................................... 50

*Gucci Am. v. Bank of China,*
   768 F.3d 122, 131-132 (2d Cir. 2014) ................................................................................. 52

*Gucci Am., Inc. v. Gucc- Outlet.com,* No. 15-62165-CIV-DPG, 2015 U.S. Dist. LEXIS 181483,
   at *3-4 (S.D. Fla. Nov. 9, 2015) ........................................................................................ 21

*Gucci Am., Inc. v. Tyrrell-Miller,*
   678 F. Supp. 2d 117, 119 (S.D.N.Y. 2008) ............................................................................ 14

*Gucci Am., Inc. v. Weixing Li,*
   768 F.3d 122, 126 (2d Cir. 2014) ....................................................................................... 54

*Gucci America, Inc. v. Action Activewear, Inc.,*
   759 F. Supp. 1060, 1065 (S.D.N.Y. 1991) ............................................................................. 44

*Gucci America, Inc., et al v. Alibaba Group Holding LTD, et al,* No. 1:15-cv-03784-PKC
   (S.D.N.Y. June 23, 2015) .................................................................................................. 16

*Hall v. Johnson,*
   599 F.Supp.2d 1, 6 n. 2 (D.D.C. 2009) ................................................................................ 32

*Hamilton-Brown Shoe Co. v. Wolf Bros. & Co.,*
   240 U.S. 251, 259 (1916) .................................................................................................. 52

*Helicopteros Nacionales de Colombia, S.A. v. Hall,*
   466 U.S. at 414 (1984) ..................................................................................................... 22

*HICKIES, Inc. v. Shop1668638 Store, et al.,*
   No. 17-cv-9101-ER, Dkt. 14 (S.D.N.Y. Dec. 6, 2017) ............................................................. 16

*Hoxworth v. Blinder, Robinson & Co., Inc.*,
  903 F.2d 186 (3d Cir. 1990) ........................................................................................ 6, 52

*Hoxworth v. Blinder, Robinson & Co., Inc.*,
  903 F.2d 186, 210 n. 31 (3d Cir.1990) ....................................................................... 50, 59

*Ideavillage Products Corp. v. Aarhus, et al.*,
  No. 18-cv-2739- JGK, Dkt. 22 (S.D.N.Y. March 28, 2018) .................................... 16

*Ideavillage Products Corp. v. abc789456, et al.*, No. 18- cv-2962-NRB, Dkt. 11 (S.D.N.Y. April
  11, 2018) ...................................................................................................................... 16

*Ideavillage Products Corp. v. Bling Boutique Store, et al.*, No. 16-cv-09039-KMW, Dkt. 9
  (S.D.N.Y. Nov. 21, 2016) ............................................................................................ 16

*Ideavillage Products Corp. v. Dongguan Opete Yoga Wear Manufacturer Co., Ltd., et al.*, No.
  17-cv-9099-JMF, Dkt. 19 (S.D.N.Y. Nov. 27, 2017) ................................................ 16

*Ideavillage Products Corp. v. Dongguan Shipai Loofah Sponge Commodity Factory, et al.*, No.
  18-cv-901-PGG, Dkt. 20 (S.D.N.Y. Feb. 1, 2018) .................................................... 16

*Ideavillage Products Corp. v. Shenzhen City Poly Hui Foreign Trade Co., Ltd., et al.*, No. 17-cv-
  8704-JGK. .(S.D.N.Y. May 24, 2017) ........................................................................ 16

*Illinois v. Hemi Group LLC*,
  622 F.3d 754, 756 (7th Cir. 2010) .............................................................................. 21

*IMO Industries, Inc. v. Kiekert AG*,
  155 F.3d 254 (3rd Cir.1998) ........................................................................................ 17

*Instant Air Freight Co. v. C.F. Air Freight, Inc.*,
  882 F.2d 797, 804 (3d Cir.1989) ................................................................................. 59

*Int'l Shoe v. Washington*,
  326 U.S. 310 (1945) ..................................................................................................... 27

*Intenze Products, Inc. v. 1586, et al.*,
  No. 18-cv-4611-RWS (S.D.N.Y. May 24, 2018) ...................................................... 16

*Interlink Int'l Fin. Servs,, Inc. v. Block*,
  145 F. Supp. 2d 312, 314 (S.D.N.Y. 2001) ............................................................... 60

*International Kennel Club v. Mighty Star, Inc.*,
  846 F.2d at 1092 n. 8 ................................................................................................... 48

*International Shoe Co. v. Washington*, 3
  26 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) ................................................. 23

*Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.,* 146 F.3d 66, 71-72 (2d Cir. 1998) ............................................................................................................................. 49

*Jiffy Lube Int'l, Inc.,*
   968 F.2d 371, 378 (3d Cir.1992) ...................................................................................... 33

*JLM Couture, Inc. v. Aimibridal, et al.,* No. 18-cv-1565-JMF, Dkt. 18 (S.D.N.Y. Feb. 21, 2018) ............................................................................................................................. 16

*Johnson v. Couturier,*
   572 F.3d 1067, 1085 (9th Cir. 2009) ............................................................................. 51

*Juul Labs, Inc. v. The Partnerships and Unincorporated Associations Identified on Schedule "A",* No. 18-cv-1382 (E.D. Va. Nov. 16, 2018)........................................................ 8

*Klipsch Grp., Inc. v. Big Box Store Ltd.,* No. 1:12-cv-06283-VSB, 2012 U.S. Dist. LEXIS 153137, at *3-4 (S.D.N.Y. Oct. 24, 2012) ................................................................ 16

*Kraft Gen. Foods, Inc. v. Allied Old English, Inc.,*
   831 F. Supp. 123, 132 (S.D.N.Y. 1993) .................................................................... 43

*L'Aiglon Apparel, Inc. v. Lana Lobell, Inc.,*
   214 F.2d 649 (3d Cir. 1954) ...................................................................................... 36, 37

*L'At hen e, Inc. v. EarthSpring LLC,*
   570 F.Supp. 588, 593–94 (D. Del. 2008)................................................................... 26

*Levi Strauss & Co. v. Sunrise Int'l Trading Inc.,*
   51 F.3d 982, 987 (11th Cir. 1995) ............................................................................ 50, 52

*Link v. Wabush R. R.,*
   370 U.S. 626, 630 – 31 (1962)................................................................................... 29

*Local 1814, Int'l Longshoremen's Ass'n v. N.Y. Shipping Ass'n, Inc.,*
   965 F.2d 1224, 1228 (2d Cir. 1992) ......................................................................... 32

*Lorillard Tobacco Co. v. Applewood Party Store, Inc.,*
   2006 WL 2925288 ..................................................................................................... 18

*Louis Vuitton Malletier v. Burlington Coat Factory Warehouse Corp.,* 426 F.3d 532, 537 (2d Cir. 2005)............................................................................................................................ 32

*Louis Vuitton Malletier, S.A. v. 2015shoplvhandbag.com,* No. 15-62531-CIV-BLOOM, 2015 U.S. Dist. LEXIS 181477, at *11 (S.D. Fla. Dec. 18, 2015).................................... 21

*Louis Vuitton Malletier, S.A. v. Mosseri,*
   736 F.3d 1339, 1356-58 (11th Cir. 2013) ................................................................ 20

*Malcom v. Esposito,*
  63 Va. Cir. 440, 446 (Cir. Ct. 2003) ....................................................................................... 20

*Malibu Media, LLC v. Doe,*
  2015 U.S. Dist. LEXIS 87751, at *2-3 (S.D.N.Y. July 6, 2015)............................................ 57

*Malibu Media, LLC v. Doe*,
  2016 U.S. Dist. LEXIS 64656, at *4 (S.D.N.Y. May 16, 2016)............................................. 57

*Malletier v. 2015louisvuittons.com,* No. 15-61973-CIV-BB, 2015 U.S. Dist. LEXIS 181452, at
  *11 (S.D. Fla. Sep. 29, 2015)................................................................................................ 21

*Malletier v. 2016bagsilouisvuitton.com,* No. 16-61554-CIV- DPG, 2016 U.S. Dist. LEXIS
  93072, at *3 (S.D. Fla. July 18, 2016) .................................................................................. 14

*Mason Tenders Dist. Council Pension Fund v. Messera*, 1997 WL 223077 (S.D.N.Y. May 7,
  1997) ..................................................................................................................................... 50

*Mateson Chemical Corp. v. Veronon,*
  2000 WL 680020 (E.D. Pa. May 9, 2000) ............................................................................. 47

*McGee v. Int'l Life Ins. Co.,*
  355 U.S. 220, 223, 78 S.Ct. 199, 2 L. Ed. 2d 223 (1957)....................................................... 27

*Mellon Bank (East) PSFS, N.A. v. DiVeronica Bros., Inc.,*
  983 F.2d 551, 556 (3d Cir. 1993) .......................................................................................... 24

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. O'Connor,*
  194 F.R.D. 618, 624 (N.D. 1ll. 2000) .................................................................................... 57

*Microsoft Corp. v. Jun Yan,*
  2010 U.S. Dist. LEXIS 14934 (Dist. Conn. Feb. 18, 2010) .................................................... 52

*Milk Studios, LLC v. Samsung Elecs. Co.,* 2015 U.S. Dist. LEXIS 38710, at *4-5 (S.D.N.Y. Mar.
  25, 2015) ............................................................................................................................... 57

*Millennium IP, Inc. v. The Partnerships and Unincorporated Associat*ions *Identified on Schedule
  "A"*, No. 18-cv-3778 (N.D. Ill. June 6, 2018) ........................................................................ 7

*Milliken v. Meyer,*
  311 U.S. 457 (1940).............................................................................................................. 22

*Mint, Inc. v. Iddi Amad*, No. 10-cv-9395-SAS, 2011 U.S. Dist. LEXIS 49813, at *9 , n.23
  (S.D.N.Y. May 9, 2011).................................................................................................... 34, 48

*Monster Energy Co. v. Chen Wensheng,*
  136 F. Supp. 3d 897, 906 (N.D. Ill. 2015) ............................................................................. 21

*Moose Toys Pty LTD et al. v. Guangzhou Junwei Trading Company d/b/a Backgroundshop et al.,*
No. 17-cv-2561-LAK, Dkt. 12 (S.D.N.Y. May 11, 2017) ....................................................... 16

*Moose Toys Pty Ltd. et al., v. 963, et al.,*
No. 18-cv-2187-VEC, Dkt. 16 (S.D.N.Y. April 2, 2018) ....................................................... 16

*Moose Toys Pty, Ltd. v. Thriftway Hylan Blvd. Drug Corp.,* No. 15- cv-4483-DLI/MDG, 2015
U.S. Dist. LEXIS 105912, at *8 (E.D.N.Y. Aug. 6, 2015) ..................................................... 31

*Mycoskie v.2016tomsshoessaleoutlet.us,* No. 16-61523- CIV -GAYLES, 2016 U.S. Dist. LEXIS
95963, at *4 (S.D. Fla. July 22, 2016) .................................................................................. 21

*N. Face Apparel Corp. v. Fujian Sharing Imp. & Exp. Ltd. Co.,* No. 1:10- cv-1630-AKH, 2011
U.S. Dist. LEXIS 158807 (S.D.N.Y. June 24, 2011) ............................................................ 16

*N.Y. State Soc'y of CPA's v. Eric Louis Assocs.,*
79 F. Supp. 2d 331, 340 (S.D.N.Y. 1999) ............................................................................ 44

National Dynamics Corp. v. John Surrey, Ltd., (Inc.),
238 F.Supp. 423 (S.D.N.Y. 1963) ........................................................................................ 38

*National Football League v. Chen Cheng, et al.,*
No. 11-Civ-00344 (S.D.N.Y. January 19, 2011) .................................................................... 51

*Nemours & Co. v. Yoshida International, Inc.,*
393 F. Supp. 502, 514 (E.D.N.Y. 1975) ............................................................................... 44

*North Face Apparel Corp. v. TC Fashions, Inc.,* No. 05-cv-9083-RMB, 2006 U.S. Dist LEXIS
14226, at *10 (S.D.N.Y. Mar. 30, 2006) ............................................................................. 51

*Nu Image, Inc. v. The Partnerships and Unincorporated Associations Identified on Schedule
"A"*, No. 17-cv-2918 (N.D. Ill. May 12, 2017) ...................................................................... 7

*NYPHoldings v. New York Post Pub. Inc.,*
63 F. Supp. 3d 328, 341 (S.D.N.Y. 2014) ............................................................................ 33

*O'Connor v Sandy Lane Hotel Co., Ltd,*
496 F.3d 312 (3rd Cir. 2007) ........................................................................................ 27, 28

*Off-White, LLC v. A445995685, et al.,*
No. 18-cv-2009-LGS, Dkt. 5 (S.D.N.Y. March 27, 2018) .................................................... 16

*Oldfield v. Pueblo De Bahia Lora, S.A.,*
558 F.3d 1210, 1219-1224 (11th Cir. 2011) ........................................................................ 20

*One Alarm Monitoring, Inc. v. Exec. Prot. One Sec. Serv., LLC,* 553 F. Supp. 2d 201, 206
(E.D.N.Y. 2008) .................................................................................................................. 44

*Ontel Products Corp. v. Airbrushpainting Makeup Store a/k/a Airbrushespainting, et al.,* No. 17-cv-871-KBF, Dkt. 20 (S.D.N.Y. Feb. 6, 2017) ................................................................. 16, 60

*Opticians Ass'n of Am. v. Indep. Opticians of Am.,*
  *920 F.2d 187, 196 (3d Cir.1990)* ...................................................................... 33, 44

*Otokoyama Co. Ltd v. Wine of Japan Import, Inc.,*
  175 F.3d 266, 270 (2d Cir. 1999) ...................................................................... 39, 40

*Pappan Enters., Inc. v. Hardee's Food Sys., Inc.,*
  143 F.3d 800, 805 (3d Cir.1998) ................................................................................ 33

*Pennzoil Prods. Co. v. Colelli & Assocs., Inc.,*
  149 F.3d 197, 207 (3rd Cir.1998) ............................................................................... 28

*Pfizer, Inc. v. Y2K Shipping & Trading, Inc.,* 00-cv-5304-SJ, 2004 U.S. Dist. LEXIS 10426, at *15-16 (E.D.N.Y. March 26, 2004) .......................................................................... 47

*Philip Morris USA Inc. v. 5 Bros. Grocery Corp.,* No. 13-cv-2451- DLI/SMG, 2014 U.S. Dist. LEXIS 112274 (E.D.N.Y. Aug. 5, 2014) .......................................................................... 48

*Polymer Technology Corp. v. Mimran,*
  975 F.2d 58, 62 (2d Cir. 1992) .................................................................................. 45

*Polymer Techs., Inc. v. Bridwell,*
  103 F.3d 970, 975-76 (Fed. Cir. 1996 ........................................................................ 34

*Poole v. Sasson,*
  122 F. Supp. 2d 556 (E. D. Pa. 2000) ........................................................................ 23

*Pretty Girl, Inc. v. Pretty Girl Fashions, Inc.,*
  778 F. Supp. 2d 261, 268-269 (E.D.N.Y. 2011) ........................................................ 43

*Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n,*
  819 F. 2d 434, 436 (3rd Cir. 1987) ........................................................................... 17

*Purdue Pharma L.P. v. Boehringer Ingelheim GmbH,*
  237 F.3d 1359, 1368 (Fed. Cir. 2001) ....................................................................... 34

*Rado Watch Co.* v. *ABC, Co.,* 92-cv-3657-PKL, 1992 U.S. Dist. LEXIS 8356, at *11 (S.D.N.Y. June 8, 1992) ............................................................................................................ 42

*Rapid Slicer, LLC v. Buyspry,*
  *19-cv-249 (W.D. Pa. March 11, 2019) (Horan, J.)* ................................................... 60

*Reebok Int'l Ltd. v. Marnatech Enters., Inc.,*
  970 F.2d 552, 559 (9th Cir. 1992) ............................................................................. 50

*Remick v. Manfredy,*
  238 F.3d 248, 255 (3rd Cir.2001) ............................................................................................ 23

*Renner v. Lanard Toys Limited,*
  33 F.3d 277, 279 (3d Cir.1994) ................................................................................................ 23

*Rolex Watch, U.S.A., Inc. v. Pharel,* 09 CV 4810 (RRM) (ALC), 2011 U.S. Dist. LEXIS 32249,
  at 6 (E.D.N.Y. Mar. 11, 2011) ................................................................................................. 20

*Rovio Entertainment Ltd. and Rovio Animation OY v. Angel Baby Factory d/b/a
  Angelbaby_factory et al.,* No. 17-cv-1840-KPF, Dkt. 11 (S.D.N.Y. March 27, 2017) ...... 16, 60

*Rovio Entertainment Ltd. and Rovio Animation OY v. Best Baby and Kid Store, et al.,* No. 17-cv-
  4884-KPF, Dkt. 6 (S.D.N.Y. June 28, 2017) ........................................................................... 60

*S & R Corp. v. Jiffy Lube Int'l, Inc.,*
  968 F.2d 371, 378 (3d Cir.1992) .............................................................................................. 34

*Salinger v. Colting,*
  607 F.3d 68, 82 (2d Cir. 2010) ................................................................................................. 33

*Scott Paper Co. v. Scott's Liquid Gold, Inc.,*
  589 F.2d 1225, 1229 (3d Cir. 1978) .................................................................................... 39, 41

*SEC v. Caledonian Bank Ltd.,*
  317 F.R.D. 358 (S.D.N.Y. 2016) .............................................................................................. 53

Seventh Circuit, in *Illinois v. Hemi Group LLC* ........................................................................ 21

*Sheldon v. Metro-Goldwyn Pictures Corp.,*
  309 U.S. 390, 399 (1940) .......................................................................................................... 52

*Showtech Merchndising, Inc. v. Various John Doe, et al,* 2:12-cv-1270 (W.D. PA September 6,
  2012) .......................................................................................................................................... 60

*Sin, Inc. v. Does 1-176,*
  279 F.R.D. 239, 241 (S.D.N.Y. 2012) ...................................................................................... 57

*SK & F, Co. v. Premo Pharmaceutical Laboratories,* 6
  25 F.2d 1055, 1057 (3d Cir.1980) ............................................................................................ 48

*Skrodzki v. Marcello,*
  810 F. Supp. 2d 501, 512-13 (E.D.N.Y. 2011) ........................................................................ 20

*Spin Master Ltd. and Spin Master, Inc. v. 158, et al.,* No. 18-cv-1774-PAE, Dkt. 18 (Feb. 27,
  2018) .......................................................................................................................................... 16

*Spin Master Ltd. and Spin Master, Inc. v. Alisy, et al.,* No. 18-cv-543-PGG, Dkt. 16 (S.D.N.Y.
  Jan. 22, 2018) ............................................................................................................................ 16

*Square D Co. v. Scott Elec. Co.*, No. 06-459, 2008 WL 4462298, at *3 (W.D. PA September 30, 2008) ........................................................................................................... 25, 26, 27, 28

*Star Indus. v. Bacardi & Co.,*
412 F.3d 373, 387 (2d Cir. 2005) ................................................................................ 46

*Starbucks Corp. v. Wolfe's Borough Coffee, Inc.,*
588 F.3d 97, 115 (2d Cir. 2009) ................................................................................. 46

