# EXHIBIT A

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| NBA PROPERTIES, INC., *et al.*, <br><br> Plaintiff, <br> v. <br><br> THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED IN SCHEDULE "A" <br><br> Defendants, | No. 20-cv-07543 <br><br> Judge John F. Kness |

## MEMORANDUM OPINION AND ORDER

Plaintiffs NBA Properties, Inc., MLB Advanced Media, L.P., Major League Baseball Properties, Inc., NHL Enterprises, L.P., NFL Properties LLC, Collegiate Licensing Company, LLC, and the Regents of the University of California (collectively "Plaintiffs") filed this so-called "Schedule A" case against various overseas online merchants including Defendant HANWJH Official Store. (Dkt. 2.) Plaintiffs assembled their list of overseas Defendants by identifying online retailers marketing Plaintiffs' trademarked products and then ordering infringing products for delivery into this District. (Dkt. 1 at 40.) Defendant HANWJH now moves to dismiss the complaint against it and asserts two bases for dismissal: (1) the Court lacks personal jurisdiction over Defendant; and (2) service of process by email was improper. (Dkt. 55.) For the following reasons, Defendant's motion is denied.

**I. BACKGROUND**

As alleged in the Complaint, Plaintiffs are professional or collegiate sports associations who own, or license, trademarks related to their respective sports. (Dkt. 1.) For example, Plaintiff NBA Properties, Inc. is the owner and/or exclusive licensee of the trademarks of the NBA and the NBA Teams. (Dkt. 1 ¶ 7.) Defendant is an online retailer that uses the Amazon sales platform. (Dkt. 56 at 2; 7.) On December 18, 2020, Plaintiffs brought this so-called "Schedule A" trademark-infringement action against a large group of online retailers, including Defendant, and alleged that they sold counterfeit products bearing Plaintiffs' trademarks. (Dkt. 1 ¶ 79.) Along with the Complaint, Plaintiffs filed Schedule A, a sealed exhibit to the Complaint listing the Defendants, including Defendant HANWJH, by seller alias and online marketplace domain name. (Dkt. 2.) Plaintiffs identified HANWJH as a Defendant through Plaintiffs' Coalition to Advance the Protection of Sports Logos ("CAPS"), which conducts internet sweeps to identify e-commerce stores that are offering for sale or selling allegedly infringing products. (Dkt. 1 ¶ 66.) Plaintiffs also ordered at least one allegedly infringing item from Defendant's store and had it shipped it to Illinois. (Dkt. 56 at 2.) In addition, Illinois is included in Defendant's "ship-to" options listed on Defendant's homepage. (*Id*. at 8.)

On December 21, 2020, Plaintiffs sought a TRO against all defendants and requested leave under Rule 4(f)(3) of the Federal Rules of Civil Procedure to serve Defendant (and the other Defendants) by email. (Dkt. 9; Dkt. 10; Dkt. 22.) The Court granted both requests on January 13, 2021. (Dkt. 33.) On February 5, 2021, Plaintiffs

2

filed a motion for a preliminary injunction. (Dkt. 42.) About a month later, Defendant filed a motion to dismiss for lack of jurisdiction and improper service. (Dkt. 55.) That motion is now before the Court for adjudication.

## II.  LEGAL STANDARD

A federal court must dismiss any action against a party over whom the court lacks personal jurisdiction. *See* Fed. R. Civ. P. 12(b)(2). Plaintiffs bear the burden to make a *prima facie* case for personal jurisdiction. *uBID, Inc. v. GoDaddy Group, Inc.*, 623 F.3d 421, 423 (7th Cir. 2010). When determining whether a plaintiff has met its burden, a court must accept as true jurisdictional allegations pleaded in the complaint, unless those allegations are disproved by the defendant's affidavits or exhibits. *Purdue Research Foundation v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003).