*Sterling Commercial Credit-Michigan, LLC v. Phoenix Industries I, LLC*, 762 F.Supp.2d 8 (D.D.C. 2011) .............................................................................................................. 32

*Stern v. Cosby,*
246 F.R.D. 453, 457 (S.D.N.Y. 2007) ......................................................................... 57

*Stix Prods., Inc. v. United Merchants &Mfrs., Inc.,*
295 F. Supp. 479, 488 (S.D.N.Y. 1968) ..................................................................... 42

*The North Face Apparel Corp. and PRL USA Holdings, Inc. v. Fujian Sharing, et al.*, Civil Action No. 10-Civ-1630 (AKH) (S.D.N.Y. March 2, 2010) ...................................... 51

*Thompson Medical Co., v. Pfizer Inc.,*
753 F.2d 208, 216 (2d Cir. 1985) ............................................................................... 42

*Tiffany (NJ) LLC* v. *Forbse,* No. 11-cv-4976-NRB, 2012 U.S. Dist. LEXIS 72148, at *34 (S.D.N.Y. May 23, 2012) ........................................................................................... 50

*Time Warner Entertainment Co., L.P.* v. *Does*,
876 F. Supp. 407, 410-11 (E.D.N.Y. 1994) ............................................................... 31

*Times Mirror Magazines, Inc. v. Las Vegas Sports News, L.L.C.*, 212 F.3d 157, 169 (3d Cir.2000) ....................................................................................................................... 33

*Tory Burch LLC v. Yong Sheng Intl Trade Co., Ltd.*, No. 10-Civ-9336 (S.D.N.Y. December 17, 2010) ....................................................................................................................... 16, 51

*Toys "R" Us, Inc. v. Step Two, S.A.,*
318 F.3d 446 (3rd Cir.2003) .................................................................................. 24, 26

*TRE Services, Inc. v. U .S. Bellows, Inc.,*
2012 WL 2872830, *4–5 (W.D.Pa. July 12, 2012) ................................................... 26

*True Religion Apparel, Inc. et al. v. Xiaokang Lee et al*., No. 1:11-cv-08242-HB (S.D.N.Y. Nov. 15, 2011) ................................................................................................................... 16

*U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.,*
800 F.Supp.2d 515, 540 (S.D.N.Y. 2011) ................................................................. 33

*United States Jaycees v. Philadelphia Jaycees,*
  639 F.2d 134, 142 (3d. Cir. 1981) ........................................................................ 46

*Virgin Enterprises v. Nawab,*
  335 F.3d 141, 150 (2d Cir. 2003) .......................................................................... 46

*Walter v. Stacey,*
  837 A.2d 1205 (Pa. Super. 2003) ........................................................................... 6

*Warner Bros. Entm't Inc. v. Doe,* No. 14-cv-3492- KPF, 2014 U.S. Dist. LEXIS 190098
  (S.D.N.Y. May 29, 2014) .............................................................................. 50, 52

*William Mark Corporation v. 1&cc, et al.,*
  No. 18-cv-3889-RA, Dkt. 18 (S.D.N.Y. May 2, 2018) ........................................... 16

*Willyoung v. Colorado Custom Hardware, Inc.,*
  2009 WL 3183061 (W. D. Pa. Sept.30, 2009) ................................................... 25, 27

*Windsurfing Intern, Inc. v. AMF, Inc.,*
  782 F.2d 995, 1003 n.12 (Fed. Cir. 1986) ............................................................. 47

*Wishnatzki &Nathel, Inc. v. H.P. Island-Wide, Inc.,* No. 00-cv-8051-JSM, 2000 U.S. Dist.
  LEXIS 15664, at *4 (S.D.N.Y. 2000) .................................................................... 49

*WOW Virtual Reality, Inc. v. Bienbest, et al.,* No. 18-cv-3305-VEC, Dkt. 9 (S.D.N.Y. April 16,
  2018) ................................................................................................................ 16

*Wow-Virtual Reality, Inc. v. 740452063 et al.,* No. 18-cv-3618, Dkt. 18 (S.D.N.Y. April 25,
  2018) ................................................................................................................ 60

*WowWee Group Limited, et al. v. A249345157, et al,* No. 17-cv-9358-VEC, Dkt. 18 (S.D.N.Y.
  Dec. 11, 2017) .................................................................................................... 16

*WowWee Group Limited, et al. v. Meirly, et al.,* No. 18-cv-706-AJN, Dkt. 11 (S.D.N.Y. Jan. 26,
  2018) ................................................................................................................ 16

Zandelin v. Maxwell Bentley Mfg. Co.,
  197 F. Supp. 608 (S.D.N.Y. 1961) ........................................................................ 38

*Zino Davidoff SA v. CVS Corp.,*
  571 F.3d 238, 243 (2d Cir. 2009) .......................................................................... 34

*Zippo Mfg. Co. v. Zippo DOT Com,*
  952 F.Supp. 1119 (W.D.Pa.1997) .................................................................. passim

## Statutes

42 Pa. C. S. A. § 5322(b) (1981) ............................................................................... 23

15 U.S.C. § 1117(a) ................................................................................. 6, 49, 51, 52

15 U.S.C. § 1125(a), ................................................................................. 2

15 U.S.C.A. §§ 1114, 1125(a)(1)(A) ....................................................... 41

28 U.S.C. § 1651(a) ................................................................................. 2

## Rules

Fed. R. Civ. P.  65(c) ............................................................................... 59

Fed. R. Civ. P. 26(d)(1) ........................................................................... 57

Fed. R. Civ. P. 30(b), 34(b) ..................................................................... 56

Fed. R. Civ. P. 4 (e) (1) ........................................................................... 17

Fed. R. Civ. P. 64 ..................................................................................... 6

Fed. R. Civ. P. 65(a) ............................................................................... 61

Fed. R. Civ. P. 65(b) ............................................................................... 29

Fed. R. Civ. P. 65(d)(2)(C) ...................................................................... 58

Fed.R.Civ.P. 4(f)(3), ............................................................................... 55

Fed. R. Civ. P. 26(d)(1) ........................................................................... 57

Fed. R. Civ. P. 4 (e) (1) ........................................................................... 17

Fed. R. Civ. P. 65(b) ............................................................................... 29

## Other Authorities

1 Federal Unfair Competition: Lanham Act 43(a) § 6:12 (Dec. 2018 Update) ........................... 39

2 *McCarthy,* § 30:21 ................................................................................. 48

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BROADWAY PINE BRANDS LLC, | Civil Action No. |
| Plaintiff, | |
| v. | |
| SHIRO HOUSE, *et al.*, | **FILED UNDER SEAL** |
| Defendants. | |

## I. INTRODUCTION

Plaintiff submits this memorandum of law in support of its *ex parte* application for: 1) a temporary restraining order; 2) an order restraining assets and Merchant Storefronts (as defined *infra);* 3) an order to show cause why a preliminary injunction should not issue; and 4) an order authorizing expedited discovery against above-referenced Defendants (hereinafter collectively referred to as "Defendants" or individually as "Defendant") and the third party entities identified below  ("Application").[1]

Specifically, Plaintiff has obtained evidence clearly demonstrating that Defendants are either (i) using without authorization Plaintiff's distinct photograph(s) ("Plaintiff's Works"), while promoting, selling, offering for sale and distributing knock-offs of Plaintiff's Product thus unfairly competing, in a willful attempt to pass off their knock-off products as genuine versions of Plaintiff's Products, and/or (ii) using Plaintiff's federally registered service mark Butterfly Craze® ("Plaintiff's Mark"), while offering to sell and selling knock-offs of Plaintiff's Product,

---

[1]     Plaintiff acknowledges it is seeking multiple forms of relief.  Plaintiff will promptly provide supplemental briefing or oral argument on any issue should the Court request it.

thus counterfeiting.[2]; common law unfair competition; and common law trademark infringement, all pursuant to 15 U.S.C. § 1125(a), , 15 U.S.C. § 1114, and The All Writs Act, 28 U.S.C. § 1651(a).

Defendants' sale, distribution, and advertising of the Knock-Off Product are highly likely to cause consumers to believe that Defendants are offering Plaintiff's genuine product when in fact they are not. To illustrate, below are several examples which vividly show that the Knock-Off Product itself and the manner in which it is marketed is designed to confuse and mislead consumers into believing that they are purchasing Plaintiff's genuine product or that the Knock-Off Product is otherwise approved by or sourced from Plaintiff:

Plaintiff's Photographs





---

[2] While all the Defendants are allegedly unfairly competing, only Defendant Nos. 7, 14, 16, 23, 28, 32, 40, 41, 44, 54, 55, 60, 69, 70, and 74 are using Plaintiff's Mark and thus alleged to be counterfeiting. To be clear, whether the products infringe on the Plaintiff's Mark or unfairly compete, they are identified as Knock-Offs in these papers.

Evidence\Amazon\
Defendant aozhun listing






*See Declaration of Nate Jelovich* (the "*Jelovich Dec.*") at ¶ 18.

Defendants' actions have resulted in actual confusion in the marketplace between Defendants' Knock-Off Product and Plaintiff's genuine products. *Id.* at ¶ 19. Numerous purchasers of Defendants' Knock-Off Product have written on-line reviews to complain about the quality of the Knock-Off Product believing same to be a genuine version of Plaintiff's Product. *Id.* Examples of such complaint include: "I didn't like the quality"; "I don't know if I got a defective one. But it like falls apart constantly. I am constantly having to patch it up because seams keep coming apart. This has been going on since I first got it and I have gotten so fed up I had to come on here in case others ordered it and theirs is doing the same. It isn't a cheap pillow and should hold up better. I have a daughter who is very gentle with her toys so she isn't throwing it about or anything. She can simply sit on it and a seam busts. So frustrating"; "Please do not waste your money. It is horribly uncomfortable. My child won't use it. It is about the same as just sitting on the floor. Very overpriced and useless "seating cushion". We will probably keep this thing for a few days." *Id.* at ¶ 6. Such complaints and

- 3 -

negative comments are likely not just made directly to Plaintiff, but are also posted by buyers of the Knock-Off Products on various websites and social media sites for all the world to see. See *id.*

Defendants' Knock-Off Products are cheaply produced and substantially inferior to the genuine product. *Id.* at ¶ 5. As poorly designed and manufactured products that are knock-offs of Plaintiff's Product, the Knock-Offs are eroding the value of Plaintiff's brand. *Id.* The Knock-Off Products threaten to destroy the reputation of high quality that Plaintiff's Products have earned. Id. at ¶ 4.

According to the Fiscal Year 2018 U.S. Customs and Border Protection ("CBP") Intellectual Property Seizure Statistics Report, e-commerce sales have resulted in a sharp increase in the shipment of unauthorized products into the United States. *Declaration of Stanley D. Ference III* (the "Ference Dec.") at ¶ 3. Over 90% of all CBP intellectual property seizures were smaller international mail and express shipments (as opposed to large shipping containers). *Id.* Over 85% of CBP seizures originated from mainland China and Hong Kong. *Id.*. According to a report released by the U.S. Chamber of Commerce Global Intellectual Property Center (GIPC) titled Measuring the Magnitude of Global Counterfeiting, at least 86 percent of all global counterfeit products originate in Chinese and Hong Kong markets. *Id.* at ¶ 4. A February 2017 report commissioned by Business Action to Stop Counterfeiting and Piracy (BASCAP) and the International Trademark Association (INTA) entitled The Economic Impacts of Counterfeiting and Piracy included findings that counterfeit and pirated products account for billions in economic losses, resulting in tens of thousands of lost jobs for legitimate businesses and broader economic losses, including lost tax revenue. *Id.* at ¶ 5.

Defendants' unlawful activities have deprived and continue to deprive Plaintiff of its rights to fair competition. By their activities, Defendants are defrauding Plaintiff and the consuming public for Defendants' benefit. Defendants should not be permitted to continue their unlawful activities, which are causing Plaintiff ongoing irreparable harm. Accordingly, Plaintiff is seeking entry of a temporary restraining order prohibiting Defendants' further wrongful unfair competition.

Plaintiff also seeks to restrain the illegal profits generated by Defendants. Plaintiff has obtained evidence that Defendants operating their Seller IDs via Amazon.com ("Amazon") necessarily use money transfer and/or retention/processing services with Amazon as a method to receive monies generated through the sale of counterfeit products. Amazon operates as a money transmitter for sales made on Amazon and as such Amazon has the ability to identify, and restrain, the payment accounts associated with the Defendants who use their respective Seller IDs via Amazon to conduct their commercial transactions. See Declaration of Brian Samuel Malkin ("*Malkin Dec.*"), ¶ 1 - 9. Additionally, Plaintiff also obtained evidence that the Defendants operating their Seller IDs via eBay.com use money transfer and retention services with PayPal, Inc. ("PayPal") as a method for accepting payment for the sale of their counterfeit products. *Id.* and *Taylor Dec*. Furthermore, Plaintiff obtained evidence that Defendants operating their Seller IDs via Wish.com have their payments processed on their behalf using an aggregate escrow account in the name of ContextLogic, Inc. ("ContextLogic"). *Id.* Lastly, Plaintiff has obtained evidence that Defendants operating their Seller IDs via AliExpress.com ("AliExpress") have their payments processed on their behalf using aggregate escrow accounts in the name of Alibaba.com Hong Kong Limited, which operates the AliExpress.com platform (i.e., "AliExpress"), and its related companies, Zhejiang Ant Small and Micro Financial Services

- 5 -

Group Co., Ltd. AliPay (China) Internet Technology Co. Ltd., and Alipay.com Co., Ltd. (collectively referred to as "AliPay").[3] *Id.*

In light of the inherently deceptive nature of the knock-off and infringing business, Plaintiff has good reason to believe Defendants will hide or transfer their ill-gotten assets beyond the jurisdiction of this Court unless they are restrained. The Lanham Act allows Plaintiff to recover the illegal profits gained through Defendants' distribution and sale of knock-off and infringing goods. *See* 15 U.S.C. § 1117(a). Furthermore, in Pennsylvania, a pre-judgment restraint of existing assets is appropriate where a plaintiff is asserts a claim for money damages.[4] *Walter v. Stacey*, 837 A.2d 1205 (Pa. Super. 2003) (injunction entered restraining assets in action seeking damages for a wrongful death); *Hoxworth v. Blinder, Robinson & Co., Inc.*, 903 F.2d 186 (3d Cir. 1990) (affirming injunction entered restraining assets in class action lawsuit). To preserve the disgorgement remedy and the ability to at least partially satisfy a judgment, Plaintiff seeks an *ex parte* order restraining Defendants' assets, including specifically, funds transmitted through Amazon, PayPal, ContextLogic, AliPay, and Worldpay (collectively, the "Financial Institutions"). The Court has jurisdiction over all of the Third Party Service Providers and Financial Institutions, or alternatively, they have voluntarily cooperated and submitted to the Court's jurisdiction in prior counterfeiting lawsuits like this one. *See Malkin Dec.*

This Court has previously granted the relief sought herein in actions involving claims under Section 43(a) of the Lanham Act for passing off knock-offs using plaintiff's marks, plaintiff's works, and/or trade dress. *Doggie Dental, Inc. v. Ahui*, No. 19-cv-1627 (W.D. Pa. Dec.

---

[3]    WorldPay US, Inc. ("WorldPay") processes transactions on behalf of Alibaba and Alipay, which may appear as "Aliexpress" on a cardholder's credit card statement. (*See* Brian Samuel Malkin ("*Malkin Dec.*"), ¶ 8, filed herewith.)

[4]    Fed. R. Civ. P. 64 provides "every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment."

12, 2019)(Hornak, J.)(sellers on amazon.com), *Gorge Designs v Accessmall, et al.,* No 19-1454 (W.D. Pa.)(Stickman, J)(sellers on Aliexpress.com and eBay.com); *Doggie Dental Inc. v. Go Well,* No. 19-cv-1282 (W.D. Pa. Oct. 11, 2019) (Hornak, J.) (sellers on amazon.com); *Doggie Dental Inc. v. Worthbuyer,* No. 19-cv-1283 (W.D. Pa. Oct. 11, 2019) (Hornak, J.) (sellers on ebay.com); *Doggie Dental Inc. v. Max_Buy*, No. 19-cv-746 (W.D. Pa. June 27, 2019) (Hornak, J.) (sellers on ebay.com); *Doggie Dental Inc. v. Anywill,* No. 19-cv-682 (W.D. Pa. June 13, 2019) (Hornak, J.) (sellers on amazon.com).This Court has also previously granted the relief sought herein in actions involving claims for trademark counterfeiting and patent infringement. *Airigan Solutions, LLC v. Belvia*, No. 20-cv-284 (April 21, 2020)(Schwab, J)(sellers on amazon.com), *Airigan Solutions, LLC v. Abagail*, No. 19-cv-503 (May 28, 2019) (Fischer, J.) (sellers on amazon.com); *Airigan Solutions, LLC v. Babymove*, No. 19-cv-166 (W.D. Pa. Feb. 14, 2019) (Fischer, J.) (sellers on amazon.com); *Airigan Solutions, LLC v. Artifacts_Selling*, No. 18-cv-1462 (W.D. Pa. Oct. 31, 2018) (Fischer, J.) (sellers on ebay.com and aliexpress.com). Other courts have granted the relief sought herein in actions involving claims under Section 43(a) of the Lanham Act and copyright infringement.  *Millennium IP, Inc. v. The Partnerships and Unincorporated Associat*ions *Identified on Schedule "A"*, No. 18-cv-3778 (N.D. Ill. June 6, 2018) (nearly 400 defendants, including sellers on amazon.com and ebay.com); *Nu Image, Inc. v. The Partnerships and Unincorporated Associat*ions *Identified on Schedule "A"*, No. 17-cv-2918 (N.D. Ill. May 12, 2017) (over 200 defendants, including sellers on amazon.com and ebay.com). Furthermore, other courts have granted the relief sought herein whether the defendants are located outside of the United States or based in the United States.  *Cartier International A.G. v. Replicapaneraiwatches.cn,* No. 17-cv-62401 (S.D. Fla. Jan. 2, 2018) (mix of U.S. and foreign

defendants) and *Juul Labs, Inc. v. The Partnerships and Unincorporated Associations Identified on Schedule "A"*, No. 18-cv-1382 (E.D. Va. Nov. 16, 2018) (all U.S. defendants).

Finally, even during the current pandemic, federal courts in other States have entered temporary restraining orders and preliminary injunctions. *See, e.g.*, *Ffrench v. The Partnerships and Unincorporated Associations Identified on Schedule "A"*, No. 20-cv-03178 (N.D. Ill.) (Kennelly, J.)(TRO and PI Orders entered on June 1, 2020 and June 24, 2020, respectively); *Apple Corps Ltd, et al v Merchclan.com, et al.,"* No. 20-cv- 60982 (S.D. Fl.) (Dimitrouleas, J)(TRO and PI Orders entered on May 21, 2020 and June 12, 2020, respectively); *Smart Study Co., Ltd. v. A Pleasant Trip Store*, No. 20-cv-1733 (S.D. NY)(Vyskocil, J)(TRO and PI Orders entered on February 27, 2020 and May 7, 2020, respectively). Exemplars of temporary restraining orders issued in cases similar to the present case, including during the current pandemic (Exhibits 5 – 7), are included in Plaintiff's *Request for Judicial Notice* submitted herewith.