Under Rule 12(b)(5) of the Federal Rules of Civil Procedure, defendants may challenge the manner of service of process through a motion to dismiss. *See* Fed. R. Civ. P. 12(b)(5). A plaintiff bears the "burden to demonstrate that the district court has jurisdiction over each defendant through effective service." *Cardenas v. City of Chicago*, 646 F.3d 1001, 1005 (7th Cir. 2011). If, on its own or on the defendant's motion, a court "finds that the plaintiff has not met that burden and lacks good cause for not perfecting service, the district court must either dismiss the suit or specify a time within which the plaintiff must serve the defendant." *Id.*

3

## III. DISCUSSION

### A. Personal Jurisdiction

Defendant provides several reasons in support of its contention that the Court lacks personal jurisdiction over Defendant in this action. Defendant first argues that it "has no connection to Illinois whatsoever" because it is not an Illinois company, owns no property in Illinois, never directed advertising or marketing toward Illinois, and never purchased goods or services for its business in Illinois (Dkt. 56 at 2.) Second, Defendant argues that the only transaction it made to Illinois was the "sham transaction" through the Plaintiffs or their representatives. (*Id.*)

As the Seventh Circuit has explained, any analysis of specific personal jurisdiction must consider three separate requirements. *See Kinslow v. Pullara*, 538 F.3d 687, 691 (7th Cir. 2008). First, the defendant must have "minimum contacts with the forum state." *Id.* To determine whether the defendant has such contacts, the court must ask whether "the defendant should reasonably anticipate being haled into court in the forum State, because the defendant has purposefully availed itself of the privilege of conducting activities there." *Id.* Second, the plaintiff's claims must "arise out of" the defendant's contacts with the forum. *GCIU-Emp. Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1023 (7th Cir. 2009). Third, and finally, maintenance of the suit must not "offend traditional notions of fair play and substantial justice." *Kinslow*, 538 F.3d at 691.

All three requirements are met as to Defendant. Although specific personal jurisdiction over an online retailer is not established merely because the retailer's

4

website is available in the forum, online retailers form minimum contacts with a forum when they "st[and] ready and willing to do business with" residents of the forum and then "knowingly [ ] do business with" those residents. *Illinois v. Hemi Grp. LLC*, 622 F.3d 754, 758 (7th Cir. 2010). As the Seventh Circuit explained last year, minimum contacts were formed even though a defendant "s[old] its products only online through its website and third-party websites" because the defendant (1) included the forum in the "ship-to" options from which the customer had to choose; (2) sent a customer an email confirming a shipping address in the forum; and (3) shipped product to an address in the forum. *Curry v. Revolution Labs., LLC*, 949 F.3d 385, 392-93 (7th Cir. 2020).

As in *Curry*, Defendant's contacts with this forum included more than merely providing access to a website. Defendant admits that it both offered to ship and in fact shipped products to Illinois. (Dkt. 56 at 8.) Defendant attempts to deflect this evidence, however, by pointing out that the shipment to Illinois was made as the result of a transaction initiated by Plaintiffs. (*Id.*) Even in the absence of any suggestion that Defendant sent a confirming email to the Illinois shipping address, the evidence that is available—namely, that Defendant made Illinois a "ship-to" option and did ship allegedly infringing products to this forum—is sufficient to show that Defendant stood ready and willing to do business with residents of this state. *Hemi¸* 622 F.3d at 758. Accordingly, this Court has sufficient grounds to exercise personal jurisdiction over Defendant. *Curry*, 949 F.3d at 392-93.

5

Defendant points to several cases to oppose a finding of personal jurisdiction: (1) *be2 LLC v. Ivanov*, 642 F.3d 555 (7th Cir. 2011); (2) *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796 (7th Cir. 2014); (3) *Illinois v Hemi Group LLC*, 622 F.3d at 754; and (4) *Original Creations, Inc. v. Ready America, Inc.*, 836 F. Supp. 2d 711 (N.D. Ill. 2011). None of these cases, however, compels a ruling in Defendant's favor.

To begin, *be2 LLC* and *Real Action Paintball* can be distinguished from both *Curry* and this case. In *be2 LLC*, the Seventh Circuit held that a dating web site did not have minimum contacts with Illinois merely because members of the site provided Illinois addresses. *be2 LLC*, 642 F.3d at 559. But there, unlike here, the defendant did not ship any products to Illinois. *Id*. Similarly, in *Real Action Paintball,* the Seventh Circuit found that sale of *noninfringing* goods to residents of Indiana did not establish specific personal jurisdiction for a trademark infringement claim regarding the sale of separate *infringing* goods. *Real Action Paintball*, 751 F.3d at 801. Because this case, as in *Curry*, involves both the sale of infringing goods and the sale of those goods to residents of Illinois, *be2 LLC* and *Real Action Paintball* are materially distinguishable.