## II.  <u>STATEMENT OF FACTS</u>

### A.  Plaintiff's Product

The original designer and creator of the Daisy Pillow, Yi Ping Lai, President of Heart to Heart Gifts, Inc. ("Heart to Heart") began by making handmade pillows, pillow beds, and accessories out her home in 1995.  Declaration of Nate Jelovich ("*Jelovich Dec.*"), ¶ 5. Since then, she created and innovated all of the Heart to Heart Gifts, Inc.'s products and packaging. This is a costly effort involving graphic design, industrial design and tooling. *Id*. It takes time to create, design, test, redesign and retest prototypes. *Id*. A lot of money was spent on photography to show how the product works or to highlight the end result. *Id*. That photography is used on the company's website, Amazon store, sent to customers, and used at tradeshows. *Id*. Products are

introduced to retailers via tradeshows across the country. *Id*. This introduction process costs a lot of money but it is a chance to show customers the quality and use of the product. *Id*. Like the other Heart to Heart Gifts products, Plaintiff's product branded the BUTTERFLY CRAZE® Daisy Pillow ("Plaintiff's Product") was conceived by Yi Ping Lai, the former owner of Heart to Heart Gifts. *Id*. at 6.

Plaintiff's Product has been featured and reviewed in online videos, articles, or podcasts. *Id.* at ¶ 7.

Genuine goods bearing Plaintiff's Mark (as defined below) are widely legitimately advertised and promoted by Plaintiff, its authorized distributors, and unrelated third parties via the Internet.  Id. at ¶ 8. Over the past several years, visibility on the Internet, particularly via Internet search engines such as Google, Yahoo!, and Bing has become increasing important to Plaintiff's overall marketing. *Id*.

Thus, Plaintiff and its authorized distributors expend significant monetary resources on Internet marketing, including search engine optimization ("SEO") strategies. *Id.* at ¶ 9. Other costs include print catalog ads, tradeshows, and handing out free samples. *Id.* Those strategies allow Plaintiff and its authorized retailers to fairly and legitimately educate consumers about the value associated with Plaintiff's brand and the goods sold thereunder. *Id.* Similarly, Defendants' individual seller's stores are indexed on search engines and compete directly with Plaintiff for space in the search results. *Id.*

**B.  Plaintiff's Rights**

Plaintiff developed and sells its Daisy Pillow ("Plaintiff's Product") under U.S. Reg. No. 3528611, BUTTERFLY CRAZE® for "on-line retail store services featuring decorative products,

costumes, toys, gifts and fashion accessories; Wholesale stores featuring decorative products,

costumes, toys, gifts and fashion accessories." in international class 35. A copy of the

registration certificate is attached to the Complaint as **Exhibit 3**. *Id.* at ¶ 10.

Below are images of one of Plaintiff's Products, which retails for between from $31.99

(medium) - $49.99 (large).

 

Plaintiff is also the owner of various published photographs, videos, artwork, creative text and

product instructions appearing on its web site butterflycraze.com. ("Plaintiff's Works"). Screen

shots of the Plaintiff's Mark, Website, Amazon Store, and Works are shown in **Complaint

Exhibit 2**. *Id.* at ¶ 12.

The unique features of Plaintiff's Product, Plaintiff's Mark and Plaintiff's Works, including, the

distinct photographs, the design, the instructions, the packaging, and the unique presentation of

the product, all comprise Plaintiff's valuable intellectual property ("IP") and all have become

distinct in consumer's minds such that consumers associate all of this IP with Plaintiff's Product.

*Id.* at ¶ 13.

Plaintiff's Mark and Plaintiff's Works have been used in interstate commerce to identify

and distinguish Plaintiff's goods. *Id.* at ¶ 14. Plaintiff's Mark and Works have been used by

Plaintiff prior in time to Defendants' use of the Mark and Works. *Id.* Plaintiff's Mark and Works have never been assigned or licensed to any of the Defendants in this matter. *Id.* The Plaintiff's Mark is a symbol of Plaintiff's quality, reputation, and goodwill and have never been abandoned. *Id.*

### C.  Plaintiff's Efforts to Police the Defendants' Conduct

The Defendants use the interactive commercial Internet websites and Internet based e-commerce stores using the Seller IDs set forth on "**Schedule A**" to the Complaint.  *See Ray Dec.*[5], ¶ 3. These interactive commercial Internet websites provide on-line Merchant Storefronts (as defined *infra*) that allow the Defendants to maintain their anonymity while advertising, offering for sale, and selling Knock-Off Products into the United States and into Pennsylvania. The Internet marketplaces used by these Defendants include AliExpress.com, Amazon.com, eBay.com, and wish.com.  *See Ray Dec.,* ¶ 3 and Composite Exhibit 1 attached thereto.

Plaintiff has been forced to police the various Internet marketplaces to identify and seek takedowns of unlawful listings for the Knock-Off Products since allowing the unlawful listings to continue is causing damage to Plaintiff's reputation and bottom line. *Jelovich Dec.* at ¶ 16. Some Defendants sell their fake version of Plaintiff's Product at a fraction of the controlled retail price. *Id.* Because of the software provided by the various Internet marketplaces, the lowest priced items are sorted to the top and/or promoted by the software and then purchased by the consumers. *Id.* The Plaintiff's Product is ignored. *Id.*  Plaintiff has had varied success in identifying and requesting takedowns of the various unlawful listings and as soon as one is taken down another unlawful listing replaces it.  *Id.*

---

[5]  Refers to the Declaration of Taylor Ray in Support of Plaintiff's Application for Temporary Restraining Order and Preliminary Injunction, filed herewith.

Another major problem with the Internet marketplaces is that there is a direct and convenient connection between various Chinese and other unidentified manufactures to the Knock-Off Products. *Id.* In essence, a counterfeiter in Vietnam or Russia, for example, may order a crate of Knock-Off Products from a Chinese manufacturer, have them drop shipped to a fulfillment center in the United States, and then sell the Knock-Off Products to a US consumer through a Third Party Service Provider. *Id.* The ease of this system encourages knock-offs to flourish. *Id.*

For these reasons, Plaintiff retained the legal counsel of Ference & Associates LLC ("the Ference firm") to perform the policing of various Internet marketplaces. *Id.* at ¶ 17. During the process, the Ference firm identified many Chinese manufacturers operating on Marketplace Storefronts hosted by the Internet marketplaces. *See id.* These manufacturers were supplying many of the other identified Defendants with Knock-Off Products flooding the Internet marketplaces and damaging Plaintiff's business. This damage to Plaintiff's business will continue unless Plaintiff receives the requested restraining order and injunctive relief. *Id.*

### D. The Defendants' Wrongful Conduct

Defendants do not have, nor have they ever had, the right or authority to use Plaintiff's Mark or Works, and/or substantially similar copies of Plaintiff's Works for any purpose. *Id.* at ¶ 22. Defendants' unlawful activities have deprived and continue to deprive Plaintiff of its rights to fair competition. *Id.* By their activities, Defendants are defrauding Plaintiff and the consuming public for Defendants' benefit. *Id.* Defendants should not be permitted to continue their unlawful activities, which are causing Plaintiff ongoing irreparable harm. *Id.* Accordingly, Plaintiff is seeking entry of a temporary restraining order prohibiting Defendants' further wrongful unfair competition and infringement of Plaintiff's Mark, and/or Works. *Id.*

Given Defendants' copying and use of Plaintiff's Mark and/or Works , and/or substantially similar copies of Plaintiff's Works, the Knock-Off Products are indistinguishable to consumers, both at the point of sale and post-sale. *Id.* at ¶ 23. By using Plaintiff's intellectual property, Defendants have created a false association between their Knock-Off Products, their Internet e-commerce stores, and Plaintiff. *Id.* Such false association is in violation of 15 US.C. § 1125(a), constitutes trademark infringement, and is causing and will continue to cause Plaintiff irreparable harm and damage. *Id.* at ¶ 23.

The infringements of Plaintiff's Works deprive Plaintiff of the ability to control the creative content, it devalues the Plaintiff's brand by associating it with inferior quality goods, and it undermines the value of the Plaintiff's IP by creating the impression that infringement may be undertaken with impunity which threatens Plaintiff's ability to attract investors and markets for the Plaintiff's Products. *Id.* at ¶ 24.

As part of Plaintiff's counsel's ongoing investigation regarding the sale of Knock-Off Products, Plaintiff's counsel investigated the promotion and sale of Knock-Off Products by

Defendants and obtained available payment account data for receipt of funds by Defendants for

the sale of knock-off versions of Plaintiff's genuine products through the Seller IDs.  *Ray Dec.*, ¶

3. Through visual inspection of Defendants' listings for Knock-Off Products, it was confirmed

that each Defendant is featuring, displaying, and/or using the Plaintiff's Mark and/or Works ,

and/or substantially similar copies of Plaintiff's Works without authorization and that the

products that each Defendant is offering for sale, using virtually identical copies of Plaintiff's

Mark and/or Works , and/or substantially similar copies of Plaintiff's Works are, in fact, not

genuine products. *Id.* The checkout pages or order forms for the Knock-Off Products confirm

that each Defendant was and/or is still currently offering for sale and/or selling Knock-Off

Products through their respective Merchant Storefronts and User Accounts and that each

Defendant provides shipping and/or has actually shipped Knock-Off Products to the United

States, including to customers located in Pennsylvania.  At checkout, a shipping address located

in the Pittsburgh area ("the Pennsylvania Address") in the Western District of Pennsylvania

verified that each Defendant provides shipping to the Pennsylvania Address. *Id.* Plaintiff's

President inspected the detailed web listings describing the Knock-Off Products Defendants are

offering for sale through the Internet based e-commerce stores operating under each of their

respective Seller IDs, and determined the products were not genuine versions of Plaintiff's

products. *Id.* and Composite Exhibit 1*, and Jelovich Dec.,* ¶¶ 25 – 27.[6]

---

[6]    See *e.g., Gucci Am., Inc. v. Tyrrell-Miller,* 678 F. Supp. 2d 117, 119 (S.D.N.Y. 2008) (Plaintiff's Intellectual
Property Manager found that the products offered for sale on the Defendant's websites were non-genuine
counterfeit products, based on a visual inspection of Defendant's websites); *Malletier v.
2016bagsilouisvuitton.com,* No. 16-61554-CIV- DPG, 2016 U.S. Dist. LEXIS 93072, at *3 (S.D. Fla. July 18,
2016) (Plaintiff's representative reviewed the items bearing the Louis Vuitton Marks offered for sale through
Defendant's Internet websites and determined the products to be non-genuine, unauthorized versions of the
Plaintiff's products.); *Chanel Inc. v. Yang,* No. C-12-04428-PJH (DMR), 2013 U.S. Dist. LEXIS 151104, at *5-
6 (N.D. Cal. Aug. 13, 2013) (Plaintiff's Director of Legal Administration reviewed the various Chanel-branded
products offered for sale by Defendants on each of the websites operating under the subject domain names, and
determined that the products were non-genuine Chanel products); *Chanel, Inc. v. Powell,* No. C/A 2:08-0404-

Section 43(a) of the Lanham Act prohibits the use "in commerce [of] any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which – (a) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person."  15 U.S.C. § 1125(a).  A comparison of Plaintiff's Mark and/or Works , and/or substantially similar copies of Plaintiff's Works to the advertising and offering for sale of Defendants' products reveals the obvious knock-off and infringing nature of Defendants' activities.  Defendants' goods are being promoted, advertised, offered for sale, and sold by Defendants to consumers within this district and throughout the United States.  Defendants are making substantial sums of money by preying upon members of the general public, many of whom have no knowledge Defendants are defrauding them.  Defendants are also falsely representing to consumers that their goods are genuine, authentic, endorsed, and authorized by Plaintiff.  Moreover, Defendant's use of Plaintiff's Mark constitutes trademark infringement. Ultimately, Defendants' Internet activities infringe upon Plaintiff's intellectual property rights.  The Seller IDs, and associated payment accounts, are a substantial part of the means by which Defendants further their scheme and cause harm to Plaintiff.

In light of the covert nature of Defendants' offshore and infringing activities and the importance of creating economic disincentives for such infringing activities, courts have recognized these concerns and routinely grant *ex parte* applications for relief in cases asserting

---

PMD-BM, 2009 U.S. Dist. LEXIS 127709, at *7 (D.S.C. 2009) (Plaintiff's representative personally reviewed the printouts reflecting the various Chanel brand products offered for sale by the Defendant through its website, and concluded that those products were non-genuine Chanel products).

Section 43(a) violations on the Internet.[7]  Accordingly, Plaintiff respectfully requests that this Court grant their *ex parte* Application for the following: 1) a temporary restraining order; 2) an order restraining assets and Merchant Storefronts; 3) an order to show cause why a preliminary injunction should not issue; and 4) an order authorizing expedited discovery against Defendants, the Third Party Service Provider and Financial Institutions.

---

[7]  *See, e.g., Intenze Products, Inc. v. 1586, et al.,* No. 18-cv-4611-RWS (S.D.N.Y. May 24, 2018)*; Allstar Marketing Group, LLC v. 158, et al.,* No. 18-cv-4101-GHW, Dkt. 22 (S.D.N.Y. May 17, 2018)*; William Mark Corporation v. 1&cc, et al.,* No. 18-cv-3889-RA, Dkt. 18 (S.D.N.Y. May 2, 2018)*; WOW Virtual Reality, Inc. v. Bienbest, et al.,* No. 18-cv-3305-VEC, Dkt. 9 (S.D.N.Y. April 16, 2018)*; Ideavillage Products Corp. v. abc789456, et al.,* No. 18- cv-2962-NRB, Dkt. 11 (S.D.N.Y. April 11, 2018)*; Ideavillage Products Corp. v. Aarhus, et al.,* No. 18-cv-2739- JGK, Dkt. 22 (S.D.N.Y. March 28, 2018)*; Moose Toys Pty Ltd. et al., v. 963, et al.,* No. 18-cv-2187-VEC, Dkt. 16 (S.D.N.Y. April 2, 2018)*; Off-White, LLC v. A445995685, et al.,* No. 18-cv-2009-LGS, Dkt. 5 (S.D.N.Y. March 27, 2018)*; Spin Master Ltd. and Spin Master, Inc. v. 158, et al.,* No. 18-cv-1774-PAE, Dkt. 18 (Feb. 27, 2018)*; JLM Couture, Inc. v. Aimibridal, et al.,* No. 18-cv-1565-JMF, Dkt. 18 (S.D.N.Y. Feb. 21, 2018)*; Spin Master Ltd. and Spin Master, Inc. v. Alisy, et al.,* No. 18-cv-543-PGG, Dkt. 16 (S.D.N.Y. Jan. 22, 2018)*; WowWee Group Limited, et al. v. Meirly, et al.,* No. 18-cv-706-AJN, Dkt. 11 (S.D.N.Y. Jan. 26, 2018)*; Ideavillage Products Corp. v. Dongguan Shipai Loofah Sponge Commodity Factory, et al.,* No. 18-cv-901-PGG, Dkt. 20 (S.D.N.Y. Feb. 1, 2018)*; WowWee Group Limited, et al. v. A249345157, et al,* No. 17-cv-9358-VEC, Dkt. 18 (S.D.N.Y. Dec. 11, 2017)*; HICKIES, Inc. v. Shop1668638 Store, et al.,* No. 17-cv-9101-ER, Dkt. 14 (S.D.N.Y. Dec. 6, 2017)*; Ideavillage Products Corp. v. Dongguan Opete Yoga Wear Manufacturer Co., Ltd., et al.,* No. 17-cv-9099-JMF, Dkt. 19 (S.D.N.Y. Nov. 27, 2017)*; Ideavillage Products Corp. v. Shenzhen City Poly Hui Foreign Trade Co., Ltd., et al.,* No. 17-cv-8704-JGK. .(S.D.N.Y. May 24, 2017)*; Moose Toys Pty LTD et al. v. Guangzhou Junwei Trading Company d/b/a Backgroundshop et al.,* No. 17-cv-2561-LAK, Dkt. 12 (S.D.N.Y. May 11, 2017)*; Rovio Entertainment Ltd. and Rovio Animation OY v. Angel Baby Factory d/b/a Angelbabyfactory et al.,* No. 17- cv-1840-KPF, Dkt. 11 (S.D.N.Y. March 27, 2017); *Ontel Products Corporation v. Airbrushpainting Makeup Store a/k/a Airbrushespainting et al.,* No. 17-cv-871-KBF, Dkt. 20 (S.D.N.Y. Feb. 6, 2017)*; Ideavillage Products Corp. v. Bling Boutique Store, et al.,* No. 16-cv-09039-KMW, Dkt. 9 (S.D.N.Y. Nov. 21, 2016); *Gucci America, Inc., et al v. Alibaba Group Holding LTD, et al,* No. 1:15-cv-03784-PKC (S.D.N.Y. June 23, 2015) (unpublished); *Chanel, Inc. v. Conklin Fashions, Inc.,* No. 3:15-cv-893-MAD/DEP, 2015 U.S. Dist. LEXIS 109886, at \*10-13 (N.D.N.Y. Aug. 14, 2015)*; Belstaff Grp. SA v. Doe, No. 15-cv-2242-PKC/MHD,* 2015 U.S. Dist. LEXIS 178124, at \*2 (S.D.N.Y. June 18, 2015); *AW Licensing, LLC v. Bao,* No. 15-cv-1373, 2015 U.S. Dist. LEXIS 177101, at \*2-3 (S.D.N.Y. Apr. 1, 2015)*; Klipsch Grp., Inc. v. Big Box Store Ltd.,* No. 1:12-cv-06283-VSB, 2012 U.S. Dist. LEXIS 153137, at \*3-4 (S.D.N.Y. Oct. 24, 2012); *True Religion Apparel, Inc. et al. v. Xiaokang Lee et al.,* No. 1:11-cv-08242-HB (S.D.N.Y. Nov. 15, 2011) (unpublished)*; N. Face Apparel Corp. v. Fujian Sharing Imp. & Exp. Ltd. Co.,* No. 1:10- cv-1630-AKH, 2011 U.S. Dist. LEXIS 158807 (S.D.N.Y. June 24, 2011); *Tory Burch, LLC v. Yong Sheng Int'l Trade Co., Ltd.,* No. 1:10-cv-09336-DAB, (S.D.N.Y. Jan. 4, 2011) (unpublished); *Chloe v. Designersimports.com USA, Inc.,* No. 07-cv-1791 -CS/GAY, 2009 U.S. Dist. LEXIS 42351, at \*2 (S.D.N.Y. Apr. 29, 2009); *see also In re Vuitton et Fils, S.A.,* 606 F.2d 1 (2d Cir. 1979) (holding that ex parte temporary restraining orders are indispensable to the commencement of an action when they are the sole method of preserving a state of affairs in which the court can provide effective final relief).