Second, Defendant contends that *Original Creations* is persuasive because it held that "an internet website was not sufficient alone to support personal jurisdiction where the only sale to Illinois was to the plaintiff." *Original Creations*, 836 F. Supp. 2d at 711. But the court in *Original Creations* ended up finding the defendant there purposely directed its activities to residents of Illinois under a

6

"stream of commerce" theory. In any event, *Curry*—a binding precedent of the Court of Appeals holding that a shipment into the forum state is sufficient—controls the determination of this issue.

Finally, Defendant attempts to distinguish *Hemi,* where the Seventh Circuit found personal jurisdiction over a defendant that reached out to residents of Illinois through its website and shipping history. *Hemi,* 622 F.3d at 758. Defendant contends that, because the transactions in Illinois in this case were exclusively the product of "entrapment and enticement" by Plaintiffs (Dkt. 56 at 6), *Hemi* should not apply. But *Hemi*'s reasoning is on point. In that case, the defendant had a website that offered Illinois as a "ship-to" forum and in fact shipped products to Illinois. *Hemi,* 622 F.3d at 758. As this Court sees things, *Hemi* did not impose any bar to evidence generated from a plaintiff's pretextual purchase of an infringing product; and Defendant does not offer any authority establishing such a rule. In the absence of contrary authority, the Court finds that Plaintiffs' reasons for purchasing the allegedly infringing material provided by products is not relevant to the personal jurisdiction analysis.

Separately, Defendant also argues the Complaint against it should be dismissed because exercising personal jurisdiction would "offend traditional notions of fair play and substantial justice." (Dkt. 56 at 8.) But, again, Defendant offers no authority in support of that argument. Instead, Defendant simply restates its previous argument that Defendant had very limited contact with Illinois and that the interest of Illinois in this dispute is weak. (*Id.*) Defendant's appeal to traditional notions of fair play fails: it is hardly unfair to assert jurisdiction over a party that—

7

without any awareness of Plaintiffs' motives—willingly shipped an allegedly infringing product to this forum.

Because Defendant purposefully availed itself of the privileges of conducting business in this District, and because Plaintiffs' claims against Defendant arise out of those activities, the Court finds that it has specific personal jurisdiction over Defendant.

### B. Service of Process

Separately, Defendant contends that, because Plaintiffs did not adhere to the requirements of the Hague Service Convention, service by email was improper. Defendant first argues that Plaintiffs could have found Defendant's address had it undertaken a reasonable effort to find it and that the Convention therefore applies. (Dkt. 56 at 10-11.) Defendant also asserts that service by email under Rule 4(f)(3) of the Rules of Civil Procedure was improper because the drafters of the Convention intended to prohibit any method of service not mentioned in its text. (*Id*. at 11-12.)

As explained below, although the Court finds that Plaintiffs did not undertake reasonable diligence to ascertain Defendant's address, the Court holds that, because the Convention does not prohibit service by email, Plaintiffs' service of process was proper under Rule 4(f)(3) of the Federal Rules of Civil Procedure.

*1. Whether Defendant's Address was "Known" Under the Convention*

The Hague Service Convention governs the service of process of civil matters among citizens of signatory nations in an attempt to give litigants a reliable, efficient, and standardized means of international service. The Convention does not apply if

8

the defendant's address is "not known." Hague Service Convention Art. 1, 20 U.S.T. 361. Before courts will accept that a defendant's address is "not known," the plaintiff must make reasonably diligent efforts to ascertain and verify defendant's mailing address. *Progressive Se. Ins. Co. v. J & P Transp.*, No. 1:11–cv–137, 2011 WL 2672565, at *2 (N.D. Ind. July 8, 2011); *see also Compass Bank v. Katz*, 287 F.R.D. 392, 394-95 (S.D. Tex. 2012) (collecting cases).

Plaintiffs did not undertake reasonably diligent efforts to ascertain Defendant's mailing address. Defendant uploaded its true and correct address to Amazon.com and in fact, Plaintiffs' own submission of "alleged infringing evidence" included Defendant's business information. (Dkt. 56 at 11.) Despite this, Plaintiffs argue that electronic service was appropriate and necessary (1) because store operators that sell counterfeit products typically provide false or misleading address information and (2) because store operators, like Defendant, rely primarily on electronic communications to communicate with third-party service providers and customers. (Dkt. 23 at 2.) Plaintiffs further claim Defendant's address was not known because "unlike an e-mail address, which is typically verified by . . . online marketplace platforms, no verification typically occurs for physical addresses" of merchants like Defendant. (Dkt. 23 at 3.)