### III.  <u>ARGUMENT</u>

### A.  **THIS COURT HAS PERSONAL JURISDICTION OVER DEFENDANTS**

Federal courts "may assert personal jurisdiction over a nonresident of the state in which the court sits to the extent authorized by the law of that state." *D'Jamoos v. Pilatus Aircraft, 566 F.3d 94, 102 (3d Cir. 2009)* (quoting *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F. 2d 434, 436 (3rd Cir. 1987)). This determination entails a two-step inquiry. First, the court must determine whether the long-arm statute of the forum allows courts of that state to exercise jurisdiction over the defendant. Fed. R. Civ. P. 4 (e) (1). Second, if the forum state allows jurisdiction, the court must determine whether exercising personal jurisdiction over the defendant in a given case is consistent with the Due Process Clause of the U.S. Constitution. *See IMO Industries, Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3rd Cir.1998). As alleged herein, Defendants' unlawful, counterfeiting and infringing activities subject them to long-arm jurisdiction in Pennsylvania under 42 P. A. Cons. Stat. § 5322. Furthermore, Pennsylvania's exercise of jurisdiction over Defendants thereunder comports with due process.

### 1.  <u>Defendants are Subject to Personal Jurisdiction Under 42 P.A. C.S.A. § 5322</u>

Pennsylvania authorizes personal jurisdiction over the Defendant pursuant to 42 Pa. Cons. Stat § 5322 (a) which provides in pertinent part: "A tribunal of this Commonwealth may exercise personal jurisdiction over a person ... as to a cause of action or other matter arising from such person: (1) Transacting any business in this Commonwealth.  Without excluding other acts which may constitute transacting business for the purpose of this paragraph: (ii) The doing of a single act in this Commonwealth for the purpose of thereby realizing pecuniary benefit…(3) Causing harm or tortious injury by an act or omission in this Commonwealth. (4) Causing harm or tortious injury by an act or omission outside this Commonwealth. . .(10) Committing any

violation within the jurisdiction of the Commonwealth of any statute, home rule charter, local ordinance or resolution, or rule or regulation promulgated thereunder by any government unit or of any order of court or other government unit."

Courts have regularly conferred personal jurisdiction on a given defendant based on that defendant's operation of a fully interactive website through which consumers can access the site from anywhere and purchase products, as is the case with Defendants' User Accounts and Merchant Storefronts, and allow for customers all over the world (including within Allegheny County, Pennsylvania) to view and purchase products, including Knock-Off Products, as demonstrated by the websites themselves and Plaintiff's purchase of Knock-Off Products. *See Ray Dec., ¶ 3 and Composite Exhibit 1, and *Jelovich Dec., ¶ 27 - 29. *See n. 6, infra.* (collecting cases in which operating interactive web sites was deemed sufficient to confer personal jurisdiction upon the Court).

Here, by advertising, offering for sale, selling, distributing and shipping retail products directly to consumers across the world, including consumers located throughout the U.S. and specifically in Pennsylvania, Defendants have committed tortious acts, as alleged herein, outside of Pennsylvania, thus directly giving rise to the claims asserted in the instant action. *See Ray Dec., ¶ 2 and Composite Exhibit 1; see also Lorillard Tobacco Co. v. Applewood Party Store, Inc.,* 2006 WL 2925288 (E.D. Mich. 2006) (defendant's local sale of counterfeit "Newport" cigarettes had an economic effect on interstate commerce)*; A1 Mortg. Corp. v. A1 Mortg. and Financial Services, LLC,* 2006 WL 1437744 (W.D. Pa. 2006) (while plaintiff's provision of services was "predominantly intrastate" in character, its mark was eligible for protection since, even absent an interstate sale, its advertising crossed state lines and, therefore, had entered interstate commerce), see later opinion, *A-1 Mortg. Corp. v. Day One Mortg., LLC,* 2007 WL

30317 (W.D. Pa. 2007) (court awarded permanent injunctive relief in its award of summary judgment to plaintiff).

Here, the injury clearly occurred within Pennsylvania, as Defendants' Infringing Listings, resulted in consumers throughout the U.S., and specifically in Pennsylvania, purchasing Knock-Off Products. *See Ray Dec.,* ¶ 2 and Composite Exhibit 1. As a direct result of Defendants' infringing actions, Plaintiff has suffered harm in Pennsylvania through lost sales in Pennsylvania and lost Pennsylvania consumers. *See Jelovich Dec.,* ¶¶ 27 - 30.

Accordingly, this Court has personal jurisdiction over Defendants who have intentionally availed themselves of the opportunity to do business in Pennsylvania, and specifically in Allegheny County, Pennsylvania, through their fully interactive web sites, as well as yet undiscovered online marketplaces, to offer for sale and/or sell Knock-Off Products. The identified Defendants merely use fanciful and madeup store names or seller ids without complete addresses, contact information, phones numbers and the like. *See Ference Dec.,* ¶¶ 6 - 7; Defendants used and continue to advertise, market, promote, offer for sale, sell, distribute and/or import Knock-Off Products to Pennsylvania customers and/or potential customers, including in Allegheny County, Pennsylvania. *See Jelovich Dec.* ¶¶ 27 - 30.

Here, the fact that Defendants have chosen to open their respective User Accounts for the purpose of selling Knock-Off Products through their Merchant Storefronts, as well as any and all as yet undiscovered online marketplace platforms, alone supports a finding that Defendants have intentionally used these marketplace platforms, "as a means for establishing regular business with a remote forum." *EnviroCare Techs, LLC v. Simanovsky, No. 11-CV-3458, 2012* U.S. Dist.. LEXIS 78088, at *10 (E.D.N.Y. June 4, 2012)* (quoting *Boschetto v. Hansing,* 539 F.3d 1011, 1019 (9th Cir. 2008); *see also Lifeguard Licensing Corp.,* 2016 U.S. Dist.. LEXIS 89149, at *8

and *EnviroCare Techs., LLC,* 2012 U.S. Dist.. LEXIS 78088, at *10. Courts have indeed found that "commercial sellers" on "well-known, national . . . website[s]" are in fact subject to personal jurisdiction, as these Defendants "must have been able to foresee the possibility of being hauled into court [in the present jurisdiction]." *Malcom v. Esposito,* 63 Va. Cir. 440, 446 (Cir. Ct. 2003); *see also EnviroCare Techs., LLC,* 2012 U.S. Dist.. LEXIS 78088, at *12.

Whether a Defendant physically shipped Knock-Off Products into Pennsylvania is not determinative of whether personal jurisdiction exists, as courts in this Circuit examine a given defendant's online interactions with consumers in considering whether a particular defendant has transacted business in the forum state.  *See Ray Dec.* ¶ 2.  *See Zippo Mfg. Co.,* 952 F. Supp. at 1119; *Rolex Watch, U.S.A., Inc. v. Pharel*, 09 CV 4810 (RRM) (ALC), 2011 U.S. Dist. LEXIS 32249, at 6 (E.D.N.Y. Mar. 11, 2011) (finding personal jurisdiction over defendant, a resident of South Carolina, because he transacted business in New York by monitoring and responding to inquiries for counterfeit watches through websites accessible in New York).  Plaintiff and Plaintiff's counsel have viewed Defendant's Knock-Off Products via their online User Accounts and Merchant Storefronts. *See Ray Dec.*, ¶ 2 and *Jelovich Dec.* ¶¶ 27 - 30.[8]  Thus, Defendants'

---

[8]     *See Skrodzki v. Marcello,* 810 F. Supp. 2d 501, 512-13 (E.D.N.Y. 2011), and that, "[t]he offering for sale of even one copy of an allegedly infringing item, even if no sale results, is sufficient to give personal jurisdiction over the alleged infringer under N.Y. CPLR § 302.  *Cartier v. Seah LLC,* 598 F. Supp. 2d 422, 425 (S.D.N.Y. 2009).  Moreover, under Second Circuit case law, when analyzing personal jurisdiction in the Internet context, "traditional statutory and constitutional principles remain the touchstone of the inquiry," and while a website's interactivity, "may be useful" for analyzing personal jurisdiction 'insofar as it helps to decide whether the defendant 'transacts any business' in New York,'" ... "it does not amount to a separate framework for analyzing internet-based jurisdiction." *Best Van Lines, Inc.,* 490 F.3d at 252 (quoting *Best Van Lines, Inc. v. Walker,* No. 03- Civ. 6585 (GEL), 2004 U.S. Dist. LEXIS 7830, at *9 (S.D.N.Y. May 4, 2004)) (citing *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.,* 952 F. Supp. 1119 (W.D. Pa. 1997)). Sister circuits similarly rely on the traditional principles guiding the personal jurisdiction analysis when analyzing the same in the Internet context, namely the Eleventh Circuit (see, *e.g., Oldfield v. Pueblo De Bahia Lora, S.A.,* 558 F.3d 1210, 1219-1224 (11th Cir. 2011) (criticizing the over-reliance on the sliding scale of interactivity analysis and instead applying a traditional personal jurisdiction analysis in an Internet case where the website was fully interactive); *see also Louis Vuitton Malletier, S.A. v. Mosseri,* 736 F.3d 1339, 1356-58 (11th Cir. 2013) (applying the traditional purposeful availment test in a case where defendant's fully interactive website was accessible in Florida, and was selling and distributing infringing goods through his website to Florida consumers), and the Seventh Circuit (see, *e.g.,*

sophisticated commercial operations, specifically including their offering for sale and/or selling of Knock-Off Products through their highly interactive User Accounts and Merchant Storefronts, along with Defendants' own representations on their Merchant Storefronts that they ship Knock-Off Products to the U.S., including to Pennsylvania addresses, unequivocally establishes that Defendants conduct business within this District and the claims in this suit arise from Defendants' business dealings and transactions with consumers in Pennsylvania. *See Zippo Mfg. Co. v. Zippo DOT Com*, 952 F. Supp. 1119 (W.D. Pa. 1997).

---

*Advanced Tactical Ordnance Systems, LLC v. Real Action Paintball, Inc.,* 751 F.3d 796, 803 (7th Cir. 2010) (addressing the impact of a defendant's online activities upon the personal jurisdiction analysis and reiterating that, as with offline activities, the Court must focus upon the deliberate actions of the defendant within the State)), are instructive in considering whether the exercise of jurisdiction over Defendants in the instant action is appropriate under similar, if not identical facts. For example, courts in the Eleventh Circuit have routinely granted temporary restraining orders, preliminary injunctions and default judgments in online counterfeiting cases where no purchases of the counterfeit/infringing products were made, but the Plaintiff alleged and confirmed that each of the foreign defendants operated fully interactive commercial websites through which they advertised, promoted, offered for sale, and sold products bearing what the plaintiff determined to be counterfeit and infringing trademarks into the U.S., and in interstate commerce, in violation of the plaintiff's rights. *See, e.g., Malletier,* 2016 U.S. Dist. LEXIS 93072, at *3; *Mycoskie v. 2016tomsshoessaleoutlet.us,* No. 16-61523- CIV-GAYLES, 2016 U.S. Dist. LEXIS 95963, at *4 (S.D. Fla. July 22, 2016); *Adidas AG v. 007adidasuk.com,* No. 15-61275-CIV-GAYLES, 2015 U.S. Dist. LEXIS 179020, at *8 (S.D. Fla. 2015); *Louis Vuitton Malletier, S.A. v. 2015shoplvhandbag.com,* No. 15-62531-CIV-BLOOM, 2015 U.S. Dist. LEXIS 181477, at *11 (S.D. Fla. Dec. 18, 2015); *Abercrombie & Fitch Trading Co. v. Abercrombieclassic.com,* No. 15-62579-CIV-CMA, 2015 U.S. Dist. LEXIS 179041, at *5 (S.D. Fla. Dec. 11, 2015); *Gucci Am., Inc. v. Gucc-Outlet.com,* No. 15-62165-CIV-DPG, 2015 U.S. Dist. LEXIS 181483, at *3-4 (S.D. Fla. Nov. 9, 2015); *Chanel, Inc. v. 2012leboyhandbag.com,* No. 15-61986-CIV-WJZ, 2015 U.S. Dist. LEXIS 177989, at *3 (S.D. Fla. Oct. 13, 2015); *Abercrombie & Fitch Trading Co. v. Abercrombieandfitchdk.com,* No. 15-62068-CIV-BB, 2015 U.S. Dist. LEXIS 179117, at *5 (S.D. Fla. Oct. 7, 2015); *Malletier v. 2015louisvuittons.com,* No. 15-61973-CIV-BB, 2015 U.S. Dist. LEXIS 181452, at *11 (S.D. Fla. Sep. 29, 2015); *Chanel, Inc. v. Chanelstore.com,* No. 15-61156-CIV- CMA, 2015 U.S. Dist. LEXIS 179101, at *5 (S.D. Fla. August 31, 2015). Similarly, the Seventh Circuit, in *Illinois v. Hemi Group LLC,* held that it had personal jurisdiction over the foreign defendants because they operated a nationwide business model where they intentionally created and operated several commercial, interactive websites to offer products for sale and allow online orders from Illinois residents, specifically noting that the "[defendants] maintained commercial websites through which customers could purchase cigarettes, calculate their shipping charges using their zip codes, and create accounts," and as a result, the "[defendants] stood ready and willing to do business with Illinois residents." *Illinois v. Hemi Group LLC,* 622 F.3d 754, 756 (7th Cir. 2010); *see also Monster Energy Co. v. Chen Wensheng,* 136 F. Supp. 3d 897, 906 (N.D. Ill. 2015) (holding that defendants had "expressly aimed" their actions at the state, making specific personal jurisdiction proper even without a sale made to an Illinois resident, because in addition to intentionally creating and operating commercial, fully interactive AliExpress.com Internet stores through which consumers can purchase counterfeit Monster Energy Products, the defendants had affirmatively selected a shipping option to ship counterfeit products to the U.S., including to Illinois residents, and the Plaintiff ' exhibits showed that the named defendants had specifically offered to sell particular counterfeit products to individuals with Illinois shipping addresses and provided PayPal account number for the buyer to make the payment for the item, and as a result, the defendants expressly elected to do business with the residents of all fifty states, including Illinois).

**2.** **Exercising Personal Jurisdiction Over Defendants Comports With Due Process**

The assertion of personal jurisdiction over Defendants also comports with the Due Process Clause of the U.S. Constitution, as Defendants have "certain minimum contacts ... such that maintenance of th[is] suit does not offend 'traditional notions of fair play and substantial justice.'" *Calder v. Jones,* 465 U.S. 783, 788 (1984) (quoting *Milliken v. Meyer,* 311 U.S. 457 (1940)).

This Court may exercise personal jurisdiction when the plaintiff can establish that the cause of action at issue arose from the defendant's activities within the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. at 414 (1984). The plaintiff initially bears the burden of proving a *prima facie* case, by a preponderance of the evidence, that the defendant's contacts with the forum state meet the "minimum contacts" test. *Carteret Sav. Bank, F.A. v. Shushan*, 954 F.2d 141, 146 (3d Cir. 1992). *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (U.S. 1985); *see Best Van Lines, Inc. v. Walker,* 490 F.3d 239, 243 (2d. Cir. 2007) ("In the language of minimum contacts, when the defendants committed 'their intentional, and allegedly tortious, actions expressly aimed at California, they must have reasonably anticipated being hailed into court there.'") (internal quotations omitted); Here, the Defendants intentionally directed their activity towards the Pennsylvania market, thereby purposefully availing themselves of "the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *See Jelovich Dec.* ¶ 29. *See Ray Dec.* ¶ 2 and Composite Exhibit 1.  Thus, the Plaintiff has made out a *prima facie* case, by a preponderance of the evidence that Defendants' contacts with the Pennsylvania meet the "minimum contacts" test.

Pennsylvania's long-arm statute provides that jurisdiction may be exercised "to the fullest extent allowed under the Constitution of the U.S. and may be based on the most minimum

contact with this Commonwealth allowed under the Constitution of the U.S."  42 Pa. C. S. A. §

5322(b) (1981).  Thus, because Pennsylvania's long-arm statute is coextensive with the dictates

of the U.S. Constitution, the traditional two-step analysis is collapsed into a single inquiry:

"whether the exercise of personal jurisdiction would conform with the Due Process Clause."

*Poole v. Sasson,* 122 F. Supp.  2d 556, 558 (E. D. Pa. 2000); *see also Renner v. Lanard Toys*

*Limited,* 33 F.3d 277, 279 (3d Cir. 1994) ("[T]his court's inquiry is solely whether the exercise

of personal jurisdiction over the defendant would be constitutional."). Due process requires that

the defendant have "minimum contacts" with the forum state.  *Remick v. Manfredy,* 238 F.3d

248, 255 (3d Cir. 2001) (quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66

S.Ct. 154, 90 L.Ed. 95 (1945)). "Minimum contacts must have a basis in 'some act by which the

defendant purposefully avails itself of the privilege of conducting activities within the forum

state, thus invoking the benefits and protections of its laws.'" *Remick,* 238 F.3d at 255 (quoting

*Asahi Metal Indus. Co., Ltd. v. Superior Court of California,* 480 U.S. 102, 109, 107 S.Ct. 1026,

94 L.Ed.2d 92 (1987)).

 Here, each of the Defendants has used an interactive web site for offering for sale and

selling Knock-Off Products.  This Court has personal jurisdiction over each Defendant based

upon internet-based sales activity into the US and this judicial district. The seminal opinion in

this regard is *Zippo Mfg. Co*, 952 F. Supp. at 1119.  In *Zippo,* this court established a "sliding

scale" analytical framework for internet-based personal jurisdiction cases based upon the "level

of interactivity and commercial nature of the exchange of information that occurs on the Web

site." 952 F. Supp. at 1124. The court explained:

> [T]he likelihood that personal jurisdiction can be constitutionally exercised is
> directly proportionate to the nature and quality of commercial activity that an
> entity conducts over the Internet. This sliding scale is consistent with well-
> developed personal jurisdiction principles. At one end of the spectrum are

situations where a defendant clearly does business over the Internet. If the
defendant enters into contracts with residents of a foreign jurisdiction that involve
the knowing and repeated transmission of computer files over the Internet,
personal jurisdiction is proper. At the opposite end are situations where a
defendant has simply posted information on an Internet Web site which is
accessible to users in foreign jurisdictions. A passive Web site that does little
more than make information available to those who are interested in it is not
grounds for the exercise personal jurisdiction. The middle ground is occupied by
interactive Web sites where a user can exchange information with the host
computer. In these cases, the exercise of jurisdiction is determined by examining
the level of interactivity and commercial nature of the exchange of information
that occurs on the Web site.

*Id.*

The Third Circuit endorsed this general framework in *Toys "R" Us, Inc. v. Step Two,
S.A.,* 318 F.3d 446 (3rd Cir. 2003), but clarified that the plaintiff must also provide evidence of
"the intentional nature of the defendant's conduct vis-a-vis the forum state." *Id.* at 452. In other
words, "there must be some evidence that the defendant 'purposefully availed' itself of
conducting activity in the forum state, by directly targeting its website to the state, knowingly
interacting with residents of the forum state via its website, or through sufficient other related
contacts." *Id.* at 454. *See also Mellon Bank (East) PSFS, N.A. v. DiVeronica Bros., Inc.*, 983 F.2d
551, 556 (3d Cir. 1993) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985))

In the wake of *Zippo* and *Toys "R" Us,* most courts have concluded that a defendant that
intentionally conducts business transactions over an interactive website with customers in the
forum state has purposefully directed itself of the laws of that forum.  In *Square D,* for example,
the defendant's website contained links providing "a [telephone] number and e-mail address for
the purpose of placing an order," information concerning product warranties, and a link that
permitted a potential purchaser to "submit a form specifying the manufacturer, catalog number,
and quantity of the product to be purchased, as well as the purchaser's company name, phone,
fax and e-mail." *Square D Co. v. Scott Elec. Co.,* No. 06-459, 2008 WL 4462298, at *3 (W.D.