Plaintiffs' bare assertions regarding the reliability of Defendant's publicly available address are not a substitute for actual diligence. Plaintiffs do not claim that they conducted any diligence to verify the address Defendant posted on Amazon. Plaintiffs do not even claim that they found that address before it asked the Court to

9

allow for alternative means of service. Plaintiffs therefore did not conduct the type of diligence courts have found sufficient to hold that a defendant's address was "not known" for the purpose of the Convention. *Cf. Advanced Access Content Sys. Licensing Adm'r, LLC. v. Shen*, No. 16-CV-386-WMC, 2018 WL 4757939 *4 (S.D.N.Y. Sep. 30, 2018) (plaintiff who investigated the available physical addresses of online merchant to see if they were valid for service and determined they were not conducted reasonable diligence).

Contrary to Defendant's position, however, Plaintiffs' failure to conduct the diligence required under the Convention does not necessarily render service improper. The Court must next decide whether Plaintiffs properly served Defendant under the Federal Rules of Civil Procedure.

### 2. *Service Under Fed. R. Civ. P. 4(f)(3)*

Rule 4(f)(3) of the Federal Rules of Civil Procedure allows courts to permit alternative means of service if the party seeking to use an alternative means obtains permission of the court and those "other means [are] not prohibited by international agreement." Fed. R. Civ. P. 4(f)(3). Defendant is a company domiciled in China, a country that, along with the United States, is a signatory to the Convention and its agreed means of service. But there "is no indication of a hierarchy in the text or structure of Rule 4(f)." *Flava Works, Inc. v. Does 1-26*, No. 12 C 5844, 2013 WL 1751468, at *7 (N.D. Ill. Apr. 19, 2013). So long as the proposed method of service is "not prohibited by international agreement[,]" Rule 4(f)(3) does not require a party to attempt service under the Convention before seeking a court order directing

10

alternative service. *See Strabala v. Zhang*, 318 F.R.D. 81, 114 (N.D. Ill. 2016) (collecting cases).

Service by email is not specifically provided for in the Convention, but neither is it forbidden. *See MacLean–Fogg Co. v. Ningbo Fastlink Equip. Co.*, No. 08 CV 2593, 2008 WL 5100414, at *2 (N.D. Ill. Dec. 1, 2008) ("The Hague Convention does not prohibit service by e-mail or facsimile."); *Sulzer Mixpac AG v. Medenstar Indus. Co.*, 312 F.R.D. 329, 331 (S.D.N.Y. 2015) (same); *Ouyeinc Ltd. v. Alucy*, No. 20 C 3490, 2021 WL 2633317, at *3 (N.D. Ill. June 25, 2021) (same); *see also Commodity Futures Trading Comm'n v. Caniff*, No. 19-cv-02935, 2020 WL 956302, at *6 (N.D. Ill. Feb. 27, 2020) ("The Convention does not affirmatively authorize, nor does it prohibit, service by email"). Thus, despite that Plaintiffs had not attempted service under the terms of the Convention, the Court was authorized to order that service be effected by an alternative means (*i.e.*, email) so long as Plaintiffs "ma[d]e a showing as to why alternative service should be authorized." *Flava Works*, 2013 WL 1751468, at *7.

A speedy method of service in this case was justified to ensure, among other reasons, that the funds gained by the allegedly infringing conduct would be recoverable. *Strabala*, 318 F.R.D. at 114 ("Court-directed service pursuant to Rule 4(f)(3) is appropriate when, for example, 'there is a need for speed that cannot be met by following the Hague Convention methods'") (quoting 4B FED. PRAC. & PROC. CIV. § 1134 (4th ed.))). In addition, email was a more reliable method of service in this case because Defendant's email address was verified by the sales platform, while their physical addresses were not. (Dkt. 23 at 3.) This is precisely a situation that

11

justifies an order directing that service be effected by alternative means. *See Ouyeinc*, 2021 WL 2633317, at *3 ("courts have routinely upheld service by email" in infringement actions where online stores' "business appeared to be conducted entirely through electronic communications") (cleaned up) (citing *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1018 (9th Cir. 2002) ("When faced with an international e-business scofflaw, playing hide-and-seek with the federal court, e-mail may be the only means of effecting service of process")).