Pa. Sept. 30, 2008). There was also a space on the form for additional "comments" concerning a proposed transaction. *Id.* Although a customer could not directly order products using only the website, customers could "commence the ordering process" by "provid[ing] much of the same type of information that would be required for an order (e.g., manufacturer, quantity, catalog number, contact information)." *Id.* at *8, Indeed, the court noted that the website had produced "twenty-four (24) Pennsylvania customers and a total of $10,238.25 in sales" for the defendant. *Id.* at *9. Although this amount represented "less than 1%" of the defendant's total sales, the Court concluded that it was sufficient to establish personal jurisdiction in the state of Pennsylvania. *Id.* As explained by the court:

> The website was more than a mere advertisement; rather, it was an interactive site that allowed customers to take the first step in an ordering process that could be completed with one phone call or e-mail. By knowingly selling and shipping a product that is at issue in this litigation to a customer [in] Pennsylvania, the Moving Defendants purposefully availed themselves of the laws and privileges of this forum. *Id.* at *11.

*Willyoung v. Colorado Custom Hardware, Inc.* is similarly instructive. *Willyoung v. Colorado Custom Hardware, Inc.,* 2009 WL 3183061 (W. D. Pa. Sept. 30, 2009). In *Willyoung,* the website at issue allowed visitors to "request a catalog by supplying certain information according to the website prompts, contact the company directly by e-mail, subscribe to [defendant's] on-line newsletter, and search, view, and select products for on-line purchase via a 'shopping cart.' " *Id* . at *12. Over a two-year period, Pennsylvania customers had utilized the website to place 211 orders amounting to $41,566.05 in sales. *Id.* Based on the foregoing, the court concluded that the defendant had purposefully availed itself of the privilege of conducting business in the state of Pennsylvania by "intentionally and repeatedly engag[ing] in internet-based sales of its products to Pennsylvania residents via its website." *Id.* at *13. Other courts have frequently reached the same conclusion. *See also Gentex Corp. v. Abbott,* 978 F. Supp. 2d

- 25 -

391, 398 (M.D. Pa. 2013) (finding personal jurisdiction where non-resident defendant's

interactive website was used by Pennsylvania residents to place at least 17 orders over a three-

year period); *TRE Services, Inc. v. U .S. Bellows, Inc.,* 2012 WL 2872830, *4–5 (W.D. Pa. July

12, 2012) (finding personal jurisdiction based on defendant's commercially interactive website

that accepted orders from Pennsylvania); *Gourmet Video, Inc. v. Alpha Blue Archives, Inc.,* 2008

WL 4755350, *3 (D.N.J. Oct. 29, 2008) ("Personal jurisdiction is properly exercised over a

defendant using the Internet to conduct business in the forum state."); *L'Athene, Inc. v.*

*EarthSpring LLC,* 570 F. Supp. 588, 593–94 (D. Del. 2008) (defendants purposely availed

themselves of doing business in state of Delaware where they operated a website accessible in

Delaware, received orders and payments from customers in Delaware, and shipped their products

to Delaware). Thus, the Defendants in this case have all offered interactive web sites for viewing,

ordering, and paying for the Counterfeit Goods and have purposefully availed themselves of the

opportunity to conduct business with Pennsylvania citizens with their respective Merchant

Storefronts.

Further there is sufficient evidence to establish the type of "intentional interaction with

the forum state" required by the Third Circuit for the exercise of personal jurisdiction. *See Toys*

*"R" Us,* 318 F.3d at 451–52 (requiring evidence that the defendant has "intentionally

interact[ed] with the forum state). *See, e.g., Square D.,* 2008 WL 4462298 at *9 n. 10

(concluding that an amount equal to less than 1% of overall sales was sufficient to establish

minimum contacts); *Zippo,* 952 F.Supp. at 1127 (exercising personal jurisdiction despite that

only 2% of the defendant's customers were Pennsylvania residents); *L'Athene,* 570 F. Supp. 2d

at 593–94 (exercising personal jurisdiction despite that sales to the forum state constituted less

than 1% of defendants' total annual sales based on units sold). As noted in *Zippo,* "[t]he Supreme

Court has made clear that even a single contact can be sufficient." *Zippo,* 952 F. Supp. at 1127 (citing *McGee v. Int'l Life Ins. Co.,* 355 U.S. 220, 223, 78 S.Ct. 199, 2 L. Ed. 2d 223 (1957)); *see also Square D.,* 2008 WL 4462298 at *9 n. 10 (noting that, while an argument based on a minute number of overall sales might be "valid in the context of general jurisdiction, in the context of specific jurisdiction it is evidence that supports Plaintiff's argument that the Moving Defendants purposefully availed themselves of the laws and privileges of Pennsylvania by selling and shipping products to residents of the Commonwealth.").

Since the Defendants have purposefully availed themselves of the opportunity to conduct business with Pennsylvania citizens through their interactive websites, the Court must next consider whether this litigation "arise[s] out of and relate[s] to" those sales. *D'Jamoos,* 566 F.3d at 102. Here, the lawsuit directly arises out of the Defendants' respective sales of Knock-Off Products to Pennsylvania residents through their interactive websites. *See, e.g., Willyoung,* 2009 WL 3183061 at *13 ("The second part of our jurisdictional inquiry is also easily satisfied because this litigation arises out of and relates to BGM's use of its web site to conduct internet-based sales of its merchandise to Pennsylvania residents.") (internal quotation marks omitted); *Square D.,* 2008 WL 4462298 at *11 (finding the relatedness requirement satisfied where "at least one" of the products sold to a Pennsylvania resident by the defendant was from the allegedly infringing line of products at issue in the litigation). All of the Knock-Off Products which are the subject of this lawsuit were sold into Pennsylvania. Therefore, the "arise[s] out of and relate[s] to" test is easily met here.

Finally, the Court must consider whether the exercise of jurisdiction would otherwise comport with "traditional notions of fair play and substantial justice." *O'Connor v Sandy Lane Hotel Co., Ltd,* 496 F.3d 312, 316 (3rd Cir. 2007)(quoting *Int'l Shoe,* 326 U.S. at 316). Because

the existence of minimum contacts makes jurisdiction presumptively constitutional, the

defendant at step three of the specific-jurisdiction-inquiry process "must present a compelling

case that the presence of some other considerations would render jurisdiction unreasonable." *Id* .

(quoting *Burger King,* 471 U.S. at 477). The burden upon the defendant at this stage of the

inquiry is considerable. *See Pennzoil Prods. Co. v. Colelli & Assocs., Inc.,* 149 F.3d 197, 207

(3rd Cir. 1998) (noting that if minimum contacts are present, then jurisdiction will be

unreasonable only in "rare cases"); *Grand Entm't Group, Ltd., v. Star Media Sales, Inc.,* 988

F.2d 476, 483 (3rd Cir.1993) ("The burden on a defendant who wishes to show an absence of

fairness or lack of substantial justice is heavy."). As the Third Circuit has observed:

> The Supreme Court has identified several factors that courts should
> consider when balancing jurisdictional reasonableness. Among them are
> the burden on the defendant, the forum State's interest in adjudicating the
> dispute, the plaintiff's interest in obtaining convenient and effective relief,
> the interstate [and international] judicial system's interest in obtaining the
> most efficient resolution of controversies, and [t]he procedural and
> substantive interests of other nations.

*O'Connor,* 496 F.3d at 324 (internal quotations omitted).

Here, the Plaintiff's interest in obtaining convenient and effective relief in the forum of

its choice and Pennsylvania's interest in protecting its citizens from the sale of infringing goods

within its borders are factors that weigh heavily in finding personal jurisdiction of the

Defendants.  *See Square D*, 2008 WL 4462298 at *12 (concluding that jurisdiction should be

exercised in Pennsylvania "because the counterfeit goods in question potentially pose a danger to

the public and were sold to residents of this Commonwealth."); *Zippo,* 952 F.Supp. at 1127

(noting Pennsylvania's strong interest in resolving trademark infringement claims implicating its

citizens and giving "due regard to the Plaintiff's choice to seek relief in Pennsylvania"). As the

court noted in *Zippo,* "[i]f [the defendant] had not wanted to be amenable to jurisdiction in

Pennsylvania, the solution would have been simple—it could have chosen not to sell its [products] to Pennsylvania residents." *Id* . at 1126–27.

Accordingly, Plaintiff respectfully submits that this Court has personal jurisdiction over Defendants in this action.

**B.      PLAINTIFF IS ENTITLED TO AN *EX PARTE* TEMPORARY RESTRAINING ORDER AND A PRELIMINARY INJUNCTION**

An *ex parte* order is essential in this case to prevent immediate and irreparable injury to Plaintiff. Rule 65(b) of the Federal Rules of Civil Procedure provides, in pertinent part, that a temporary restraining order may be granted without written or oral notice to the opposing party or that party's counsel where "it clearly appears from the specific facts shown by affidavit . . . that immediate and irreparable injury, loss or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition." Fed. R. Civ. P. 65(b).  Further, this court has inherent power to grant an *ex parte* restraining order. *See Link v. Wabush R. R.*, 370 U.S. 626, 630 – 31 (1962) ("Inherent powers are governed by the 'control necessarily vested in courts to manage their own affairs as to achieve the orderly and expeditious disposition of cases.'(citation omitted)"). Indeed, the Supreme Court has indicated that federal courts have broad inherent powers to accomplish justice. *See Chambers v. Nasco, Inc.*, 501 U.S. 32, 44 (1991).

Defendants herein fraudulently promote, advertise, sell, and offer for sale goods by using Plaintiffs' Works to sell Knock-Offs and/or using Plaintiff's Mark, via their fully interactive, commercial Internet e-commerce stores using the Seller IDs.  Specifically, Defendants wrongfully use of Plaintiff's Works and/or Mark to increase traffic to their illegal operations.  By their actions, Defendants are passing off Defendants' Knock-Off Products as Plaintiff's genuine

products and creating a false association in the minds of consumers between Defendants and

Plaintiff.  The entry of a temporary restraining order would serve to immediately stop

Defendants from benefiting from their wrongful use of Plaintiff's intellectual property at issue

and preserve the status quo until such time as a hearing can be held.  *See Dell Inc. v.*

*BelgiumDomains, LLC*, Case No. 07-22674 2007 WL 6862341, at *2 (S.D Fla. Nov. 21, 2007)

(finding *ex parte* relief more compelling where Defendants' scheme "is in electronic form and

subject to quick, easy, untraceable destruction by Defendants.")

 Absent a temporary restraining order without notice, Defendants can and, based upon

Plaintiff's counsel's past experience, will significantly alter the status quo before the Court can

determine the parties' respective rights.  In particular, the Seller IDs at issue are under the

Defendants' complete control.  Thus, Defendants have the ability to modify e-commerce store

data and content, redirect consumer traffic to other seller identification names, change payment

accounts, and transfer assets. *Ference Dec.*, ¶ 6.  Such modifications can happen in a short period

of time after Defendants are provided with notice of this action. *Id.*  Defendants can also easily

electronically transfer and secret the funds sought to be restrained if they obtain advance notice

of Plaintiff's Application for a Temporary Restraining Order and thereby thwart the Court's

ability to grant meaningful relief and can completely erase the status quo. *Id.* As Defendants

engage in illegal infringing activities, Plaintiff has no reason to believe Defendants will make

their assets available for recovery pursuant to an account of profits or will adhere to the authority

of this Court any more than they have adhered to the Lanham Act.

 "Courts in other circuits dealing with foreign on-line counterfeiters have not hesitated to

exercise [their] authority [to grant an *ex parte* order] in infringement cases in which there is a

danger the defendants will destroy, conceal, or transfer counterfeit goods." *Moose Toys Pty, Ltd.*

*v. Thriftway Hylan Blvd. Drug Corp.*, No. 15- cv-4483-DLI/MDG, 2015 U.S. Dist.. LEXIS

105912, at *8 (E.D.N.Y. Aug. 6, 2015).  Moreover, federal courts have long recognized that civil

actions against counterfeiters - whose very business is built around the deliberate

misappropriation of rights and property belonging to others - present special challenges that

justify proceeding on an *ex parte* basis.  *See Columbia Pictures Indus., Inc. v. Jasso*, 927 F.

Supp. 1075, 1077 (N.D. Ill. 1996) (observing that "proceedings against those who deliberately

traffic in infringing merchandise are often useless if notice is given to the infringers"); *Time*

*Warner Entertainment Co., L.P.* v. *Does*, 876 F. Supp. 407, 410-11 (E.D.N.Y. 1994).

This Court should prevent an injustice from occurring by issuing an *ex parte* temporary

restraining order which precludes Defendants from continuing to display their infringing content

via the Internet e-commerce stores or modifying or deleting any related content or data.  Only

such an order will prevent ongoing irreparable harm and maintain the status quo.   The

immediate and irreparable harm to Plaintiff's business and reputation -- as well as to the

goodwill associated with Plaintiff's Mark -- in denying its Application for an *ex parte* temporary

restraining order, greatly outweighs the harm to Defendants' interests in continuing to offer for

sale and sell Knock-Off Products.  Many courts have granted an *ex parte* temporary restraining

order in situations where the harm to plaintiffs far outweighed the harm to defendants.[9]

The Third Circuit holds that a district court must evaluate the following four factors in

deciding whether preliminary injunctive relief is appropriately entered: (1) the extent to which the

moving party will suffer irreparable harm without injunctive relief; (2) the likelihood that the moving

party will succeed on the merits; (3) the extent to which the nonmoving party will suffer irreparable

---

[9]   *See, supra* fn. 2 (collecting cases granted *ex parte* temporary restraining order in situations where harm to
Plaintiff  far outweighed harm to defendants.).

harm if the injunction is issued; and (4) the public interest. *AT&T Co. v. Winback and Conserve Program, Inc.*, 42 F.3d 1421, 1427 (3d Cir. 1994). Courts routinely grant preliminary injunctive relief when a party's trademark rights are threatened by the sale of counterfeit versions of its products based on a trademark holder's inability "to control the quality of the goods manufactured and sold under the holder's trademark." *El Greco Leather Prods. Co. v. Shoe World, Inc.*, 806 F.2d 392, 395 (2d Cir. 1986). As shown below, Plaintiff readily meets the criteria for obtaining a temporary restraining order and preliminary injunction. *Louis Vuitton Malletier v. Burlington Coat Factory Warehouse Corp.,* 426 F.3d 532, 537 (2d Cir. 2005) (quoting *Federal Express Corp. v. Federal Espresso, Inc.,* 201 F.3d 168, 173 (2d Cir. 2000)). The "standards which govern consideration of an application for a temporary restraining order are the same standards as those which govern a preliminary injunction." *Local 1814, Int'l Longshoremen's Ass'n v. N.Y. Shipping Ass'n, Inc.,* 965 F.2d 1224, 1228 (2d Cir. 1992). *See also Hall v. Johnson*, 599 F.Supp.2d 1, 6 n. 2 (D.D.C. 2009); *accord Sterling Commercial Credit-Michigan, LLC v. Phoenix Industries I, LLC*, 762 F.Supp.2d 8 (D.D.C. 2011); *Coalition for Parity, Inc. v. Sebelius*, 709 F.Supp.2d 6 (D.D.C. 2010). As detailed below, Plaintiff has met the standard for a preliminary injunction, and accordingly, a temporary restraining order should also issue against Defendants.

1.   **Plaintiff Will Suffer Irreparable Harm in The Absence of an Injunction Leaving It With No Adequate Remedy at Law**

Defendants' infringing activities must be stopped immediately in order to prevent any further harm to Plaintiff. Not only does Plaintiff stand to suffer lost profits as a result of Defendants' competing substandard Knock-Off Products, but it destroys the inherent value of Plaintiff's IP, it impairs Plaintiff's reputation for providing quality products, it dilutes Plaintiff's brand and goodwill and it negatively affects Plaintiff's relationships with its current customers and its ability to attract new customers. *See Jelovich Dec.,* ¶¶ 29 - 31. While courts may no

- 32 -

longer presume irreparable harm upon a finding of infringement, *Salinger v. Colting,* 607 F.3d 68, 82 (2d Cir. 2010), "[i]rreparable harm exists in a trademark case when the party seeking the injunction shows that it will lose control over the reputation of its trademark . . . because loss of control over one's reputation is neither 'calculable nor precisely compensable.'" *Pappan Enters., Inc. v. Hardee's Food Sys., Inc.*, 143 F.3d 800, 805 (3d Cir.1998). Lack of control over one's mark "creates the potential for damage to ... reputation[, which] constitutes irreparable injury for the purpose of granting a preliminary injunction in a trademark case." *Opticians Ass'n of Am. v. Indep. Opticians of Am., 920 F.2d 187, 196 (3d Cir.1990).* Thus, "trademark infringement amounts to irreparable injury as a matter of law." *S & R Corp. v. Jiffy Lube Int'l, Inc.*, 968 F.2d 371, 378 (3d Cir.1992); *see also Times Mirror Magazines, Inc. v. Las Vegas Sports News, L.L.C.*, 212 F.3d 157, 169 (3d Cir.2000) ( "potential damage to ... reputation or goodwill or likely confusion between parties' marks" is irreparable injury). "[O]nce the likelihood of confusion caused by trademark infringement has been established, the inescapable conclusion is that there was also irreparable injury." *Pappan*, 143 F.3d at 805. *See also* U.S. *Polo Ass'n, Inc. v. PRL USA Holdings, Inc.,* 800 F.Supp.2d 515, 540 (S.D.N.Y. 2011); *see also NYPHoldings v. New York Post Pub. Inc.,* 63 F. Supp. 3d 328, 341 (S.D.N.Y. 2014) ("[A]lthough irreparable harm may not be presumed upon a showing of a likelihood of success, irreparable harm exists in a trademark case when the party seeking the injunction shows that it will lose control over the reputation of its trademark . . . Thus, it will often be the case that a party's demonstration of a likelihood of success on a trademark claim will also show a threat of irreparable harm." (citing *eBay, Inc. v. MercExchange, LLC,* 547 U.S. 388, 393 (2006); *Salinger,* 607 F.3d at 80)). *See: Bill Blass, Ltd. v. SAZ Corp.*, 751 F.2d 152, 224 U.S.P.Q. (BNA) 753 (3d Cir. 1984). ( *"Harm is irreparable when it cannot be compensated adequately in money damages."*). *See also S & R Corp. v. Jiffy*

*Lube Int'l, Inc.*, 968 F.2d 371, 378 (3d Cir.1992)  (Grounds for irreparable injury include loss of control of reputation, loss of trade, and loss of goodwill.)