Against this, Defendant argues that two Supreme Court decisions—*Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694 (1988) and *Water Splash, Inc. v. Menon*, — U.S. —, 137 S. Ct. 1504 (2017)—include language that bars service by email. (Dkt. 56 at 11-12.) Specifically, Defendant observes that both *Schlunk* and *Water Splash* noted that the Convention "pre-empts inconsistent methods of service [wherever] it applies." *Schlunk*, 486 U.S. at 699; *Water Splash,* 137 S. Ct. at 1507. Defendant reads this statement to prohibit all methods of service not mentioned in the Convention's text. (Dkt. 56 at 11-12.) Because email is not mentioned in the Convention, Defendant says, it is not permitted under the Convention and this Court could not authorize service by email under Rule 4(f)(3). (*Id*. at 12)

With respect, the Court declines to adopt Defendant's interpretation of *Schlunk* and *Water Splash*. As the *MacLean–Fogg*, *Sulzer Mixpac,* and *Ouyeinc* courts observed, the Convention neither authorizes nor prohibits service by email—it is entirely silent on the issue. *MacLean–Fogg*, 2008 WL 5100414, at *2; *Sulzer Mixpac*,

12

312 F.R.D. at 331; *Ouyeinc*, 2021 WL 2633317, at *3. Defendant has not directed the Court to any provision of the Convention that limits a party to the methods of service enumerated in the Convention or that requires a party to exhaust the Convention's methods before pursuing other methods. *See Patrick's Rest., LLC v. Singh*, No. 18-CV-00764, 2019 WL 121250, at *2-3 n. 3 (D. Minn. Jan. 7, 2019) (Convention does not contain an exhaustion requirement and holding that service by email may be unenumerated in the Convention while "still not 'inconsistent' with" the Convention). In the absence of a provision affirmatively prohibiting service by email or any reason to believe the Convention bars all unenumerated methods of service, district courts have authority to allow service by email as an alternative means of service under Rule 4(f)(3). *Strabala*, 318 F.R.D. at 81. The Supreme Court's anodyne statement that the Convention prohibits "inconsistent methods of service" does not dictate otherwise.

Finally, Defendant cites *Luxottica Grp. S.p.A. v. P'ships, et al.*, 391 F. Supp. 3d 816 (N.D. Ill. 2019) as an additional reason to find that service by email was inappropriate. In that case, the court observed that China has objected to Article 10(a) of the Convention, which states: "Provided the State of destination does not object, the present Convention shall not interfere with . . . the freedom to send judicial documents, by postal channels, directly to persons abroad." 20 U.S.T. 361. Interpreting the phrase "postal channels" to include email, and in view of the language of Article 10(a), the *Luxottica* court held (contrary to *MacLean-Fogg*, *Sulzer Mixpac*, and *Patrick's Restaurant*) that the Convention prohibits service by email under Rule 4(f)(3) to parties located in China. *Luxottica*, 391 F. Supp. 3d at 827.

13

This Court, however, declines to interpret the term "postal channels" to include electronic mail. On the contrary, the most natural understanding of "postal channels" applies only to material that is physically delivered by letter carrying authorities. In other words, "postal channels" does not refer to alternate forms of communication, including email, notice by publication, or service by social media. *See Sulzer Mixpac*, 312 F.R.D. at 331; *Patrick's Restaurant*, 2019 WL 121250, at *3 (collecting cases).

Although the issue is not free of doubt, the Court is persuaded by *Sulzer Mixpac*, *MacLean-Fogg*, *Patrick's Restaurant*, and *Ouyeinc* that service by email is not prohibited by the Convention. Because *Water Splash* and *Schlunk* do not compel a contrary finding, and in the absence of controlling authority holding otherwise, the Court holds that service by email in this case was proper under Rule 4(f)(3).

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss (Dkt. 55) is denied.

SO ORDERED in No. 20-cv-07543.

Date: July 15, 2021

JOHN F. KNESS
United States District Judge

14