Moreover, Defendants' infringing activities deny Plaintiff its fundamental right to control the quality of the goods sold under its marks.  *See Zino Davidoff SA v. CVS Corp.*, 571 F.3d 238, 243 (2d Cir. 2009) (affirming district court's grant of preliminary injunction) (quoting *El Greco Leather Products Co. v. Shoe World, Inc.*, 806 F.2d 392, 395 (2d Cir. 1986, *cert. denied*, 484 U.S. 817 (1987) ("[o]ne of the most valuable and important protections afforded by the Lanham Act is the right to control the quality of the goods manufactured and sold under the holder's trademark.").  Defendants are offering their substandard Knock-Off Products, often in wholesale quantities, at significantly below market prices with which Plaintiff cannot compete given the high-quality materials and construction necessary to manufacture the genuine products.  *See Erdely Dec.*, ¶¶ 19 - 23 and *Groupe SEB USA v. Euro-Pro Operating LLC*, 774 F.3d 192 (3d Cir. 2014) (holding that irreparable harm is caused to a trademark owner who cannot control the quality of their products because "a higher incidence of substantial sales of counterfeit goods, which are invariably non-conforming and inferior" would "harm [Plaintiffs'] reputation and diminish the value of its trademark."); *see also Mint, Inc. v. Iddi Amad*, No. 10-cv-9395-SAS, 2011 U.S. Dist.. LEXIS 49813, at *9 , n.23 (S.D.N.Y. May 9, 2011) ("the loss of pricing power resulting from the sale of inexpensive 'knock-offs' is, by its very nature, irreparable") (citing *Abbott Labs. v. Sandoz, Inc.*, 544 F.3d 1341, 1362 (Fed. Cir. 2008) (citing *Purdue Pharma L.P. v. Boehringer Ingelheim GmbH*, 237 F.3d 1359, 1368 (Fed. Cir. 2001) (likelihood of price erosion and loss of market position are evidence of irreparable harm); *Polymer Techs., Inc. v. Bridwell*, 103 F.3d 970, 975-76 (Fed. Cir. 1996) (loss of market opportunities cannot be quantified or adequately compensated and is evidence of irreparable harm)).

Also, because Defendants' substandard Knock-Off Products are virtually indistinguishable from Plaintiff's genuine products, not only could any injury that results from use of Defendants' substandard Knock-Off Products be attributed to Plaintiff *(See Jelovich Dec.*, ¶ 20), thereby causing irreparable harm to Plaintiff in the form of unquantifiable lost sales, loss of goodwill and loss of control of its reputation with authorized licensees, retailers and consumers, but Plaintiff potentially could be exposed to legal liability for any such injury, which is of particular importance given the nature of the genuine products. *Id.* Thus, this factor weighs heavily in Plaintiff's favor.

2.      **Plaintiff is Likely to Prevail on The Merits of its Lanham Act Claims**

Plaintiff asserts two causes of action under the Lanham Act. Count I of the Complaint is for Federal Unfair Competition under Section 43(a). Count II of the Complaint asserts Federal Trademark Infringement.[10] Plaintiff is likely to prevail on both Lanham Act claims.

To prevail on a false designation of origin claim pursuant to 15 U.S.C. § 1125(a) of the Lanham Act, a plaintiff must show: (1) that defendants used a false designation of origin; (2) that the use of the false designation of origin occurred in interstate commerce in connection with goods or services; (3) that the false designation is likely to cause confusion, mistake or deception as to the origin, sponsorship or approval of Plaintiff's goods by another person; and (4) that Plaintiff has been or is likely to be damaged as a result. *See AT&T Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1428 (3d Cir. 1994).   False designation of origin claims often take one of two forms:  "passing off" claims and "reverse passing off" claims.  The Supreme Court distinguished the two claims as follows:  "Passing off (or palming off, as it is sometimes called)

---

[10] Plaintiff has only alleged that Defendant Nos. ****** are using Plaintiff's Mark and thus counterfeiting. These papers refer to both con

- 35 -

occurs when a producer misrepresents his own goods or services as someone else's.  Reverse

passing off, as its name implies, is the opposite:  The producer misrepresents someone else's

goods or services as his own." *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23,

28 n. 1 (2003) (citations omitted).

### a. Defendants' Use of Plaintiff's Photographs

The Lanham Act, including Section 43(a), was enacted in 1946.  The very first case to

consider whether a defendant's use of a plaintiff's photograph in defendant's advertising was a

Section 43(a) violation was *L'Aiglon Apparel, Inc. v. Lana Lobell, Inc.*, 214 F.2d 649 (3d Cir.

1954).  The Third Circuit reversed a district court's grant of a defendant's motion to dismiss for

failure to state a claim, summarizing the case as follows:

> Plaintiff, a manufacturer, and defendant, a retailer, are both members of the dress
> industry, selling dresses in commerce.  Each is incorporated in Pennsylvania.
> Alleging a fraudulent and injurious use of a picture of plaintiff's dress in
> defendant's advertising, the plaintiff brought this action under the Lanham trade-
> Mark Act of 1946 for damages an injunctive relief. …
>
> * * * *
>
> On its face Section 43(a) seems rather clearly to cover the present claim. It
> provides in relevant part that "Any person who shall * * * use in connection with
> any goods * * * any false description or representation, including words or other
> symbols tending falsely to describe or represent the same, and shall cause such
> goods * * * to enter into commerce, * * * shall be liable to a civil action by any
> person * * * who believes that he is or is likely to be damaged by the use of any
> such false description or representation." Section 39 gives federal district courts
> jurisdiction of causes arising under this statute regardless of the amount in
> controversy or the citizenship of the litigants.
>
> The present complaint alleges that plaintiff created and alone sold to the retail
> trade throughout the country a certain distinctively styled dress.  To advertise this
> dress plaintiff published pictures of it, together with its price, $17.95, in
> advertisements in leading newspapers and in some two million individual mailing
> pieces distributed through retailers.  In this way the picture and price of this dress
> became associated in the minds of many readers and identified as plaintiff's
> $17.95 dress.

It is further alleged that, at about the same time, defendant was offering for sale through mail order and otherwise in interstate commerce a dress which in fact was much inferior to plaintiff's in quality and notably different in appearance.  In this connection defendant published under its name in a magazine of national circulation a display advertisement worded and designed to promote the mail order sale of its dress at a stated price of $6.95, but showing as the most prominent feature of the advertisement an actual photographic reproduction of plaintiff's dress, thus fraudulently represented as the article defendant was selling for $6.95.  Plaintiff alleges that this misrepresentation caused some trade to be diverted from plaintiff to defendant and caused other trade to be lost by plaintiff as a result of the mistaken impression conveyed to those familiar with the advertising of both parties that plaintiff was offering for $17.95 a dress worth only $6.95.

**In relation to the language of Section 43(a) this complaint states about as plain a use of a false representation in the description of goods sold in commerce as could be imagined.**

*L'Aiglon Apparel, Inc. v. Lana Lobell, Inc.,* 214 F.2d 649, 650 (3d Cir. 1954) (emphasis added).

It seems that some things never change.

In a 1967 case – pre-Internet – the plaintiffs created, designed, engineered and sold a novelty signal light.  The defendant caused to be copied and manufactured in Hong Kong a "Chinese" copy of plaintiff's novelty signal light.  In granting a preliminary injunction, the Court stated:

This unfair competition is also sufficient to sustain a cause of action cognizable under Section 43(a) of the Lanham Trademark Act, 15 U.S.C.A. § 1125(a). This Section provides, in pertinent part, that:

"Any person who shall affix * * * or use in connection with any goods or services, or any container * * * for goods, a false designation or origin, or any false description or representation, including any words or other symbols tending falsely to describe or represent the same, and shall cause such goods or services to enter into commerce, and any person who shall with knowledge of the falsity of such designation of origin or description or representation cause or procure the same to be transported or used in commerce or deliver the same to any carrier to be transported or used, shall be liable to a civil action * * * by any person who believes that he is or is likely to be damaged by the use of any such false description or representation."

Plaintiffs and defendant are in competition for the signal light market. Suffice it to say that plaintiffs' light appears to be of a higher quality than defendant's.

The application of Section 43(a) of the Lanham Act to this type of activity has been firmly established.  **In a series of cases, the courts have held that defendant may not use a photograph of plaintiff's product to advertise and sell its own less expensive and inferior product.**[11]  Such action is clearly unfair competition within the meaning of the statute and may be enjoined under the proper circumstances.

A preliminary injunction has issued even where a defendant has altered the photograph of a plaintiff's product in order to put defendant's trade name or trademark on the product when, in fact, defendant's product was not identical but inferior, National Dynamics Corp. v. John Surrey, Ltd., (Inc.) 238 F.Supp. 422 (S.D.N.Y. 1963), and when all identifying marks have been removed from plaintiff's pictured product.  Zandelin v. Maxwell Bentley Mfg. Co., supra. In the latter case, Judge Van Pelt Bryan stated the rationale for these decisions:

> "This section [Lanham Act § 43(a)] applies where a defendant advertises its inferior and much cheaper product by featuring a photographic reproduction of plaintiff's product, thus creates the impression that his product is precisely the same as plaintiffs' and causes trade to be diverted from plaintiff to himself and other trade to be lost." (197 F.Supp. at 611).

*Crossbow, Inc. v. Dan-Dee Imports, Inc.*, 266 F. Supp. 335, 339-40 (S.D.N.Y. 1967) (emphasis added).

In cases where a defendant has used the plaintiff's photograph in defendant's advertising, courts do not engage in a rigorous factor-by-factor analysis and simply conclude there has been a violation of Section 43(a).  *See Bangor Punta Operation v. Universal Marine Co.*, 543 F.2d 1107 (5th Cir. 1976) ("The plaintiff contends that the misappropriation of its advertising material by defendants results in the violation of § 43(a) of the Lanham Act.  We agree."); *Ebling & Reuss Co. v. International Collectors Guild, Ltd.*, 462 F. Supp. 716, 720 (E.D. Pa. 1978)

---

11    *American Optical Co. v. Rayex Corp.*, 266 F. Supp. 342 (S.D.N.Y.1966); *Ideal Toy Corp. v. Fab-Lu Ltd. (Inc.)*, 261 F. Supp. 238 (S.D.N.Y.1966); *Ideal Toy Corp. v. Fab-Lu Ltd. (Inc.)*, 266 F. Supp. 755 (S.D.N.Y.1964), *aff'd*, 360 F.2d 1021 (2d Cir. 1966); *National Dynamics Corp. v. John Surrey Ltd.*, 238 F. Supp. 423 (S. D.N.Y.1964); *National Dynamics Corp., v. John Surrey Ltd.*, 238 F. Supp. 422 (S. D.N.Y.1963); *Zandelin v. Maxwell Bentley Mfg., Co.*, 197 F. Supp. 608, 611 (S.D. N.Y.1961); *L'Aiglon Apparel v. Lana Lobell, Inc.*, 214 F.2d 649 (3rd Cir. 1954).

- 38 -

(Preliminary Injunction issued where "the advertisements do not depict the cup set actually sold by defendant; rather, they show plaintiff's Taltos set.  This, in itself, is a false description or representation, actionable under the Lanham Act."); 1 Federal Unfair Competition: Lanham Act 43(a) § 6:12 (Dec. 2018 Update) ("Generally stated, using one product or its facsimile such as a still photograph or motion picture, or otherwise in an advertisement or promotion, while actually delivering another product even though similar in quality or appearance, has been held actionable under Section 43(a)." (citations omitted).)

### b. Defendant's[12] Infringement of Plaintiff's Registered Trademark

In order to establish a likelihood of success on trademark infringement claims, a plaintiff must show: (1) that its marks are valid and entitled to protection, and (2) that defendants' use of plaintiff's marks is likely to cause confusion. In order for a party to prevail on a claim of trademark or service mark infringement under Section 1114 and the common law, the party must establish that (1) the mark is valid and legally protectable, (2) the mark is owned by the plaintiff and (3) use of the same mark by the defendant is likely to create confusion among the relevant consumers. *See, e.g.,Otokoyama Co. Ltd v. Wine of Japan Import, Inc.*, 175 F.3d 266, 270 (2d Cir. 1999). *See also Fisons Horticulture, Inc. v. Vigoro Indus., Inc.,* 30 F.3d 466, 472 (3d Cir.1994); *Ford Motor Co. v. Summit Motor Prods. Inc.,* 930 F.2d 277, 291 (3d Cir.), *cert. denied,* 502 U.S. 939, 112 S.Ct. 373, 116 L.Ed.2d 324 (1991).

In the Third Circuit, likelihood of confusion is assessed by the so-called *Lapp* factors first enunciated in *Scott Paper Co. v. Scott's Liquid Gold, Inc.,* 589 F.2d 1225, 1229 (3d Cir. 1978). Here,

---

[12] While Plaintiff alleges that all the Defendants are unfairly competing, only Defendant Nos. 7, 14, 16, 23, 28, 32, 40, 41, 44, 54, 55, 60, 69, 70, and 74 are using Plaintiff's Mark and thus alleged to be counterfeiting. To be clear, whether the products infringe on the Plaintiff's Mark or unfairly compete, they are identified as Knock-Offs in these papers.
.

each of the ten, non-exhaustive factors used to analyze whether there is likelihood of confusion favor Plaintiffs: (1) the strength of Plaintiffs' Marks; (2) the degree of similarity between the Plaintiffs' Marks and Defendants' marks; (3) the price of the goods and other factors indicative of the care and attention expected of consumers when making a purchase; (4) the length of time the defendant has used the mark without evidence of actual confusion; (5) the intent of the defendant in adopting the mark; (6) actual confusion; (7) the similarity of the channels of trade; (8) the extent to which the targets of the parties' sales efforts are similar; (9) the relationship of the goods in the minds of consumers; and (10) other factors suggesting that consumers might expect the trademark owner to manufacture both products, or manufacture a product in the defendant's market.

In order for a party to prevail on a claim of trademark infringement under Lanham Act Section 1114,[13] the party must establish that (1) the mark is valid and legally protectable, (2) the mark is owned by the plaintiff and (3) use of the same mark by the defendant is likely to create confusion among the relevant consumers. *See, e.g., Otokoyama Co. Ltd v. Wine of Japan Import, Inc.*, 175 F.3d 266, 270 (2d Cir. 1999). *See also Fisons Horticulture, Inc. v. Vigoro Indus., Inc.,* 30 F.3d 466, 472 (3d Cir.1994); *Ford Motor Co. v. Summit Motor Prods. Inc.,* 930 F.2d 277, 291 (3d Cir.), *cert. denied,* 502 U.S. 939, 112 S.Ct. 373, 116 L.Ed.2d 324 (1991).  Plaintiff's evidence submitted herewith satisfies all three requirements.

---

[13]  Like other courts, the Third Circuit Court of Appeals also recognize another type of passing off that violates Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) — where the objectionable conduct is the defendant's passing off that lures potential customers away from the plaintiff but where the customers recognize the passing off before actually transacting business with the defendant. *Checkpoint Sys., Inc. v. Check Point Software Techs., Inc.,* 269 F.3d 270, 294–95 (3d Cir. 2001). This particular type of passing off, which creates what is known as "initial interest confusion," is prohibited by the Lanham Act because without such protection, "an infringer could use an established mark to create confusion as to a product's source thereby receiving a 'free ride on the goodwill' of the established mark." *Id.*

The first two elements of Plaintiff's trademark infringement claim are easily met. Plaintiff's Mark is inherently distinctive. Moreover, Defendants have never had the right or authority to use the Plaintiff's Mark. *Jelovich Dec.* ¶ 26.

Turning to the third element of confusion, the Third Circuit uses a ten-factor test, the so-called *Lapp* factors, in determining the third element, likelihood of confusion. *Scott Paper Co. v. Scott's Liquid Gold, Inc.,* 589 F.2d 1225, 1229 (3d Cir. 1978). These factors are: (1) the strength of Plaintiff's Marks; (2) the degree of similarity between the Plaintiff's Marks and Defendants' marks; (3) the price of the goods and other factors indicative of the care and attention expected of consumers when making a purchase; (4) the length of time the defendant has used the mark without evidence of actual confusion; (5) the intent of the defendant in adopting the mark; (6) actual confusion; (7) the similarity of the channels of trade; (8) the extent to which the targets of the parties' sales efforts are similar; (9) the relationship of the goods in the minds of consumers; and (10) other factors suggesting that consumers might expect the trademark owner to manufacture both products, or manufacture a product in the defendant's market. These ten factors are to be weighed and no single factor is dispositive. *Id*.

### 1.  *Plaintiff's Mark is Strong and Distinctive*

In determining the strength of a mark, the Third Circuit has repeatedly applied a two-prong test of "(1) the distinctiveness or conceptual strength of the mark; and (2) the commercial strength or marketplace recognition of the mark." *A & H Sportswear v. Victoria's Secret Stores, Inc.,* 237 F.3d 198, 221 (3d Cir. 2000) (quotations omitted); *see also Fisons Horticulture, Inc. v. Vigoro Industries,* 30 F.3d 466, 478-79 (3d Cir. 1994). Lanham Trade–Mark Act, §§ 32, 43(a)(1)(A, 15 U.S.C.A. §§ 1114, 1125(a)(1)(A). The Plaintiff's Mark and Trade Dress are distinct as applied to the goods with which they are associated and as used in connection with

Plaintiff's Product, which has achieved recognition and fame. *See Jelovich Dec.,* ¶¶ 10 and 18. Likewise, the Plaintiff's Mark is suggestive as applied to the goods with which it is associated, as each "requires imagination, thought and perception to reach a conclusion as to the nature of the goods," and thus, the Plaintiff's Mark is inherently distinctive and is thereby entitled to trademark protection "without proof of secondary meaning." *Stix Prods., Inc. v. United Merchants & Mfrs., Inc.,* 295 F. Supp. 479, 488 (S.D.N.Y. 1968); *see also Thompson Medical Co., v. Pfizer Inc.,* 753 F.2d 208, 216 (2d Cir. 1985); *Bernard v. Commerce Drug Co.,* 774 F. Supp. 103 (E.D.N.Y. 1991) (applying the aforementioned standards in the context of an unregistered trademark). Thus, this factor weighs in Plaintiff's favor since Plaintiff owns an inherently distinct trademark.

### 2.   *Defendants' Knock-Off Products and Marks are Virtually Identical to Plaintiff's Product and Plaintiff's Mark*

Defendants have used identical copies of the Plaintiff's Mark in marketing and promoting their substandard, Knock-Off Products at Defendants' User Accounts and Merchant Storefronts; as such, this factor weighs in favor of Plaintiff.  Defendants' Knock-Off Products are clearly designed to look as much like the Plaintiff's Products as possible, without the quality and workmanship of the Plaintiff's Products. *See id.*; *see also Rado Watch Co.* v. *ABC, Co.,* 92-cv-3657-PKL, 1992 U.S. Dist.. LEXIS 8356, at *11 (S.D.N.Y. June 8, 1992) (finding that the similarity of the marks weighed heavily in plaintiff's favor where it is "exceedingly difficult" to distinguish between authentic and infringing goods, "even in a side- by-side comparison"). Only minor differences exist between the Knock-Off Products and the Plaintiff's Product, which have no bearing on a finding of likelihood of confusion. *See id.*; *see also Fun-Damental Too, Ltd. v. Gemmy Indus. Corp.,* 111 F.3d 993, 1004-1005 (2d Cir. 1997) (holding that the test for confusion is "whether they create the same general overall impression such that a consumer who

has seen" the authentic product would, when seeing the Knock-Off Product, be confused). Further, courts do "not look with much favor on the businessman who, out of the wealth of words available, chooses as a trademark one which comes as close as he dares to a well-known mark on the identical product." *A.T. Cross Co. v. Jonathan Bradley Pens, Inc.,* 470 F.2d 689, 692 (2d Cir. 1972).

### 3.   *The Sophistication of Purchasers*

"Where the purchasers of a products are highly trained professionals, they know the market and are less likely than untrained consumers to be misled or confused by the similarity of different marks." *Virgin Enters. Ltd. v. Nawab,* 335 F.3d 141, 151 (2d Cir. 2003). In contrast, ordinary "retail customers," (i.e., the consumers of Plaintiff's and Defendants' products), "are not expected to exercise the same degree of care as professional buyers, who are expected to have greater powers of discrimination." *Pretty Girl, Inc. v. Pretty Girl Fashions, Inc.,* 778 F. Supp. 2d 261, 268-269 (E.D.N.Y. 2011) (citing *Virgin Enterprises,* 335 F.3d at 151) (quoting district court). *See also Fisons,* 30 F.3d at 478–79. Thus, this factor favors Plaintiff's likelihood of success on the merits.

### 4.   *Defendants Acted in Bad Faith*

Given that Defendants' choice of marks, which is identical to the Plaintiff's Mark and and used in connection with the offering for sale and/or sale of virtually identical products, it can be presumed that Defendants intended to trade off the goodwill and reputation of Plaintiff, its Product and its Mark. *See Jelovich Dec.,* ¶¶ 27 – 29 and *Ray Dec.*, ¶ 2 and Composite Exhibit 1; *see also Kraft Gen. Foods, Inc. v. Allied Old English, Inc.,* 831 F. Supp. 123, 132 (S.D.N.Y. 1993) ("When a company appropriates an identical mark that is well known and has acquired a secondary meaning, an inference can be drawn that the company intends to capitalize on the

goodwill and reputation of the mark as well as any confusion that might result concerning the common origin of that mark and the senior user's product.").[14]  If Defendants' infringing actions are found to be willful, "likelihood of confusion will be presumed as a matter of law." *N.Y. State Soc'y of CPA's v. Eric Louis Assocs.,* 79 F. Supp. 2d 331, 340 (S.D.N.Y. 1999).

### 5.   Actual Confusion Can Be Inferred Between Defendants' Knock-Off Products and the Plaintiff's Product

Seeing as Defendants are offering for sale and/or selling knock-off versions of the Plaintiff's Product under the Plaintiff's Mark, or a confusingly similar mark, actual confusion can be inferred. *See Jelovich Dec., ¶¶ 27 – 29* and *Ray Dec. at ¶ 2* and *Composite Exhibit 1.* Moreover, actual confusion exists in this case. *See Jelovich Dec. ¶ 19.*  Notwithstanding, Plaintiff does not need to prove actual confusion, only a likelihood of confusion to obtain equitable relief. *See Opticians Ass'n of America v. Independent Opticians of America Prot.,* 920 F.2d 187, 195 (citations omitted).  *See also One Alarm Monitoring, Inc. v. Exec. Prot. One Sec. Serv., LLC,* 553 F. Supp. 2d 201, 206 (E.D.N.Y. 2008) (quoting *Warner Bros., Inc. v. Gay Toys, Inc.,* 658 F.2d 76, 79 (2d Cir. 1981) ("To obtain an injunction in a trademark case the plaintiff need show 'only a likelihood of confusion or deception ... in order to obtain equitable relief.'").

---

[14]    *See also Toys "R" Us, Inc.,,* 559 F. Supp. 1189, 1199 (E.D.N.Y. 1983) (citing *E.I. duPont de Nemours & Co. v. Yoshida International, Inc.,* 393 F. Supp. 502, 514 (E.D.N.Y. 1975)) ("On the assumption that a businessman will ordinarily act to his commercial advantage, and that the attraction of an established business' good will to the newcomer's product is such an advantage, the inference to be drawn from imitation is the imitator's own expectation of confusion as to the source of origin of his product. Where, as here, there is little to distinguish the marks themselves and the prior mark is a long-established one of which the newcomer was aware, doubts about intent are resolved against the newcomer, and a reasonable explanation of its choice is essential to establish lack of intent to deceive.") and *Gucci America, Inc. v. Action Activewear, Inc.,* 759 F. Supp. 1060, 1065 (S.D.N.Y. 1991) ("Where the evidence "shows or requires the inference that another's name was adopted deliberately with a view to obtain some advantage from the good will, good name, and good trade which another has built up, then the inference of likelihood of confusion is readily drawn, for the very act of the adopter has indicated that he expects confusion and resultant profit.") (internal citation omitted).

### 6. *Defendants' Knock-Off Products Are of Inferior Quality*

The Plaintiff's Product is manufactured with high quality materials. *See Jelovich Dec.* ¶ 23. Plaintiff has neither authorized Defendants' use of the Plaintiff's Mark or confusingly similar marks in connection with the Knock-Off Products nor approved or tested Defendants' Knock-Off Products being offered for sale and/or sold under or in connection with the Plaintiff's Mark and/or confusingly similar marks. *See Id. at* ¶¶ 23 - 26. Hence, Defendants have encroached on Plaintiff's right to control the quality of the goods manufactured and sold under the Plaintiff's Mark. *See Groupe SEB USA v. Euro-Pro Operating LLC*, 774 F.3d 192 (3d Cir. 2014). *See also Polymer Technology Corp. v. Mimran,* 975 F.2d 58, 62 (2d Cir. 1992) (quoting *El Greco Leather Products Co.,* 806 F.2d at 395) ("'One of the most valuable and important protections afforded by the Lanham Act is the right to control the quality of the goods manufactured and sold under the holder's trademark . . . the actual quality of the goods is irrelevant; it is the control of quality that a trademark holder is entitled to maintain'"). In light of the above, this factor further supports a finding of likelihood of confusion.

### 7. *Defendants ' Knock-Off Products Directly Compete with the Plaintiff's Product and There is No Gap to Bridge*

In considering the proximity of the products in the market, the concern is "competitive proximity," meaning "whether and to what extent the two products compete with each other." *Cadbury Beverages Inc. v. Cott Corp.,* 73 F.3d 474, 480 (2d Cir. 1996). In assessing the proximity of the parties' products, courts "look to the nature of the products themselves and the structure of the relevant market. Among the considerations germane to the structure of the market are the class of customers to whom the goods are sold, the manner in which the products are advertised, and the channels through which the goods are sold." *Id.* (citations and internal

quotations omitted). "[T]he closer the secondary user's goods are to those the consumer has seen marketed under the prior user's band, the more likely that the consumer will mistakenly assume a common source." *Virgin Enterprises v. Nawab,* 335 F.3d 141, 150 (2d Cir. 2003). In this case, Knock-Off Products and the Plaintiff's genuine products are both marketed through the same channel of trade (the Internet), to the same retail consumers, and the retail customers are likely to be confused that the products are the same, so this factor weighs in favor of Plaintiff.

Further, where, as here, Defendants are offering for sale and selling products that are virtually identical in kind, but not in quality to the Plaintiff's genuine products, bearing infringing marks in the same class of goods under which Plaintiff sells its products, they are already in competitive proximity and there is no "gap" to bridge. *See Jelovich Dec.,* ¶¶ 27 - 29; *RayDec.,* ¶ 3 and Composite Exhibit 1. "[T]here is a great likelihood of confusion when an infringer uses the exact trademark...." *U.S. Jaycees v. Philadelphia Jaycees,* 639 F.2d 134, 142 (3d. Cir. 1981). Thus, likelihood of confusion is inevitable, when, as in this case, the identical mark is used concurrently by unrelated entities. *See also* 2 *McCarthy,* § 23:3 ("Cases where a defendant uses an identical mark on competitive goods hardly ever find their way into the appellate reports. Such cases are 'open and shut' and do not involve protracted litigation to determine liability for trademark infringement."). *Starbucks Corp. v. Wolfe's Borough Coffee, Inc.,* 588 F.3d 97, 115 (2d Cir. 2009) (This factor "is irrelevant . . . where . . . the two products are in direct competition with each other."); *see also Star Indus. v. Bacardi & Co.,* 412 F.3d 373, 387 (2d Cir. 2005) (concluding that "[b]ecause . . . [the] products are already in competitive proximity, there is really no gap to bridge, and this factor is irrelevant to the *Polaroid* analysis") and *Pfizer, Inc. v. Y2K Shipping & Trading, Inc.,* 00-cv-5304-SJ, 2004 U.S. Dist.. LEXIS 10426,

at *15-16 (E.D.N.Y. March 26, 2004) (citations omitted) ("Where the products are competitive, there is no gap to bridge and the likelihood of confusion is greater.").

### 3.  Plaintiff Is Likely to Prevail on Its State Law Claims

Because Plaintiff has shown a likelihood of success on its Lanham Act claims, Plaintiff respectfully submits that it has also shown a likelihood of success on its unfair competition and common law trademark infringement claims under Pennsylvania Law.  *Mateson Chemical Corp. v. Veronon,* 2000 WL 680020, at *5 n.7 (E.D. Pa. May 9, 2000).  *See also Advance Magazine Publrs. Inc. v. Vogye Intern.*, 123 F. Supp. 2d 790, 795 (D.N.J. 2000) (citing *A &H Sportswear, Inc.*, 237 F.3d at 201 - 11.)

### 4. The Balance of Hardships Favors Plaintiff

The balance of hardships unquestionably and overwhelmingly favors Plaintiff in this case. Here, as described above, Plaintiff has suffered, and will continue to suffer, irreparable harm to its business, the value, goodwill and reputation built up in and associated with the Plaintiff's Mark and Trade Dress and to its reputation as a result of Defendants' willful and knowing sales of substandard imitations of the Plaintiff's genuine product.  *See Jelovich Dec.,* ¶¶ 19 - 29.  In contrast, any harm to Defendants would only be the loss of Defendants' ability to continue to offer their Knock-Off Products for sale, or, in other words, the loss of the benefit of being allowed to continue to unfairly profit from their illegal and infringing activities. "Indeed, to the extent defendants 'elect[] to build a business on products found to infringe[,] [they] cannot be heard to complain if an injunction against continuing infringement destroys the business so elected."  *Windsurfing Intern, Inc. v. AMF, Inc.*, 782 F.2d 995, 1003 n.12 (Fed. Cir. 1986); *Broad. Music, Inc. v. Prana Hosp.,* Inc., 158 F. Supp. 3d 184, 196 (S.D.N.Y. 2016) (quoting

*Mint, Inc. v. Amad,* 2011 U.S. Dist.. LEXIS 49813, at *3 (S.D.N.Y. 2011) (internal quotation

marks and citation omitted)); *see also Mitchell Group USA LLC*, No. 14-cv-5745-DLI/JO, 2014

U.S. Dist.. LEXIS 143001, at *6-7 (E.D.N.Y Feb. 17, 2014) (citing *Philip Morris USA Inc. v. 5*

*Bros. Grocery Corp.,* No. 13-cv-2451- DLI/SMG, 2014 U.S. Dist.. LEXIS 112274 (E.D.N.Y.

Aug. 5, 2014) ("Absent an injunction, there will be further erosion of plaintiff's goodwill and

reputation. Defendants, on the other hand, will be called upon to do no more than refrain from

what they have no right to do in the first place.")).

### 5. The Relief Sought Serves the Public Interest

Defendants are directly defrauding the consuming public by palming off the Knock-Off

Products as Plaintiff's genuine goods.  The "public has an interest in not being deceived—in

being assured that the mark it associates with a product is not attached to goods of unknown

origin and quality."  Public interest can be defined a number of ways, but in a trademark case, it

is most often a synonym for the right of the public not to be deceived or confused.  2 *McCarthy,*

§ 30:21.  *See Bill Blass, Ltd. v. Saz Corp.,* 751 F.2d at 156 (there is a public interest in the

protection of the trademark and to avoid confusion in the public); *SK & F, Co. v. Premo*

*Pharmaceutical Laboratories,* 625 F.2d 1055, 1057 (3d Cir.1980) ("preventing deception of the

public is itself in the public interest"). *See also International Kennel Club v. Mighty Star, Inc.,*

846 F.2d at 1092 n. 8 ("[T]he relevant consideration is the consumer's interest in not being

deceived.")  Here, the public has an interest in being able to rely on the high quality of the

Plaintiff's genuine products bearing and/or sold in connection with the Plaintiff's Mark and

Trade Dress.  Since Defendants have willfully and knowingly inserted substandard Knock-Off

Products into the marketplace, the public would benefit from a temporary restraining order and preliminary injunction halting any further sale and distribution of Defendants' Knock-Off Products. *See Jelovich Dec.,* ¶¶ 23 - 31.

      **C.**      **PLAINTIFF IS ENTITLED TO AN ORDER PREVENTING 1) THE FRAUDULENT TRANSFER OF ASSETS AND 2) FREEZING OF DEFENDANTS' MERCHANT STOREFRONTS**

          **1.  Defendants' Assets Must be Frozen**

In addition, the Court should enter an order limiting the transfer of Defendants' unlawfully gained assets.  Plaintiff has demonstrated above that they will likely succeed on the merits of their claims.  As such, under 15 U.S.C. § 1117(a), Plaintiff will be entitled to an accounting and payment of the profits earned by Defendants throughout the course of their unlawful scheme.  Furthermore, it is unlikely that Defendants possess the funds to satisfy any potential judgment and Pennsylvania law also permits the prejudgment restraint sought by Plaintiff.  Due to the deceptive nature of Defendants' business, and Defendants' deliberate violations of both federal trademark and patent laws, Plaintiff respectfully requests this Court grant additional *ex parte* relief restraining the transfer of all monies held or received by Context Logic, PayPal, Amazon, and AliPay or other financial institutions for the benefit of any one or more of the Defendants.  *See, e.g., Balenciaga Am., Inc. v. Dollinger,* No. 10-cv-2912-LTS, 2010 U. S. Dist. LEXIS 107733, at *22 (S.D.N.Y. Oct. 8, 2010) (citing *Wishnatzki &N athel, Inc. v. H.P. Island-Wide, Inc.,* No. 00-cv-8051-JSM, 2000 U.S. Dist. LEXIS 15664, at *4 (S.D.N.Y. 2000) ("[W]here plaintiffs seek both equitable and legal relief in relation to specific funds, a court retains it equitable power to freeze assets."); *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger USA., Inc.,* 146 F.3d 66, 71-72 (2d Cir. 1998) ("A district court faced with a Lanham Act violation possesses some degree of discretion in shaping [the] relief according to the

principles of equity and the individual circumstances of each case" within the parameters of allowing an accounting for profits); *George Basch Co., Inc. v. Blue Coral, Inc.,* 968 F.2d 1532, 1537 (2d Cir. 1992); *Tiffany (NJ) LLC* v. *Forbse,* No. 11-cv-4976-NRB, 2012 U.S. Dist. LEXIS 72148, at *34 (S.D.N.Y. May 23, 2012); *Warner Bros. Entm't Inc. v. Doe,* No. 14-cv-3492-KPF, 2014 U.S. Dist.. LEXIS 190098 (S.D.N.Y. May 29, 2014); and *Hoxworth v. Blinder, Robinson & Co., Inc.*, 903 F.2d 186 (3d Cir. 1990) (district court has power to issue an injunction in order to protect a future damages remedy; the unsatisfiability of a money judgment can constitute irreparable injury).

This Court has broad authority to grant such an order. The Supreme Court has provided that district courts have the power to grant preliminary injunctions to prevent a defendant from transferring assets in cases where an equitable interest is claimed. *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Funds, Inc.*, 527 U.S. 308 (1999). The Third Circuit has additionally ruled that district courts have the power to grant preliminary injunctions to prevent a defendant from transferring assets in order to protect a future damages remedy. *Hoxworth v. Blinder, Robinson & Co., Inc.*, 903 F.2d 186 (1990). Moreover, almost every Circuit has interpreted Rule 65 of the Federal Rules of Civil Procedure to grant authority to restrain assets *pendent elite*. *See Mason Tenders Dist. Council Pension Fund v. Messera*, 1997 WL 223077 (S.D.N.Y. May 7, 1997) (acknowledging that "[a]lmost all of the Circuit Courts have held that Rule 65 is available to freeze assets *pendent lite* under some set of circumstances").

Courts have the inherent authority to issue a prejudgment asset restraint when plaintiff's complaint seeks relief in equity. *Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, (5th Cir. 2007); *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995); *Reebok Int'l Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992). In the

years since *Marnatech*, many federal courts have granted the temporary restraint of an infringer's assets in cases similar to this one, including recently in actions against operators of 'rogue' websites selling Knock-Off Products to ensure the availability of an equitable accounting. *See, e.g., The North Face Apparel Corp. and PRL USA Holdings, Inc. v. Fujian Sharing, et al.*, Civil Action No. 10-Civ-1630 (AKH) (S.D.N.Y. March 2, 2010); *National Football League v. Chen Cheng, et al.*, No. 11-Civ-00344 (S.D.N.Y. January 19, 2011); *Tory Burch LLC v. Yong Sheng Intl Trade Co., Ltd.*, No. 10-Civ-9336 (S.D.N.Y. December 17, 2010).

Plaintiffs may obtain an order restraining Defendants' Assets by demonstrating a "likelihood of dissipation of the claimed assets, or other inability to recover money damages, if relief is not granted." *DatatechEnters. LLC v. FFMagnatLtd.,* No. 12-cv-04500-CRB, 2012 U.S. Dist. LEXIS 131711, at *12 (N.D. Cal. Sept. 14, 2012) (citing *Johnson v. Couturier,* 572 F.3d 1067, 1085 (9th Cir. 2009)). District courts have the "authority to freeze those assets which could [be] used to satisfy an equitable award of profits." *North Face Apparel Corp. v. TC Fashions, Inc.,* No. 05-cv-9083-RMB, 2006 U.S. Dist. LEXIS 14226, at *10 (S.D.N.Y. Mar. 30, 2006) (internal citation omitted). In doing so, a court "may exempt any particular assets from the freeze on the ground that they [are] not linked to the profits of allegedly illegal activity." *Id.* at *11. Yet, the onus is on "the party seeking relief [from any such asset freeze] to 'present documentary proof'" that its profits do not stem from such illegal activity. *Id.*

Under 15 U.S.C. § 1117(a), a plaintiff in an action arising thereunder is entitled to recover a defendant's profits derived from the counterfeiting and/or infringement and/or plaintiff's damages. The Supreme Court specifically held that a trademark "infringer is required *in equity to account* for and yield up his gains to the true owner," and "profits are then allowed as an *equitable* measure of compensation." *Gucci Am. v. Bank of China,* 768 F.3d 122, 131-132 (2d

Cir. 2014) (quoting *Hamilton-Brown Shoe Co. v. Wolf Bros. & Co.,* 240 U.S. 251, 259 (1916)

(emphasis added) and *Sheldon v. Metro-Goldwyn Pictures Corp*., 309 U.S. 390, 399 (1940)).

Specifically, with respect to claims involving infringement arising under the Lanham Act, it has

been established that district courts have the authority to issue a prejudgment asset restraint

injunction in favor of plaintiffs seeking an accounting and/or another equitable remedy against

allegedly infringing defendants. *See, e.g., Warner Bros. Entm't Inc. v. Doe,* 2014 U.S. Dist..

LEXIS 190098 (S.D.N.Y. May 29, 2014); *Microsoft Corp. v. Jun Yan,* 2010 U.S. Dist.. LEXIS

14934 (Dist. Conn. Feb. 18, 2010); *Levi Strauss & Co. v. Sunrise Int'l Trading, Inc.,* 51 F.3d 982

(11th Cir. 1995) (finding that the district court had the authority to freeze assets that could have

been used to satisfy an equitable award of profits pursuant to 15 U.S.C. § 1117) and *Reebok Int'l,*

*Ltd.,* 970 F.2d at 560 ("Because the Lanham Act authorizes the district court to grant Reebok an

accounting of Betech's profits as a form of final equitable relief, the district court had the

inherent power to freeze Betech's assets in order to ensure the availability of that final relief.").

Furthermore, in the Third Circuit, the inability of a defendant to satisfy a judgment for legal

damages justifies a pre-judgment restraint of existing assets. *Hoxworth v. Blinder, Robinson &*

*Co., Inc.*, 903 F.2d 186 (3d Cir. 1990) (concluding the unsatisfiability of a money judgment can

constitute irreparable injury).

An asset freeze in the instant matter is unquestionably warranted because Defendants,

who appear to be unknown individuals, that are manufacturing, importing, exporting,

advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling

Knock-Off Products to U.S. consumers solely via the Internet, and accepting payment for such

Knock-Off Products in U.S. Dollars through Financial Institutions, thereby causing irreparable

harm to Plaintiff in the form of lost sales, loss of goodwill and loss of control of its reputation

with licensees, retailers and consumers, and can, and most certainly have the incentive to, transfer and hide their ill-gotten funds if their assets are not frozen. *See Ference Dec.,* ¶ 6.

Moreover, to provide complete equitable relief, courts have granted such orders without providing notice to the defendants.  Specifically, federal courts have held that where advance notice of an asset restrain is likely to cause a party to alienate the assets sought to be restrained, a temporary restraining order may be issued *ex parte*.  *See F.T. Int'l Ltd. v. Mason*, 2000 WL 1514881 *3 (E.D. Pa. 2000) (granting *ex parte* TRO restraining defendants' bank accounts upon finding that advance notice would likely have caused the defendants to secret or alienate funds); *CSC Holdings, Inc. v. Greenleaf Elec., Inc.*, 2000 WL 715601 (N.D. Ill. 2000) (granting *ex parte* TRO enjoining cable television pirates and restraining pirates' assets); *Dama S.P.A.* v. *Doe,* 2015 U.S. Dist. LEXIS 178076, at *4-6 (S.D.N.Y. June 12, 2015) (agreeing that, "Plaintiff's concerns regarding the likelihood of dissipating assets merit the extraordinary remedy of *ex parte* relief and that there is a strong likelihood that advance notice of the motion would cause Defendants to drain Financial Institution accounts, thereby depriving Plaintiff of the remedy it seeks") and *SEC v. Caledonian Bank Ltd.,* 317 F.R.D. 358 (S.D.N.Y. 2016) (granting plaintiff's request for an *ex parte* asset freeze based on plaintiff's assertion that Defendants were foreign entities, and therefore could easily move assets out of bank or brokerage accounts at a moment's notice).[15]

In this case, Defendants' blatant violations of federal trademark laws warrant an *ex parte* order restraining the transfer of their ill-gotten assets.  Moreover, as Defendants' business are conducted anonymously over the Internet, Plaintiff has additional cause for *ex parte*  relief, as Defendants may easily secret or transfer their assets with the Court's or Plaintiff's knowledge.

---

[15]   See also *supra fn. 5*

### 2.    Defendants' User Accounts and Merchant Storefronts Must be Frozen

A temporary restraining order which, in part, restrains and enjoins the Third Party

Service Provider(s), as well as any and all as yet undiscovered online marketplace platforms,

from providing services to Defendants' User Accounts and Merchant Storefronts is warranted

and necessary because the continued offering for sale and/or sale of the Knock-Off Products by

Defendants on their Merchant Storefronts through their User Accounts will result in immediate

and irreparable injury to Plaintiff, as described above. *See Gucci Am., Inc. v. Weixing Li,* 768

F.3d 122, 126 (2d Cir. 2014) (Hon. Richard J. Sullivan entered a temporary restraining order,

which, in part, enjoined the sale of counterfeit goods on the Internet) and *AW Licensing, LLC v.*

*Bao,* No. 15-cv-1373, 2015 U.S. Dist.. LEXIS 177101, at *3 (S.D.N.Y. Apr. 1, 2015) (Hon.

Katherine B. Forrest entered a temporary restraining order which was subsequently converted

into a preliminary injunction, which, in part, disabled the defendants' websites, which were their

means of distributing, offering for sale and selling counterfeit products.).[16]

One reason why courts have ordered this relief is the ease with which a Merchant

Storefront may be set up.  For example, a defendant who knowingly sells Knock-Off Products

will likely try and set up another Merchant Storefront to keep selling when the current Merchant

Storefront stops working.  *See Ference Dec.*, ¶ 6.  This brings into play a balancing of the

hardship to Defendants against the hardship to Plaintiff if the relief is not granted.  In the present

case, the hardship to Plaintiff outweighs any hardship to Defendants.  The proposed Order does

not block any of the enjoined Defendants from setting up another Merchant Storefront to sell

non-Knock-Off Products.  The proposed Order merely blocks any goodwill associated with the

---

[16]    See *id.*

Merchant Storefront which sold Knock-Off Products; the Defendants are free to set up a new Merchant Storefront that does not sell Knock-Off Products.

Blocking the good will associated with the Merchant Storefront helps prevent the situation with the defendants where the Knock-Off Product listing has been taken down but if someone (e.g., a repeat buyer) contacts a Defendant at the Merchant Storefront using the messaging system provided by the online marketplace asking for the Knock-Off Product it will be made available by a Defendant. *Id*. The only way to preclude this type of harm to Plaintiff is to freeze the Defendants' Merchant Storefronts.

A freezing of Defendants' Merchant Storefronts also acts to provide immediate notice of the present action to Defendants. Indeed, a number of cases have required that the domain names on which a defendant's storefront operates be turned over to the plaintiff and pointed to a webpage providing notice of the lawsuit against the defendant. *Iron Maiden Holdings Ltd. v. The P'ships & Unicorporated Assns. Identified on Schedule "A"*, No. 18-CV-522 (N.D. Ill. Feb. 1, 2018) ("Plaintiff may provide notice of these proceedings to Defendants, including notice of the preliminary injunction hearing and service of process pursuant to Fed.R.Civ.P. 4(f)(3), by electronically publishing a link to the Complaint, this Order and other relevant document on a website to which the Defendant Domain Names which are transferred to Plaintiff's control will redirect"). Thus, the freezing of Defendants' Merchant Storefronts is also a manner of ensuring that Defendants receive notice of the present action.

### D.   PLAINTIFFS ARE ENTITLED TO AN ORDER AUTHORIZING EXPEDITED DISCOVERY

Additionally, Plaintiff respectfully requests that the Court order expedited discovery from Defendants, Financial Institutions and the Third Party Service Provider regarding the scope and

extent of Defendants' infringing activities, as well as Defendants' account details and other information relating to Defendants' Financial Accounts, Assets and/or any and all User Accounts and or Financial Accounts with the Third Party Service Provider, including, without limitation any and all websites, any and all accounts with online marketplace platforms, as well as any and all as yet undiscovered accounts with additional online marketplace platforms held by or associated with Defendants, their respective officers, employees, agents, servants and all other persons in active concert with any of them ("User Accounts"), and any and all User Accounts through which Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them operate storefronts to manufacture, import, export, advertise, market, promote, distribute, display, offer for sale, sell and/or otherwise deal in products, including Knock-Off Products, which are held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them ("Merchant Storefront(s)") including, without limitation, those owned and operated, directly or indirectly, by the Third Party Service Provider and the Financial Institutions.

District courts have broad power to require early document production and to permit expedited discovery.  *See* Fed. R. Civ. P. 30(b), 34(b).  Expedited discovery may be granted when the party seeking it demonstrates: (1) irreparable injury; (2) some likelihood of success on the merits; (3) some connection between expedited discovery and the avoidance of irreparable injury; and (4) some evidence that the injury which will result without expedited discovery looms greater than the injury that defendant will suffer if expedited discovery is granted. *See, e.g., Advanced Portfolio Technologies, Inc. v. Advanced Portfolio Technologies Ltd.*, 1994 U.S. Dist.. LEXIS 18457, at *7 (S.D.N.Y. Dec. 28, 1994).

Generally, a party may not seek discovery prior to a Rule 26(f) conference unless authorized by a court order. *See* Fed. R. Civ. P. 26(d)(1). While in the past, Courts have often applied a four-factor test to determine when expedited discovery may be granted,[17] they now apply a more flexible "good cause" test to examine "the discovery request . . . on the entirety of the record to date and the *reasonableness* of the request in light of all the surrounding circumstances." *Ayyash v. Bank Al-Madina,* 233 F.R.D. 325, 326 (S.D.N.Y. 2005) (quoting *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. O'Connor,* 194 F.R.D. 618, 624 (N.D. 1ll. 2000)).[18]  Regardless of which test is applied, Plaintiff has established that it is entitled to the expedited discovery requested. Plaintiff has demonstrated both irreparable injury and its probability of success on the merits above, and taking into account the covert nature of Defendants, their business operations and the fact that they appear to be foreign individuals or companies who have both the incentive and the capability to hide or destroy relevant business records and other discoverable information and documentation upon hearing of this action, Plaintiff respectfully submits that there is good cause for this Court to grant Plaintiff the expedited discovery requested herein because it will prevent further injury to Plaintiff and assist Plaintiff in pursuing its claims against Defendants and in recovering the damages to which it is entitled.  *See Ayyash,* 233 F.R.D., at 327.

---

[17]   ". . . the plaintiff must demonstrate (1) irreparable injury, (2) some probability of success on the merits, (3) some connection between the expedited discovery and the avoidance of the irreparable injury, and (4) some evidence that the injury that will result without expedited discovery looms greater than the injury that the defendant will suffer if the expedited relief is granted." *Advanced Portfolio Techs., Inc. v. Advanced Portfolio Techs., Ltd.,* 1994 U.S. Dist. LEXIS 18457, at *7 (S.D.N.Y. Dec. 28, 1994).

[18]   See, *e.g., Malibu Media, LLC v. Doe,* 2016 U.S. Dist. LEXIS 64656, at *4 (S.D.N.Y. May 16, 2016); *Malibu Media, LLC v. Doe,* 2015 U.S. Dist. LEXIS 87751, at *2-3 (S.D.N.Y. July 6, 2015); *Milk Studios, LLC v. Samsung Elecs. Co.,* 2015 U.S. Dist. LEXIS 38710, at *4-5 (S.D.N.Y. Mar. 25, 2015); *Admarketplace, Inc. v. Tee Support, Inc.,* No., 2013 U.S. Dist. LEXIS 129749, at *3-4 (S.D.N.Y. Sept. 11, 2013); *Dig. Sin, Inc. v. Does 1-176,* 279 F.R.D. 239, 241 (S.D.N.Y. 2012); and *Stern v. Cosby,* 246 F.R.D. 453, 457 (S.D.N.Y. 2007) (agreeing with the *Ayyash* Court that the more flexible approach is the better approach.).

Despite the likelihood of success of Plaintiff's claims and the injury it has and continues to endure, if this Court were to deny expedited discovery, Plaintiff may lose the opportunity to effectively pursue their claims against Defendants because there are several aspects of Defendants' infringing activities that Plaintiff is not yet able to confirm, including: 1) the true identities of Defendants, 2) the full scope of Defendants' infringing activities, 3) the source or location of Defendants' inventory of Knock-Off Products and/or 4) where the proceeds from Defendants' infringing activities have gone. *See Admarketplace, Inc. v. Tee Support, Inc.,* No. 13-cv-5635- LGS, 2013 U.S. Dist.. LEXIS 129749, at \*5 (S.D.N.Y. Sep. 11, 2013) (finding that a plaintiff "who has a potentially meritorious claim and no ability to enforce it absent expedited discovery, has demonstrated good cause for expedited discovery"). Therefore, only through an order from the Court allowing expedited discovery will Plaintiff be able to fully ascertain the extent of Defendants' infringing activities.

Plaintiff respectfully requests an *ex parte* Order allowing expedited discovery in order to permit it to discover certain identifying information, including information concerning all of Defendants' Financial Accounts, Assets and User Accounts and their sales of Knock-Off Products.  The discovery requested on an expedited basis in Plaintiff's [Proposed] Order has been limited to include only that which is essential to prevent further irreparable harm. Under Fed. R. Civ. P. 65(d)(2)(C), this Court has the power to bind any third parties who are in active concert with Defendants that are given notice of the Order to provide expedited discovery. Moreover, Financial Institutions and the Third Party Service Provider have complied with similar requests for expedited discovery in like actions before this Court.  *See supra* note 5. Plaintiff respectfully submits that its request should be granted.

E.   **PLAINTIFF'S REQUEST FOR A SECURITY BOND**
     **IN THE AMOUNT OF $5,000 IS ADEQUATE**

Generally, a bond is a condition of preliminary injunctive relief.  Fed. R. Civ. P.  65(c)
requires a successful applicant for a preliminary injunction to post a bond, "in such sum as the
[district] court deems proper, for the payment of such costs and damages as may be incurred or
suffered by any party who is found to have been wrongfully enjoined."  Thus, the injunction
bond "provides a fund to use to compensate incorrectly enjoined defendants." *Instant Air Freight
Co. v. C.F. Air Freight, Inc.,* 882 F.2d 797, 804 (3d Cir. 1989) (quotations omitted).

The injunction bond also serves other functions. "It is generally settled that, with rare
exceptions, a [party] wrongfully enjoined has recourse only against the bond." *Id.; see also
Hoxworth v. Blinder, Robinson & Co., Inc.,* 903 F.2d 186, 210 n. 31 (3d Cir.1990) (Applicants
"derive some protection from the bond requirement, for [enjoined parties] injured by wrongfully
issued preliminary injunctions can recover only against the bond itself."). Thus, the bond
generally limits the liability of the applicant and informs the applicant of "the price [it] can
expect to pay if the injunction was wrongfully issued." *Instant Air Freight,* 882 F.2d at 805; *see
also id.* at 805 n. 9 ("The bond can thus be seen as a contract in which the court and [the
applicant] 'agree' to the bond amount as the 'price' of a wrongful injunction.") (quotations
omitted).

Plaintiff respectfully submits that in connection with the Court's order pursuant to its
inherent equitable power requiring that the Defendants' Assets and Defendants Financial
Accounts be frozen by the Financial Institutions, Plaintiffs' provision of security in the amount
of $5,000 ("Security Bond") is more than sufficient.  This Security Bond is equal to an amount
that similar plaintiffs have posted in related cases before Courts. *See, e.g., Doggie Dental Inc. v.*

*Go Well,* No. 19-cv-1282 (W.D. Pa. Oct. 11, 2019) (Hornak, J.) (Temporary Restraining Order

required $5,000 bond); *Doggie Dental Inc. v. Worthbuyer,* No. 19-cv-1283 (W.D. Pa. Oct. 11,

2019) (Hornak, J.) (Temporary Restraining Order required $5,000 bond); *Doggie Dental Inc. v.*

*Max_Buy*, No. 19-cv-746 (W.D. Pa. June 27, 2019) (Hornak, J.) (Temporary Restraining Order

required $5,000 bond); *Doggie Dental Inc. v. Anywill,* No. 19-cv-682 (W.D. Pa. June 13, 2019)

(Hornak, J.) (Temporary Restraining Order required $5,000 bond); *Airigan Solutions, LLC v.*

*Artifacts_Selling, Civil Action No. 18-cv-1462-NBF (*Temporary Restraining Order entered on

November 2, 2018, $5,000.00 bond required*), and Airigan Solutions, LLC v. Babymove, Civil*

*Action No. 19-cv-166-NBF (*Temporary Restraining Order entered on February 14, 2019,

$5,000.00 bond required*), Rapid Slicer, LLC v. Buyspry, Civil Action No. 19-cv-249-MJH*

*(*Temporary Restraining Order entered on March 11, 2019, $5,000 bond required*), Showtech*

*Merchandising, Inc. v. Various John Doe, et al,* 2:12-cv-1270 (W.D. Pa. Sept. 6, 2012); *See*

*Wow-Virtual Reality, Inc. v. 740452063 et al.*, No. 18-cv-3618, Dkt. 18 (S.D.N.Y. April 25,

2018); *Rovio Entertainment Ltd. and Rovio Animation OY v. Best Baby and Kid Store, et al.,* No.

17-cv- 4884-KPF, Dkt. 6 (S.D.N.Y. June 28, 2017); *Rovio Entertainment Ltd. and Rovio*

*Animation OY v. Angel Baby Factory d/b/a Angelbaby_factory et al.,* No. 17-cv-1840-KPF, Dkt.

11 (S.D.N.Y. March 27, 2017). Moreover, one New York Court has gone as far as to hold that no

security bond is necessary in similar circumstances. *See, e.g., Ontel Products Corp. v.*

*Airbrushpainting Makeup Store a/k/a Airbrushespainting, et al.,* No. 17-cv-871-KBF, Dkt. 20

(S.D.N.Y. Feb. 6, 2017).[19]

---

[19]    The Second Circuit has held that "[d]istrict courts ... are vested with wide discretion in determining the amount
of the bond that the moving party must post." *Doctor's Assocs., Inc. v. Stuart*, 85 F.3d 975, 985 (2d Cir. 1996).
Typically, "the amount of the bond posted is the limit that a wrongfully restrained party may recover," but the
Court must also balance this against a likelihood of harm the non-movant would be able to show. *Interlink Int'l
Fin. Servs,, Inc.* v. *Block*, 145 F. Supp. 2d 312, 314 (S.D.N.Y. 2001); *see also Doctor's Assocs.,* 85 F.3d at 985.

Plaintiff believes that Defendants would be unable to show a strong likelihood of harm, and even if Defendants were to experience a likelihood of harm, such harm is outweighed by the harm to Plaintiff, as detailed above.  For these reasons, Plaintiff respectfully requests that the Court, in accordance with Fed. R. Civ. P. 65(a), enter the Security Bond in the amount of $5,000.

## IV. <u>CONCLUSION</u>

For the reasons set forth above, Plaintiff respectfully requests that its Application be granted *ex parte* and that the Court enter: 1) a temporary restraining order; 2) an order restraining assets and Merchant Storefronts; 3) an order to show cause why a preliminary injunction should not issue; and 4) an order authorizing expedited discovery against Defendants, the Third Party Service Providers and the Financial Institutions, in the form of the [Proposed] Order accompanying this Application, and such other relief to which Plaintiffs may show they are legally entitled.

/

/

/

/

Respectfully submitted,

Dated:  March 29, 2021

/s/ Stanley D. Ference III
Stanley D. Ference III
Pa. ID No. 59899
courts@ferencelaw.com

Brian Samuel Malkin
Pa. ID No. 70448
bmalkin@ferencelaw.com

FERENCE & ASSOCIATES LLC
409 Broad Street
Pittsburgh, Pennsylvania 15143
(412) 741-8400 – Telephone
(412) 741-9292 – Facsimile

Attorneys for Plaintiff